UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE and SIERRA CLUB, | Case No. |
| Plaintiffs, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| GINA McCARTHY, in her official capacity as Administrator of the United States Environmental Protection Agency, and JO-ELLEN DARCY, in her official capacity as Secretary of the Army for Civil Works, | |
| Defendants. | |

## INTRODUCTION

1.      This suit presents the question of whether federal agencies may lawfully decline to exercise their duty and authority to protect the waters of the United States from pollution and destruction under the Clean Water Act contrary to the direction of Congress.

2.      The Plaintiffs challenge a final rule promulgated by the United States Environmental Protection Agency ("EPA"); Gina McCarthy, Administrator of the EPA; the United States Army Corps of Engineers ("Army Corps"); and Jo-Ellen Darcy, Assistant Secretary of the Army for Civil Works (collectively, "the Agencies"), entitled, "Clean Water

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 1

Earthjustice
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

1  Rule:  Definition of 'Waters of the United States,'"  80 Fed. Reg. 37,054 (June 29, 2015) ("Final

2  Rule").  Plaintiffs allege that certain provisions of the Final Rule exceed the Agencies' authority

3  under the Clean Water Act, 33 U.S.C. §§ 1251-388, because they exclude certain classes of

4  waters from the protections required and afforded by the Clean Water Act ("CWA" or "Act"),

5  directly contrary to the Act.

6       3.      Plaintiffs also challenge the Final Rule because it excludes certain classes of

7  waters from the protections required and afforded by the CWA contrary to the terms of the

8  statute and the evidence in the record, and is therefore arbitrary and capricious in violation of the

9  Administrative Procedure Act, 5 U.S.C. §§ 701-06.

10                                    PARTIES

11      4.      Plaintiff Puget Soundkeeper Alliance is a nonprofit corporation organized and

12  existing under the laws of Washington with its headquarters in Seattle.  Its mission is to protect

13  and preserve the waters of Puget Sound, by detecting and reporting pollution, engaging

14  government agencies and businesses to regulate pollution discharges, and enforcing requirements

15  under the CWA to control or halt pollution and other adverse impacts to waters from sewage

16  treatment plants, industrial facilities, construction sites, municipal storm sewers, and other

17  sources.  Puget Soundkeeper Alliance has nearly 1,000 members who reside throughout the

18  Puget Sound watershed.  Some of its members participate in volunteer boat or kayak patrols to

19  observe water quality conditions, check for abnormal sewage or storm water discharges, and

20  remove floating trash and debris.  Puget Soundkeeper Alliance also accomplishes its work, in

21  part, by pursuing enforcement of the permitting requirements of the Act, and necessarily the

22  jurisdiction of the Act, throughout the Puget Sound watershed.

23      5.      Plaintiff Sierra Club is a nonprofit corporation organized and existing under the

24  laws of California, with its headquarters in San Francisco.  It is a national organization dedicated

25
COMPLAINT FOR DECLARATORY
26  AND INJUNCTIVE RELIEF - 2

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

to protecting public health and the environment, including clean water.  In particular, local

chapters of Sierra Club work to protect treasured waterbodies throughout the U.S. from

pollution, development, and destruction.  Sierra Club has more than 630,000 members who

reside in all fifty states and the District of Columbia.  Some Sierra Club Chapters and Groups run

local Water Sentinels programs that train member volunteers to test their local water bodies for

contamination and present the results to local regulatory officials, organize cleanups, or advocate

to government agencies to help improve water quality.

6.      Defendant EPA is charged with administering the Clean Water Act, through

EPA's Administrator, Gina McCarthy.  33 U.S.C. § 1251(d).

7.      Defendant Army Corps is authorized to issue permits for the discharge of dredged

or fill material into the waters of the United States, through the Secretary of the Army for Civil

Works, Jo-Ellen Darcy.  *Id.* §§ 1344, 1362(7).

8.      Plaintiffs and their members are harmed by provisions in the Final Rule that

deprive certain waters of the protections afforded under CWA programs, increasing the potential

for pollution and other adverse harm to waters that Plaintiffs and their members use and enjoy

and work to protect.

                    JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal

question), and 5 U.S.C. §§ 701-06 (Administrative Procedure Act).  The Court is authorized to

grant relief under 5 U.S.C. § 706 (Administrative Procedure Act) and 28 U.S.C. § 2202 (further

necessary or proper relief).

10.     The Clean Water Act provisions for administrative procedure and judicial review

allow for judicial review in the Circuit Courts of Appeal of specific, enumerated final agency

actions.  33 U.S.C. § 1369(b)(l).  Actions regarding rules such as the Final Rule are not

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 3

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1    enumerated as within Circuit Court jurisdiction, leaving jurisdiction to the District Court.

2    However, the Supreme Court and several circuit courts of appeal have interpreted 33 U.S.C.

3    § 1369(b)(1) to also include some final agency actions that are not expressly identified among

4    the enumerated actions in § 1369(b )(1 ), including, potentially, jurisdictional rules such as the

5    Final Rule at issue here.  Accordingly, because the law regarding jurisdiction over rules such as

6    the one at issue here is somewhat unclear, the Petitioners have filed a petition for review in the

7    United States Court of Appeals for the Ninth Circuit in addition to this action in order to fully

8    preserve their appeal rights.

9        11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one of the

10   plaintiffs, Puget Soundkeeper Alliance, resides in this district.

LEGAL FRAMEWORK

12       12.    The objective of the Clean Water Act (hereafter "CWA" or "the Act") "is to

13   restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33

14   U.S.C. § 1251(a).  Consistent with this objective, Congress established "the national goal that the

15   discharge of pollutants into the navigable waters be eliminated by 1985."  *Id.* § 1251(a)(1).

16       13.    The cornerstone of the Act is its prohibition against "the discharge of any

17   pollutant by any person" except in compliance with the Act's permitting requirements and other

18   pollution prevention programs.  *Id.* § 1311(a) (incorporating *id.* §§ 1312, 1316, 1317, 1328,

19   1342, and 1344).  These programs include the National Pollutant Discharge Elimination System

20   ("NPDES"), *id.* § 1342; the CWA section 404 permitting program for discharges of dredged or

21   fill material, *id.* § 1344; and the CWA section 311 oil spill prevention and response programs, *id.*

22   § 1321.

23       14.    The jurisdiction of the CWA extends to "navigable waters," and the Act defines

24   that term as "the waters of the United States, including the territorial seas."  *See id.* §§ 1251,

25   COMPLAINT FOR DECLARATORY

26   AND INJUNCTIVE RELIEF - 4

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  1321, 1342, 1344; *id.* § 1362(7).  Thus, the Agencies' interpretation and application of the

2  statutory definitions of "navigable waters" and "waters of the United States" determines which

3  waters are protected by CWA programs, and which are not.

4        15.    The Act's legislative history demonstrates that Congress intended the term

5  "waters of the United States" to be applied broadly, with members expressing their intent that

6  their use of the word "navigable" not be read to limit the application of the Act in any way.  *See*

7  Committee on Public Works, A Legislative History of the Water Pollution Control Act

8  Amendments of 1972, at 178, 250-51, 327, 818, 1495 (1973).

9        16.    The core provisions of the regulatory definition for waters of the United States

10  have remained largely unchanged since 1979.  *See* 44 Fed. Reg. 32,854, 32,901 (June 7, 1979)

11  (defining waters of the United States to include, among other things, "(1) All waters which are

12  currently used, were used in the past, or may be susceptible to use in interstate or foreign

13  commerce, including all waters which are subject to the ebb and flow of the tide; (2) Interstate

14  waters, including interstate wetlands; (3) All other waters such as intrastate lakes, rivers, streams

15  (including intermittent streams), mudflats, sandflats and wetlands the use, degradation or

16  destruction of which would affect or could affect interstate or foreign commerce ...; (4) All

17  impoundments of waters otherwise defined as navigable waters under this paragraph; (5)

18  Tributaries of waters identified in paragraphs (1)-(4) of this section, including adjacent wetlands;

19  and (6) Wetlands adjacent to waters identified in paragraphs (1)-(5) of this section").

20        17.    In general, federal courts, including the Supreme Court, have affirmed that the

21  Act's jurisdictional reach should be interpreted and applied broadly in order to ensure that the

22  purpose of restoring and maintaining the biological, physical, and chemical integrity of our

23  nation's waters is fulfilled.  *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 486 n.8 (1987)

24

25  COMPLAINT FOR DECLARATORY

26  AND INJUNCTIVE RELIEF - 5

1   (noting that "navigable waters" "has been construed expansively to cover waters that are not

2   navigable in the traditional sense"); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S.

3   121, 136-39 (1985) (affirming the Corps' application of jurisdiction to wetlands adjacent to

4   navigable waters).

5         18.    While the Supreme Court has established that the jurisdictional reach of the Act

6   does not extend to each and every wet area, such as the water-filled abandoned gravel mining

7   pits at issue in *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*,

8   531 U.S. 159, 164-65 (2001), the Court has consistently affirmed that EPA and the Corps have

9   broad authority under the CWA to protect both navigable and non-navigable waters that are

10   adjacent, connected, or have a significant nexus to navigable waters. *See id.* at 167-68; *Rapanos*

11   *v. United States*, 547 U.S. 715, 740-42 (2006); *Rapanos*, 547 U.S. at 759 (J. Kennedy,

12   concurring in judgment).

13         19.    The Supreme Court's 2006 decision in *Rapanos* involved disputes over whether

14   certain wetlands fall within the jurisdiction of the Clean Water Act.  While a plurality of the

15   justices agreed in the result – a remand to address whether the Corps' assertion of jurisdiction

16   was supported by facts in the record – all three of the opinions directly disagreed with some

17   aspects of one another resulting in no controlling decision or precedent.  Further, the "narrowest

18   grounds" or points agreed upon by a majority of the justices were few.  A majority of eight

19   justices agreed that the Act protects "relatively permanent, standing or flowing bodies of water,"

20   including the plurality led by Justice Scalia as well as the four dissenting justices led by Justice

21   Stevens.  *Rapanos*, 547 U.S. at 732; *id.* at 810 (J. Stevens, dissenting).  A majority of five

22   justices interpreted the Act as protecting waters, including wetlands, that "possess a 'significant

23   nexus' to waters that are or were navigable in fact or that could reasonably be so made,"

24

25   COMPLAINT FOR DECLARATORY

26   AND INJUNCTIVE RELIEF - 6

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

including Justice Kennedy and the four dissenting justices. *Id.* at 759 (J. Kennedy, concurring in judgment); *id.* at 810 (J. Stevens, dissenting). The four dissenting justices led by Justice Stevens would have upheld the Corps' authority to regulate the wetlands at issue outright, based on the CWA and the Corps' existing regulations. *Id.* at 787-99 (J. Stevens, dissenting). The majority decided that the Corps may have jurisdiction, but must further examine and justify jurisdiction in light of the Court's wide-ranging (and sometimes conflicting) discussion in the case.

20.     Because no single justification for excluding waters was agreed to by a majority of the justices, the *Rapanos* ruling provides no support for excluding waters from the definition of waters of the United States as the Agencies have done here in the Final Rule. The Court failed to produce a majority opinion or applicable precedent dictating or limiting the scope of the Act; the decision set a precedent only as to which waters are categorically included as waters of the United States. *Rapanos*, 547 U.S. at 740-42; *id.* at 759 (J. Kennedy, concurring in judgment).

21.     The Agencies' rules have also previously included provisions regarding "waste treatment systems." *See, e.g.*, 44 Fed. Reg. at 32,901 (EPA's 1979 definition of "wetlands," specifying that "waste treatment systems (other than cooling ponds meeting the criteria of this paragraph) are not waters of the United States.").

22.     In May 1980, through notice-and-comment rulemaking, EPA changed the regulatory exclusion for waste treatment systems in two significant ways: (1) by removing it from the more limited definition of "wetlands" and placing it into the overarching definition of "waters of the United States," but also by adding limiting language stating that "[t]his exclusion applies only to manmade bodies of water which neither were originally created in waters of the United States (such as a disposal area in wetlands) nor resulted from the impoundment of waters of the United States." 45 Fed. Reg. 33,290, 33,424 (May 19, 1980). That is, EPA sought to

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 7

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

ensure that polluters would not be able to use the waste treatment exclusion to "convert" a water of the United States, entitled to full protection from pollution, degradation, or destruction under the Act, into a liquid waste dump.

23.     In July 1980, EPA published a notice in the Federal Register announcing its decision to suspend the limiting language it had lawfully promulgated two months earlier.  EPA noted that "[c]ertain industry petitioners wrote to EPA expressing objections to the language," based on those industry petitioners' concerns that the language "would require them to obtain permits for discharges into existing waste treatment systems, such as power plant ash ponds, which had been in existence for many years."  45 Fed. Reg. 48,620, 48,620 (July 21, 1980).  The notice reiterated that EPA's purpose in adding the limiting sentence proposed in May of 1980 had been "to ensure that dischargers did not escape treatment requirements by impounding waters of the United States and claiming the impoundment was a waste treatment system, or by discharging wastes into wetlands." *Id.*  Nonetheless EPA responded to the industry petitioner's concerns by "suspending its effectiveness," adding that "EPA intends promptly to develop a revised definition and to publish it as a proposed rule for public comment."  *Id.* at 48,620.

24.     EPA has since acted on this provision only to renew the suspension of the May 1980 limiting language, thereby postponing the clarification it had pledged to take "promptly" in July 1980. *See* 48 Fed. Reg. 14,146, 14,157 n.1 (Apr. 1, 1983) (1983 rule stating "[t]his revision continues that [July 1980] suspension"); 80 Fed. Reg. at 37,114 (Final Rule lifting suspension of May 1980 limiting language and suspending the same language).

STATEMENT OF FACTS

I.     PROPOSED RULE

25.     On April 21, 2014, EPA and the Corps published their proposed rule, "Definition of 'Waters of the United States' Under the Clean Water Act." 79 Fed. Reg. 22,188 (Apr. 21,

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 8

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA  98104
*(206) 343-7340*

2014) ("Proposed Rule").

26.     The Agencies concurrently published a "synthesis of published peer-reviewed scientific literature discussing the nature of connectivity and effects of streams and wetlands on downstream waters," prepared by EPA's Office of Research and Development, entitled "Connectivity of Streams and Wetlands to Downstream Waters:  A Review and Synthesis of the Scientific Evidence" (2013).  *Id.* at 22,189 ("Connectivity Report").  At the same time the Agencies announced that the Connectivity Report would be reviewed by EPA's Science Advisory Board prior to final action on the rule.  *Id.* at 22,222.

27.     In the Proposed Rule the Agencies stated their intent to "interpret[] the scope of 'waters of the United States' in the CWA based on the information and conclusions in the [Connectivity] Report, other relevant scientific literature, the [A]gencies' technical expertise, and the objectives and requirements of the Clean Water Act."  *Id.* at 22,196.

28.     The Agencies also stated their intention in the Proposed Rule to "retain[] much of the structure of the [A]gencies' longstanding definition of 'waters of the United States,' and many of the existing provisions of that definition where revisions are not required in light of Supreme Court decisions or other bases for revision."  *Id.* at 22,192.

29.     The Proposed Rule stated that the "most substantial change is the proposed deletion of the existing regulatory provision that defines 'waters of the United States' as all other waters … the use, degradation or destruction of which could affect interstate or foreign commerce … ."  *Id.* (citing 33 C.F.R. § 328.3(a)(3) and 40 C.F.R. § 122.2).

30.     The Agencies proposed to define several categories of waters as jurisdictional-by-rule, meaning a categorical regulatory determination that a water in one of these categories is a "water[] of the United States" and thereafter requires no further case-specific analysis.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 9

31.     In particular, the Agencies proposed to define the following waters as jurisdictional-by-rule:  (1) "[a]ll waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide," commonly referred to as "[t]raditional navigable waters; [(2)] interstate waters, including interstate wetlands; [(3)] the territorial seas; [(4)] impoundments of traditional navigable waters, interstate waters, including interstate wetlands, the territorial seas, and tributaries, as defined, of such waters; [(5)] tributaries, as defined, of traditional navigable waters, interstate waters, or the territorial seas; and [(6)] adjacent waters, as defined, including adjacent wetlands."  *Id.* at 22,188-89; *see also id.* at 22,267-68 (proposed definition of "waters of the United States" for NPDES permits under 40 C.F.R. Part 122).

32.     The agencies also proposed that "'other waters' (those not fitting in any of the above categories) could be determined to be 'waters of the United States' through a case-specific showing that, either alone or in combination with similarly situated 'other waters' in the region, they have a 'significant nexus' to a traditional navigable water, interstate water, or the territorial seas," utilizing the "significant nexus" guideline articulated by some of the justices in the Rapanos decision.  *Id.* at 22,189.  The Agencies sought input on several alternative approaches to determining which "other waters" are jurisdictional, including various approaches for evaluating whether waters are "similarly situated."  *Id.* at 22,211-17.

33.     Also in connection with "other waters," the Agencies sought "comment on how the science supports retaining the case-specific determination for the remaining 'other waters' that are neither specifically included nor excluded from jurisdiction."  *Id.* at 22,217.  The Agencies acknowledged that retaining the ability to make jurisdictional determinations was "consistent with the objective of the CWA to restore and maintain the chemical, physical, and

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 10

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1   biological integrity of the nation's waters." *Id.*

2       34.    In the proposed rule, the Agencies also define certain key terms for the first time,

3   including the terms "tributary," "adjacent," and the related term "neighboring." *Id.* at 22,189,

4   22,263.

5       35.    The Agencies proposed to define "tributary" as "a water physically characterized

6   by the presence of a bed and banks and ordinary high water mark, as defined at 33 CFR 328.3(e),

7   which contributes flow, either directly or through another water" to (1) traditional navigable

8   waters; (2) interstate waters, including interstate wetlands; (3) the territorial seas; or (4)

9   impoundments of traditional navigable waters, interstate waters, including interstate wetlands,

10   the territorial seas, and tributaries, as defined, of such waters. *See id.* at 22,268, 22,267-68

11   (proposed definition for NPDES permits under 40 C.F.R. Part 122).

12       36.    The record for the Agencies' proposed rule reflects significant criticism of the

13   narrow definition of "tributary," including sharp criticism from members of the science

14   community that the strict requirement of a "bed and bank" and "ordinary high water mark" was

15   not scientifically correct. *See* Science Advisory Board Panel for the Review of the EPA Water

16   Body Connectivity Report, Compilation of Preliminary Comments from Individual Panel

17   Members on the Scientific and Technical Basis of the Proposed Rule Titled "Definition of

18   'Waters of the United States' Under the Clean Water Act," at 3, 31, 32, 81, and 85 (August 14,

19   2014) ("Compilation of Preliminary Comments").  Under the Agencies' proposed rule, this strict

20   requirement meant that tributaries that do not exhibit "bed and bank" and "ordinary high water

21   mark" characteristics would not be categorically protected under the CWA.

22       37.    The Agencies proposed to define "adjacent" as "bordering, contiguous or

23   neighboring," including "[w]aters, including wetlands, separated from other waters of the United

24

25   COMPLAINT FOR DECLARATORY

26   AND INJUNCTIVE RELIEF - 11

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  States by man-made dikes or barriers, natural river berms, beach dunes and the like"; and further

2  proposed to define "neighboring" as waters "located within the riparian area or floodplain of a

3  [traditional navigable water, interstate water, territorial seas, impoundments of such, or

4  tributaries of such], or waters with a shallow subsurface hydrologic connection or confined

5  surface hydrologic connection to such a jurisdictional water." *See* 80 Fed. Reg. at 22,268.

6  Again, the Agencies received some criticism, including from members of the science

7  community, regarding the limiting definition as it related to subsurface connections. *See*

8  Compilation of Preliminary Comments at 34, 71, 82, and 86.

9        38.    In connection with the proposed definition of "adjacent," the Agencies requested

10  comment on "reasonable options for providing clarity for jurisdiction" over adjacent waters,

11  including imposing a numeric distance limitation on the definition of adjacent. *See* 80 Fed. Reg.

12  at 22,208.

13        39.    The Proposed Rule also identified waters that the Agencies would categorically

14  deem "not jurisdictional," *id.* at 22,192, including "waste treatment systems," "prior converted

15  cropland," and "water transfers." *Id.* at 22,189.  The Agencies also proposed "for the first time,

16  to exclude by regulation certain waters and features over which the [A]gencies have as a policy

17  matter generally not asserted CWA jurisdiction." *Id.* at 22,189.

18        40.    As to these categorically excluded waters, the Agencies claimed that "[c]odifying

19  these longstanding practices supports the [A]gencies' goals of providing greater clarity,

20  certainty, and predictability for the regulated public and the regulators." *Id.*

21        41.    The Agencies claimed in the Proposed Rule that "because the [A]gencies do not

22  address the exclusion[] … for waste treatment systems … the [A]gencies do not seek comment

23  on these existing regulatory provisions." *Id.* at 22,190.

24

25  COMPLAINT FOR DECLARATORY

26  AND INJUNCTIVE RELIEF - 12

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

42.     Plaintiffs Sierra Club and Puget Soundkeeper Alliance submitted timely public comments on the Proposed Rule.  *See* public comments of Puget Soundkeeper, et al. (Nov. 14, 2014)[1], and public comments of Sierra Club, et al. (Nov. 14, 2014)[2].  Among other things, Plaintiffs objected to categorically excluding waters that may have a significant nexus to waters of the United States and urged that the Final Rule explicitly retain the Agencies' duty and authority to determine on a case-specific basis that particular waters are in fact "waters of the United States" under the CWA and relevant court decisions, based on scientific evidence. Plaintiffs also urged the Agencies to finally address the proper scope and application of the waste treatment system exclusion, in particular by lifting the ongoing suspension of the language that EPA suspended in 1980.

II.     FINAL RULE

43.     Consistent with the proposal, the Final Rule defines the following waters as jurisdictional-by-rule: "(i) All waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) All interstate waters, including interstate wetlands; (iii) The territorial seas; (iv) All impoundments of waters otherwise identified as waters of the United States under this section; (v) All tributaries, as defined in paragraph (3)(iii) of this section, of waters identified in paragraphs (1)(i) through (iii) of this section; [and] (vi) All waters adjacent to a water identified in paragraphs (1)(i) through (v) of this definition, including wetlands, ponds, lakes, oxbows, impoundments, and similar waters." *See, e.g.*, 80 Fed. Reg. at 37,114 (final definition for NPDES permits under 40 C.F.R. Part 122).

---

[1] Available at: http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OW-2011-0880-16413 (last visited 8/19/15).
[2] Available at: http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OW-2011-0880-16674 (last visited 8/19/15).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 13

44.     The Final Rule also adopts new, detailed definitions of key terms including "tributary" and "adjacent." 79 Fed. Reg. at 22,189, 22,199; 80 Fed. Reg. at 37,058-59 (Final Rule preamble discussing the terms "tributary" and "adjacent," and related term "neighboring").

45.     The Final Rule defines the terms "tributary" and "tributaries" as "a water that contributes flow, either directly or through another water (including an impoundment)," to traditional navigable waters, interstate waters, and the territorial seas, and that "is characterized by the presence of the physical indicators of a bed and banks and an ordinary high water mark." 80 Fed. Reg. at 37,115.

46.     The Final Rule defines "adjacent" as "bordering, contiguous, or neighboring a water identified in paragraphs (1)(i) through (v) of this definition, including waters separated by constructed dikes or barriers, natural river berms, beach dunes, and the like." *Id.*

47.     The Final Rule also took a different approach from the Proposed Rule for waters that are not defined as jurisdictional-by-rule and are not expressly excluded, by establishing only two narrow categories of waters that are eligible for a case-specific determination of significant nexus.

48.     In the first category of waters eligible for case-specific determinations are five enumerated ecologically-specific types of wetlands identified in Section (1)(vii) of the Final Rule, namely: prairie potholes, Carolina bays and Delmarva bays, Pocosins, Western vernal pools, and Texas coastal prairie wetlands. *See, e.g., id.* at 37,114.  Such waters meet the definition of "waters of the United States" if it is "determined, on a case-specific basis, to have a significant nexus to a water identified in paragraphs (1)(i) through (iii)," of the Final Definition. *Id.*

49.     The second category of waters eligible for a case-specific determination are

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1  identified in Section (1)(viii) of the Final Definition, and include: "waters located within the 100-

2  year floodplain of a water identified in paragraphs (1)(i) through (iii) of this definition and all

3  waters located within 4,000 feet of the high tide line or ordinary high water mark of a water

4  identified in paragraphs (1)(i) through (v) of this definition where they are determined on a case-

5  specific basis to have a significant nexus to a water identified in paragraphs (1)(i) through (v)" of

6  the Final Definition. *See, e.g., id.* at 37,114.

7       50.    By the combined effect of narrow or limiting treatment of tributaries and

8  subsurface connections, the limitation of case-specific significant nexus determinations to

9  artificial distance limitations and specified ecological types of wetlands, and the Agencies'

10  wholesale abandonment of case-specific decisions for any other waters, the Final Rule excludes

11  waterbodies across the United States from mandatory protections under the CWA, even where

12  those waters might meet the significant nexus test set forth in the *Rapanos* case.

13       51.    Moreover, for the first time ever, by narrowly defining the waters that are eligible

14  for a case-specific determination of significant nexus, the Final Rule purports to relinquish the

15  Agencies' authority and duty to determine whether scientific evidence demonstrates that

16  particular waters not specifically included in the regulatory definitions are, in fact, "waters of the

17  United States" under the Clean Water Act and applicable case law entitled to protection from

18  pollution, degradation, or destruction.

19       52.    Among others, the following types of waters are potentially excluded from

20  protections under the CWA as a result of the Agencies' regulatory definition:  tributaries that

21  have a significant nexus to waters of the United States but lack the physical markers of a bed,

22  banks, and ordinary high water mark; tributaries that flow into impoundments; waters with

23  significant nexus to waters of the United States that fall outside of the distance limitations in (6)

24

25  COMPLAINT FOR DECLARATORY

26  AND INJUNCTIVE RELIEF - 15

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA  98104
(206) 343-7340

1    or (8); and subsurface water or groundwater with a significant nexus to surface water.

2        53.    In the regulatory text elaborating on the definition of "adjacent," the Final Rule

3    added new language stating that "[w]aters being used for established normal farming, ranching,

4    and silviculture activities (33 U.S.C. 1344(f)) are not adjacent."  *Id.* at 37,114.  Nowhere in the

5    Proposed Rule did the Agencies propose or discuss this type of provision.  Cf. 79 Fed. Reg. at

6    22,199 (stating that the Proposed Rule "does not affect any of the exemptions from CWA section

7    404 permitting requirements provided by CWA section 404(f), including those for normal

8    farming, silviculture, and ranching activities") (citing 33 U.S.C. § 1344(f)).  The Agencies

9    claimed that this provision "expands regulatory exclusions from the definition of 'waters of the

10   United States' to make it clear that this rule does not add any additional permitting requirements

11   on agriculture."  80 Fed. Reg. at 37,055.

12       54.    The import of this last-minute change in the Final Rule is that, where normal

13   farming activities are exempt from section 404 permitting requirements, the Final Rule purports

14   to remove Clean Water Act protections from any *water body* where such activities are

15   conducted.  In doing so, the Final Rule goes well outside the bounds of the existing exemptions

16   for agricultural activities, abandoning altogether the Agencies' statutory duty to protect the

17   affected waters.

18       55.    Finally, the Agencies also took action on the waste treatment system exclusion in

19   the Final Rule.  However, instead of clarifying the scope of that exclusion, the Final Rule lifted

20   the suspension on the May 1980 limiting language only to immediately reinstate the suspension.

21   *Id.* at 37,114.

                              CLAIMS FOR RELIEF
22
              COUNT 1:  THE FINAL RULE VIOLATES THE CLEAN WATER ACT
23
         56.    The Agencies cannot relinquish their duty to protect "waters of the United States"
24

25
COMPLAINT FOR DECLARATORY
26   AND INJUNCTIVE RELIEF - 16

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

from pollution, degradation, or destruction, and this includes relinquishing their authority and

duty to make case-specific jurisdictional determinations under the Clean Water Act and

applicable case law.  *See Natural Res. Def. Council, Inc. v. Callaway*, 392 F. Supp. 685, 686

(D.D.C. 1975) (holding that the Army Corps is "without authority to amend or change the

statutory definition of navigable waters" and had therefore "acted unlawfully and in derogation

of their responsibilities under Section 404" of the CWA by adopting a narrow definition of

"navigable waters.").

57.     The Agencies exceeded their authority under the CWA, 33 U.S.C. §§ 1251-388,

by adopting provisions in the Final Rule that purport to exclude "[w]aters being used for

established normal farming, ranching, and silviculture activities" from the definition of

"adjacent," "waters of the United States,"  80 Fed. Reg. at 37,105, 37,107, 37,109, 37,111,

37,113, 37,115, 17,117, 37,118, 37,120, 37,122, 37,124, and 37,126.

58.     The Agencies exceeded their authority under the CWA, 33 U.S.C. §§ 1251-388,

by adopting provisions in the Final Rule that exclude all "waste treatment systems" from the

definition of "waters of the United States."  80 Fed. Reg. at 37,105, 37,107, 37,112, 37,114,

37,116, 37,118, 37,120, 37,122.

59.     The Agencies exceeded their authority under the CWA, 33 U.S.C. §§ 1251-388,

by adopting provisions in the Final Rule narrowly limiting the availability of a case-specific

determination of significant nexus to those waters identified in Sections (1)(vii)-(viii) of the

Final Rule and thereby excluding other waters with a significant nexus to waters of the United

State from protection under the CWA.  80 Fed. Reg. at 37,104-05, 37,106-07, 37,108-09, 37,110,

37,112, 37,114, 37,116, 37,118, 37,119-20, 37,121-22, 37,123-24, 37,125.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

COUNT 2:  THE FINAL RULE VIOLATES SECTION 706(2) OF THE
ADMINISTRATIVE PROCEDURE ACT

60.     The Agencies' decision to narrowly limit the availability of a case-specific

determination of significant nexus to those waters identified in Sections (1)(vii)-(viii) of the

Final Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law, in violation of the APA, 5 U.S.C. § 706(2)(A).  80 Fed. Reg. at 37,104-05, 37,106-07,

37,108-09, 37,110, 37,112, 37,114, 37,116, 37,118, 37,119-20, 37,121-22, 37,123-24, 37,125.

61.     The Agencies' refusal to limit the applicability of the waste treatment system

exclusion to systems created outside of "waters of the United States" was arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5

U.S.C. § 706(2)(A).  80 Fed. Reg. at 37,105, 37,107, 37,112, 37,114, 37,116, 37,118, 37,120,

37,122.

62.     The Agencies' limited the scope of their rulemaking to avoid resolving

longstanding controversy about the proper scope of their waste treatment system exclusion.

Their decision to limit the scope of their rulemaking in this manner is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. §

706(2)(A).  80 Fed. Reg. at 37,105, 37,107, 37,112, 37,114, 37,116, 37,118, 37,120, 37,122.

63.     The Agencies' decision to limit the definition of "tributary" through the strict

requirement of "physical indicators of a bed and banks and an ordinary high water mark" is

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation

of the APA, 5 U.S.C. § 706(2)(A).  80 Fed. Reg. at 37,105-06, 37,107, 37,109, 37,111, 37,113,

37,115, 37,117, 37,119, 37,120-21, 37,122-23, 37,124, 37,126.

64.     The Agencies took action in the Final Rule to suspend key language in the waste

treatment system exclusion, despite having announced in the Proposed rule that "the agencies do

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  not seek comment on [this] existing regulatory provision[].” By taking action without inviting

2  comment on the legality or desirability of that action, the Agencies adopted the waste treatment

3  system provisions in the Final Rule “without observance of procedure required by law,” in

4  violation of the APA, 5 U.S.C. § 706(2)(D).  80 Fed. Reg. at 37,105, 37,107, 37,112, 37,114,

5  37,116, 37,118, 37,120, 37,122.

6                COUNT 3:  THE AGENCIES HAVE UNLAWFULLY WITHHELD
             AND UNREASONABLY DELAYED AGENCY ACTION, WITHIN THE
7                MEANING OF 706(1) OF THE ADMINISTRATIVE PROCEDURE ACT

8       65.     Thirty-five years ago, in July 1980, EPA suspended the effectiveness of the

9  limiting language in the waste treatment system exclusion, which it had lawfully promulgated

10  through notice-and-comment rulemaking just two months earlier.  In doing so EPA stated that it

11  intended to “promptly to develop a revised definition and to publish it as a proposed rule for

12  public comment.” 45 Fed. Reg. at 48,620.  But EPA has not done so, instead postponing the

13  clarification it had pledged to take “promptly” in July 1980.  *See* 48 Fed. Reg. at 14,157 n.1

14  (1983 rule stating “[t]his revision continues that [July 1980] suspension”); 80 Fed. Reg. at

15  37,105, 37,107, 37,112, 37,114, 37,116, 37,118, 37,120, 37,122.

16       66.     EPA’s failure to address the language in the waste treatment system exclusion

17  constitutes agency action unlawfully withheld or unreasonably delayed in violation of the APA,

18  5 U.S.C. § 706(1).  80 Fed. Reg. at 37,105, 37,107, 37,112, 37,114, 37,116, 37,118, 37,120,

19  37,122.

20                              REQUEST FOR RELIEF

21       Based upon the foregoing, the Plaintiffs request relief from the court as follows:

22       A.      Adjudge and declare that the Agencies exceeded their authority under the CWA,

23  33 U.S.C. §§ 1251-388, for the reasons stated, in Count 1, above, for the portions of the rule so

24  affected;

25
COMPLAINT FOR DECLARATORY
26  AND INJUNCTIVE RELIEF - 19

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

B.     Adjudge and declare that the Final Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A), for the reasons stated in Count 2, paragraphs 60, 61, and 62, above;

C.     Adjudge and declare that the waste treatment system exclusion provisions of the Final Rule were adopted "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(2)(D), for the reasons stated in Count 2, paragraph 63, above;

D.     Adjudge and declare that the Agencies' failure to address the waste treatment system exclusion language constitutes agency action unlawfully withheld or unreasonably delayed in violation of the APA, 5 U.S.C. § 706(1), and remand with instructions to either lift the suspension or propose a revised rule addressing the suspended language within 60 days;

E.     Vacate the provisions in the Final Rule that exclude "[w]aters being used for established normal farming, ranching, and silviculture activities" from the definition of "adjacent" "waters of the United States";

F.     Award Plaintiffs their reasonable fees, costs, expenses, and disbursements, including attorney's fees, associated with this litigation; and

G.     Grant such additional and further relief as the Court may deem just, proper, and necessary.

Dated:  August 20, 2015                        Respectfully submitted,

Janette K. Brimmer, WSBA # 41271
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
jbrimmer@earthjustice.org

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Jennifer Chavez
(*Pending Pro Hac Vice Application*)
Earthjustice
1625 Massachusetts Avenue, NW, Suite 702
Washington, D.C. 20036
(202) 667-4500
jchavez@earthjustice.org

Tamara Zakim
(*Pending Pro Hac Vice Application*)
Earthjustice
50 California Street, Suite 500
San Francisco, CA  94111
(415) 217-2000
tzakim@earthjustice.org

*Counsel for Puget Soundkeeper Alliance and Sierra Club*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 21