1

2

3

4

5

6                                          THE HONORABLE JOHN C. COUGHENOUR

7                    UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

| | |
|---|---|
| 9  PUGET SOUNDKEEPER ALLIANCE, SIERRA CLUB, and IDAHO CONSERVATION 10  LEAGUE, | Case No. 2:15-cv-01342-JCC |
| | PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| 11                              Plaintiffs, | |
| | NOTE ON MOTIONS CALENDAR: |
| 12        v. | FRIDAY, OCTOBER 19, 2018[3] |
| 13  ANDREW WHEELER,[1] in his official capacity as Acting Administrator of the United States | ORAL ARGUMENT REQUESTED |
| 14  Environmental Protection Agency, and R.D. JAMES,[2] in his official capacity as Secretary of | |
| 15  the Army for Civil Works, | |
| 16                              Defendants. | |

17

18

19

20   [1] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), Andrew Wheeler, Acting Administrator of the U.S. Environmental Protection Agency, is substituted as a defendant for Scott Pruitt, who was substituted for Gina 21   McCarthy.

22   [2] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), R.D. James, Secretary of the Army for Civil Works, is substituted as a defendant for Jo-Ellen Darcy.

23   [3] Pursuant to the Court's June 12, 2018 scheduling Minute Order (Dkt. No. 35), both Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment are noted for October 19, 2018. No 24   hearing has been scheduled on the motions.

25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT                    *Earthjustice*
26   (No. 2:15-cv-01342-JCC)                                    *705 Second Ave., Suite 203*
                                                               *Seattle, WA 98104*
                                                               *(206) 343-7340*

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................1

    I.       LEGAL BACKGROUND ..........................................................................................1

    II.      FACTUAL BACKGROUND .....................................................................................4

STANDARD OF REVIEW ...........................................................................................................7

ARGUMENT ...............................................................................................................................9

    I.       THE APPLICABILITY DATE RULE IS *ULTRA VIRES* ......................................9

    II.      THE APPLICABILITY DATE RULE IS ARBITRARY AND
            CAPRICIOUS ...........................................................................................................11

            A.     The Agencies failed to address the substance or merits of the rules
                   or provide a rational explanation for their policy reversal.........................12

            B.     The Agencies are not otherwise excused from the requirement to
                   address the substance and merits of the rules .............................................18

    III.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE
           APPLICABILITY DATE RULE.............................................................................23

CONCLUSION............................................................................................................................24

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

## __TABLE OF AUTHORITIES__

**Page(s)**

**Cases**

*Alaska v. Organized Vill. of Kake, Alaska*,
    136 S. Ct. 1509 (2016) ........................................................................................18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................7

*Atlantic City Elec. Co. v. FERC*,
    295 F.3d 1 (D.C. Cir. 2002) ................................................................................9

*Becerra v. U.S. Dep't of Int.*,
    276 F. Supp. 3d 953 (N.D. Cal. 2017) ..............................................................10

*California ex rel. Lockyer v. USDA*,
    575 F.3d 999 (9th Cir. 2009) ........................................................................22, 23

*Clean Air Council v. Pruitt*,
    862 F.3d 1 (D.C. Cir. 2017) ..........................................................................10, 11

*Dioxin/Organochlorine Center v. Clarke*,
    57 F.3d 1517 (9th Cir. 1995) ..............................................................................8

*In re EPA*,
    803 F.3d 804 (6th Cir. 2015) ..............................................................................5

*FCC v. Fox Television Stations*,
    556 U.S. 502 (2009) ..............................................................................8, 12, 13

*FERC v. Elec. Power Supply Ass'n*,
    136 S. Ct. 760 (2016) ..........................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000) ..........................................................................................23

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ..........................................................................................24

*Louisiana Public Service Comm. v. FCC*,
    476 U.S. 355 (1986) ......................................................................................8, 9

*Lynch v. Dawson*,
    820 F.2d 1014 (9th Cir. 1987) ............................................................................8

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7470*

-ii-

*Michigan v. EPA,*
   268 F.3d 1075 (D.C. Cir. 1995) ..................................................................8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.,*
   463 U.S. 29 (1983) ....................................................................8, 12, 13, 19

*N.C. Growers' Ass'n v. United Farm Workers,*
   702 F.3d 755 (4th Cir. 2012) .......................................................19, 20, 21

*Nat. Res. Def. Council v. Abraham,*
   355 F.3d 170 (2d Cir. 2004) ....................................................................11

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.,*
   2018 WL 3189321 (2d Cir. June 29, 2018) ........................9, 10, 11, 12

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
   138 S. Ct. 617 (2018) ................................................................................7

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
   137 S. Ct. 811 (2017) ................................................................................5

*North Dakota v. EPA,*
   127 F. Supp. 3d 1047 (D. N.D. 2015) ......................................................5

*Northern Spotted Owl v. Hodel,*
   716 F. Supp. 479 (W.D. Wash. 1988) .....................................................9

*Nw. Motorcycle Ass'n v. U.S. Dep't. of Agric.,*
   18 F.3d 1468 (9th Cir. 1994) ...................................................................7

*Ohio River Valley Envt'l Coal. v. Kempthorne,*
   473 F.3d 94 (4th Cir. 2006) .....................................................................0

*Organized Vill. of Kake v. U.S. Dep't of Agric.,*
   795 F.3d 956 (9th Cir. 2015) ...........................................................18, 19

*Pacific Coast Fed'n of Fishermen's Ass'ns v. NMFS,*
   265 F.3d 1028 (9th Cir. 2001) .................................................................8

*Public Citizen v. Steed,*
   733 F.2d 93 (D.C. Cir. 1984) .................................................................19

*Rapanos v. United States,*
   547 U.S. 715 (2006) .......................................................................2, 3, 4, 16

*Sierra Club v. Zinke,*
   286 F. Supp. 3d 1054 (N.D. Cal. 2018) ...........................................13, 14

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

*Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers,*
  531 U.S. 159 (2001)..........................................................................................2, 3, 16

*State v. U.S. Bur. Of Land Mgt.,*
  277 F. Supp. 3d 1106 (N.D. Cal. 2017) .....................................................................10

*In re U.S. Dep't of Def., EPA,*
  817 F.3d 261 (6th Cir. 2016) ......................................................................................5

*In re United States Dep't of Def.,*
   713 F. App'x 489 (6th Cir. 2018).............................................................................5, 7

*United States v. Riverside Bayview Homes, Inc.,*
  474 U.S. 121 (1985)......................................................................................................2

**Statutes**

5 U.S.C. § 553....................................................................................................................12

5 U.S.C. § 705....................................................................................................................10

5 U.S.C. § 706(2)..................................................................................................................8

33 U.S.C. § 1251..................................................................................................................2

33 U.S.C. § 1251(a)..............................................................................................................1

33 U.S.C. § 1311(a)..............................................................................................................1

33 U.S.C. § 1312..................................................................................................................1

33 U.S.C. § 1316..................................................................................................................1

33 U.S.C. § 1317..................................................................................................................1

33 U.S.C. § 1321..................................................................................................................2

33 U.S.C. § 1328..................................................................................................................1

33 U.S.C. § 1342..............................................................................................................1, 2

33 U.S.C. § 1344..............................................................................................................1, 2

33 U.S.C. § 1361................................................................................................................10

33 U.S.C. § 1362(7)..............................................................................................................2

*Earthjustice
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340*

**Regulations**

33 C.F.R. pt. 328 ................................................................................................4, 5

40 C.F.R. pt. 110 ................................................................................................4, 5

40 C.F.R. pt. 112 ................................................................................................4, 5

40 C.F.R. pt. 116 ................................................................................................4, 5

40 C.F.R. pt. 117 ...................................................................................................5

40 C.F.R. pt. 122 ...................................................................................................5

40 C.F.R. pt. 230 ...................................................................................................5

40 C.F.R. pt. 232 ...................................................................................................5

40 C.F.R. pt. 300 ...................................................................................................5

40 C.F.R. pt. 302 ...................................................................................................5

40 C.F.R. pt. 401 ...................................................................................................5

**Other Authorities**

44 Fed. Reg. 32,854 (June 7, 1979) .......................................................................2

79 Fed. Reg. 22,188 (April 21, 2014) .....................................................................3

80 Fed. Reg. 37,054 (June 29, 2015) .........................................................4, 16, 17

82 Fed. Reg. 12,532 (March 6, 2017) ......................................................................6

82 Fed. Reg. 34,899 (June 27, 2017) .......................................................................6

82 Fed. Reg. 55,542 (Nov. 22, 2017) .......................................................6, 15, 21

83 Fed. Reg. 5,200 (Feb. 6, 2018) .................................................................. passim

83 Fed. Reg. 32,227 (July 12, 2018) ........................................................................7

Fed. R. Civ. P. 56(c) ...............................................................................................7

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

-v-

INTRODUCTION

This case challenges a decision by the U.S. Environmental Protection Agency and the U.S. Army Corps of Engineers (collectively "Agencies") to stay the final, effective Clean Water Rule defining the term "waters of the United States" in the Clean Water Act ("CWA"). More than two years after the Clean Water Rule went into effect, the Agencies inserted a new "applicability date" of February 6, 2020, even though there was no applicability date, compliance date, or any other form of later implementation date in the rule. "Definition of 'Waters of the United States'—Addition of an Applicability Date to 2015 Clean Water Rule," 83 Fed. Reg. 5,200 (Feb. 6, 2018) (AR Dkt. No. EPA-HQ-OW-2017-0644-0708) ("Final Applicability Date Rule"). The "Applicability Date Rule" is an unlawful exceedance of agency authority that also ignores fundamental rulemaking requirements under the Administrative Procedure Act ("APA"). The Agencies' attempt to unring the bell of effectiveness with a *post hoc* applicability date fails to comply with the law, and the rule must be vacated.

BACKGROUND

I.   LEGAL BACKGROUND

The CWA is one of our nation's most important environmental laws. Congress' stated purpose and intent was to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Consistent with this objective, Congress established "the national goal that the discharge of pollutants into the navigable waters be eliminated by 1985." *Id*. § 1251(a)(1).

The cornerstone of the CWA is its prohibition against "the discharge of any pollutant by any person" except in compliance with the CWA's permitting requirements and other pollution prevention programs. *Id*. § 1311(a) (incorporating *id*. §§ 1312, 1316, 1317, 1328, 1342, and

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7740*

1344). These programs include the National Pollutant Discharge Elimination System, *id*. § 1342; the CWA section 404 permitting program for discharges of dredged or fill material, *id*. § 1344; and the CWA section 311 oil spill prevention and response programs, *id*. § 1321. The jurisdiction of the CWA extends to "navigable waters," and the CWA defines that term as "the waters of the United States, including the territorial seas." *See id*. §§ 1251, 1321, 1342, 1344; *id*. § 1362(7). Thus, the Agencies' interpretation and application of the statutory definition of "waters of the United States" affects which waters the Agencies choose to protect under CWA programs.

Until 2015, the core provisions of the regulatory definition of waters of the United States had remained largely unchanged since 1979. *See* "National Pollutant Discharge Elimination System; Revision of Regulations," 44 Fed. Reg. 32,854, 32,901 (June 7, 1979). However, these regulatory provisions are informed by court opinions, and a series of Supreme Court decisions over the last few decades introduced a new test for determining which waters are waters of the United States, called the "significant nexus" test. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985) ("*Riverside Bayview*"); *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001) ("*SWANCC*"); *Rapanos v. United States*, 547 U.S. 715 (2006) ("*Rapano*s"). Although the approach of looking for an ecological connection between wetlands and nearby "navigable waters" was introduced in *Riverside Bayview* (*Riverside Bayview*, 474 U.S. at 134-35, n.9), and the term "significant nexus" was first used in *SWANCC* (*SWANCC*, 531 U.S. at 167), it was the case of *Rapanos* that solidified the significant nexus test.

The Supreme Court's 2006 decision in *Rapanos* involved disputes over whether certain wetlands fall within the jurisdiction of the CWA. While a plurality of the justices agreed in the result – a remand to address whether the Corps' assertion of jurisdiction was supported by facts

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)
-2-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

in the record – all three of the opinions directly disagreed with some aspects of one another, resulting in no controlling decision or precedent. A majority of five justices interpreted the CWA as protecting waters, including wetlands, that "possess a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made," including Justice Kennedy and the four dissenting justices. *Rapanos*, 547 U.S. at 759 (J. Kennedy, concurring in judgment); *id.* at 810 (J. Stevens, dissenting). However, because the Court failed to produce a majority opinion, the decision left the Agencies with mixed messages from the Supreme Court. Although the Agencies issued guidance documents after both the *SWANCC* and *Rapanos* decisions in 2003 and 2008, respectively, those documents lead to a significant number of time-consuming, case-by-case jurisdictional determinations and rampant inconsistencies and unpredictability regarding which waters are waters of the United States. *See* "Clean Water Rule: Definition of 'Waters of the United States,'" 80 Fed. Reg. 37,054, 37,056 (June 29, 2015).

With a stated purpose of resolving the uncertainties around the meaning of "waters of the United States," on April 21, 2014, the Agencies published their proposed Clean Water Rule. "Definition of 'Waters of the United States' Under the Clean Water Act," 79 Fed. Reg. 22,188 (proposed Apr. 21, 2014). The Agencies concurrently published a "synthesis of published peer-reviewed scientific literature discussing the nature of connectivity and effects of streams and wetlands on downstream waters," prepared by EPA's Office of Research and Development. *Id.* at 22,189.

In the final Clean Water Rule published on June 29, 2015, the Agencies define several categories of waters as jurisdictional-by-rule, meaning these waters are categorically "waters of the United States" and no further case-specific analysis is required. In particular, the Agencies define the following waters as jurisdictional-by-rule: (1) traditional navigable waters, (2)

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-3-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

interstate waters, (3) the territorial seas, (4) impoundments of jurisdictional waters, (5) tributaries, as defined, and (6) adjacent waters, as defined. 80 Fed. Reg. at 37,058. The rule defines "tributaries" to mean "waters that are characterized by the presence of physical indicators of flow – bed and banks and ordinary high water mark – and that contribute flow directly or indirectly to a traditional navigable water, an interstate water, or the territorial seas." *Id*. The rule defines "adjacent waters" to include "wetlands, ponds, lakes, oxbows, impoundments, and similar water features" that are within 100 feet of a jurisdictional water, in a 100-year floodplain and within 1,500 feet of a jurisdictional water, or within 1,500 feet of the high tide line of a tidally influenced jurisdictional water or the Great Lakes. *Id*. The Clean Water Rule also provides that other waters will be jurisdictional if they are determined to have a "significant nexus" to jurisdictional waters after the Corps conducts an individualized case-specific analysis, utilizing the test in Justice Kennedy's *Rapanos* opinion. This case-specific category includes all adjacent waters that do not meet the geographical limits of the categorical definition of adjacent waters, as well as "Prairie potholes, Carolina and Delmarva bays, pocosins, western vernal pools in California, and Texas coastal prairie wetlands." *Id*. at 37,059. The Clean Water Rule's effective date was August 28, 2015. As a result, the new definitions were published in the Code of Federal Regulations on that date, where they remain today. *See* 33 C.F.R. Part 328; 40 C.F.R. Parts 110, 112, 116, *et al*. There are no later implementation dates, compliance dates, or other later deadlines associated with the Clean Water Rule.

II.     FACTUAL BACKGROUND

When the Clean Water Rule went into effect on August 28, 2015, the effectiveness was not merely theoretical; Corps districts immediately began making jurisdictional determinations under the new rule. Plaintiffs filed a Complaint in this case a few days before the effective date, on August 20, 2015, bringing claims under the CWA and the APA against only specific

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-4-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

defective portions of the Clean Water Rule. *See* Pls. Compl. (Dkt. No. 1); 33 C.F.R. part 328; 40 C.F.R. parts 110, 112, 116, 117, 122, 230, 232, 300, 302, and 401. In the U.S. District Court for the District of North Dakota, several states brought claims against the whole Clean Water Rule, and that court granted a preliminary injunction against the entire rule in thirteen states on August 27, 2015. *See North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D. N.D. 2015). Plaintiff Sierra Club is a defendant-intervenor in the North Dakota litigation, defending the Clean Water Rule against claims that the Agencies went too far in finding that waters with a "significant nexus" to downstream navigable waters fall under the protection of the CWA.

Petitions for review of the Clean Water Rule were also brought in courts of appeals, including a petition for review by Plaintiff Sierra Club and Plaintiff Puget Soundkeeper Alliance arguing for the preservation of the majority of the Clean Water Rule and challenging only the specific faulty portions of the Clean Water Rule related to improper exclusions. The petitions for review of the Clean Water Rule in the courts of appeals were consolidated in the Sixth Circuit, and on October 9, 2015, the U.S. Court of Appeals for the Sixth Circuit issued a nationwide stay of the Clean Water Rule. *In re EPA*, 803 F.3d 804, 809 (6th Cir. 2015), *vacated sub nom. In re United States Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018). On February 22, 2016, the Sixth Circuit Court of Appeals decided that it, rather than the district courts, had jurisdiction over the petitions for review, and the U.S. Supreme Court granted *certiorari* on January 13, 2017. *In re U.S. Dep't of Def., EPA*, 817 F.3d 261, 263 (6th Cir. 2016), *cert. granted sub nom. Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 137 S. Ct. 811 (2017), *rev'd and remanded sub nom. Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617 (2018).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-5-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1       While waiting for the U.S. Supreme Court's decision on the proper jurisdiction of the

2   court challenges, the Agencies undertook three new administrative actions regarding the Clean

3   Water Rule. First, on March 6, 2017, the Agencies announced their future intent to review,

4   rescind, and revise the Clean Water Rule in a notice published in the Federal Register, citing a

5   February 28, 2017 Executive Order suggesting these actions. *See* "Intention to Review and

6   Rescind or Revise the Clean Water Rule," 82 Fed. Reg. 12,532 (March 6, 2017). Second, on

7   June 27, 2017, the Agencies proposed to repeal the Clean Water Rule and recodify the previous

8   regulatory definition of waters of the United States. *See* "Definition of 'Waters of the United

9   States' – Recodification of Pre-existing Rules," 82 Fed. Reg. 34,899 (June 27, 2017) ("proposed

10  Repeal Rule"); Defs. Notice of Proposed Rule (Dkt. No. 24). The Agencies have not finalized

11  that proposed Repeal Rule. Finally, on November 22, 2017, Defendants proposed to add an

12  "applicability date" to the Clean Water Rule, to delay the "applicability" of the Clean Water Rule

13  for two years after the date of the final adoption of the "applicability date." *See* "Definition of

14  'Waters of the United States'—Addition of an Applicability Date to 2015 Clean Water Rule," 82

15  Fed. Reg. 55,542 (proposed Nov. 22, 2017) (AR Dkt. No. EPA-HQ-OW-2017-0644-0001)

16  ("Proposed Applicability Date Rule"). The Agencies' stated purpose was to avoid applying the

17  Clean Water Rule in the event the Sixth Circuit lifted its nationwide stay of that rule. *Id.* at

18  55,544. The Agencies held only a 21-day comment period on the proposed Applicability Date

19  Rule, in spite of receiving requests for an extension of the comment period. *See* Final

20  Applicability Date Rule, 83 Fed. Reg. at 5,205. Plaintiffs submitted timely comments opposing

21  the publication of the Applicability Date Rule. *See* Comment submitted by Cook Inletkeeper et

22  al. (AR Dkt. No. EPA-HQ-OW-2017-0644-0376) (attached Ex. 1).[4]

23

24  [4] Plaintiffs' public comment letter is attached as Exhibit 1 to this Motion, as an administrative record document that
is not already part of this docket or published elsewhere. Pursuant to Defendants' Notice of Filing of Certified Index

25  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

26                              -6-

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

On January 22, 2018, the U.S. Supreme Court ruled that federal district courts, not the courts of appeals, have jurisdiction over challenges to the Clean Water Rule. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 634 (2018). On February 6, 2018, the Agencies finalized the Applicability Date Rule, which added a new "applicability date" of February 6, 2020 to the Clean Water Rule. Final Applicability Date Rule, 83 Fed. Reg. 5,200. The Sixth Circuit vacated its nationwide stay of the Clean Water Rule only a few weeks later, on February 28, 2016. *In re United States Dep't of Def.*, 713 F. App'x 489, 490 (6th Cir. 2018). Plaintiffs subsequently filed a First Amended and Supplemental Complaint adding claims against the Applicability Date Rule, and it is these claims that are ripe for summary judgment. *See* Stip. and Prop. Order Reopening Case and Staying Claims (Dkt. No. 31). On July 12, 2018, the Agencies published a supplemental notice to the July 2017 proposal to repeal the Clean Water Rule and recodify the pre-2015 definition of "waters of the United States." "Definition of 'Waters of the United States'—Recodification of Preexisting Rule," 83 Fed. Reg. 32,227 (July 12, 2018).

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In the context of a record review case, resolution of the plaintiffs' claims, however, does not require traditional fact finding by the court but rather court review of the administrative record. *Nw. Motorcycle Ass'n v. U.S. Dep't. of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994) (citations omitted). Because this case involves review of final

---

to the Administrative Record (Dkt. No. 36), the Agencies did not file the administrative record documents in this docket, and instead filed only the Index to the Administrative Record (Dkt. No. 36-2).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-7-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1    agency action and an administrative record, it does not present any genuine issues of material

2    fact, and resolution of the case on a motion for summary judgment is appropriate.

3          Under the APA, courts are charged with determining whether an agency's decision is

4    "arbitrary, capricious, . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2).

5    Plaintiffs' challenge to the Applicability Date Rule implicates each of these elements. First,

6    agencies may not take any actions that are not authorized by statute. "[A]n agency literally has

7    no power to act, . . . unless and until Congress confers power upon it." *Louisiana Public Service*

8    *Comm. v. FCC*, 476 U.S. 355, 374 (1986). An agency's action "cannot stand" without statutory

9    authorization for the action. *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 1995).

10         Moreover, the APA standard of review requires the reviewing court to determine whether

11   the agency correctly interpreted the law, and agencies must "examine the relevant data and

12   articulate a satisfactory explanation for [their] action." *FCC v. Fox Television Stations*, 556 U.S.

13   502, 513 (2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463

14   U.S. 29, 43 (1983)); *see also Pacific Coast Fed'n of Fishermen's Ass'ns v. NMFS*, 265 F.3d

15   1028, 1034 (9th Cir. 2001) (stating that a court must ask whether an agency "considered the

16   relevant factors and articulated a rational connection between the facts found and the choice

17   made"). An agency decision is arbitrary and capricious when it "failed to consider an important

18   aspect of the problem." *Dioxin/Organochlorine Center v. Clarke*, 57 F.3d 1517, 1525 (9th Cir.

19   1995) (citations omitted); *see also Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 43 (same).

20   Additionally, agencies must provide "a more detailed justification" when they adopt a new

21   policy that "rests upon factual findings that contradict those which underlay its prior policy…."

22   *Fox Television Stations*, 556 U.S. at 515. An agency cannot depart from prior findings or

23   positions without "supply[ing] a reasoned analysis for that change." *Lynch v. Dawson*, 820 F.2d

24

25   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
     (No. 2:15-cv-01342-JCC)                                    *Earthjustice*
                                                                *705 Second Ave., Suite 203*
                                                                *Seattle, WA 98104*
                                                                *(206) 343-7340*

26                                        -8-

1014, 1021 (9th Cir. 1987). In applying these standards, the Court must perform a "thorough, probing, in-depth review." *Northern Spotted Owl v. Hodel*, 716 F. Supp. 479, 481-82 (W.D. Wash. 1988).

ARGUMENT

I.    THE APPLICABILITY DATE RULE IS *ULTRA VIRES*

Agencies are "creature[s] of statute." *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002). The Supreme Court has consistently recognized that "an agency literally has no power to act, . . . unless and until Congress confers power upon it." *Louisiana Public Service Comm. v. FCC*, 476 U.S. 355, 374 (1986). Therefore, for every action an agency takes, the agency must be able to point to a statutory provision that authorizes that specific type of action. No matter the language used, the Agencies' decision in this case to stay, delay, suspend, or otherwise fail to enforce or apply the final, effective Clean Water Rule for two years utterly lacks any statutory authority and is accordingly *ultra vires*.

In the final Applicability Date Rule, the Agencies stated that the CWA in its entirety, "including sections 301, 304, 311, 401, 402, 404, 501," provides statutory authority for the rule. *See* Final Applicability Date Rule, 83 Fed. Reg. at 5,202. In assessing whether a particular statute provides authority for agency action, courts should review the plain language of the statute and the "core purposes" of the statute. *See Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 2018 WL 3189321, at *7 (2d Cir. June 29, 2018) (citing *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 764 (2016), *as revised* (Jan. 28, 2016)). Here, the plain terms of the CWA do not provide authorization for the action taken, and authorization would interfere with the core purposes of the statute. The seven specific CWA statutory provisions cited by the Agencies provide the Agencies with substantive authorities to regulate areas including effluent limitation guidelines, water quality criteria, oil spill prevention, state water quality certifications, pollution

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

discharges, and discharges of dredged or fill material, as well as a generic rulemaking power to "prescribe such regulations as are necessary to carry out his functions under the Act," 33 U.S.C. § 1361. Not one of these provisions authorize the addition of an applicability date to an effective rule, or any other kind of delay or stay of an effective rule.[5] Undoubtedly, the Agencies have the power to issue regulations under the CWA. 33 U.S.C. § 1361. However, such a general rulemaking power cannot be construed to authorize *any* type of specific agency rulemaking action, or else the meaning of Congress' check on agency authority would become meaningless.

The Agencies also cannot rely on a "discretionary authority to define 'waters of the United States,'" as they incorrectly claim in their response to comments in the final rule notice. Final Applicability Date Rule, 83 Fed. Reg. at 5,203. The Agencies' authority to conduct the underlying substantive rulemaking is distinct from their purported authority to stay the underlying rulemaking after it has gone into effect. The Agencies had an obligation to identify a specific statutory provision that authorizes a *stay* of final rules under the CWA, but they have failed to do so, instead attempting to rely on a provision that authorizes the promulgation of rules under the CWA in the first place.

Similarly, the agencies cannot rely on an "inherent authority" to stay or otherwise delay final rules during reconsideration. Courts have repeatedly held that agencies have no inherent authority to stay or delay final rules while they reconsider them. *See, e.g.*, *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017); *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety*

---

[5] In a different statute, the APA, Congress specified that agencies may only postpone effective dates "pending judicial review." 5 U.S.C. § 705. The Agencies do not cite this APA provision as a source of statutory authority for their promulgation of the Applicability Date Rule. Even if they had, the provision plainly does not apply here, where the effective date had already passed. Courts have consistently rejected attempts by agencies to "postpone" rules that have already gone into effect, even in cases where the agencies were reconsidering or planning to later repeal the rules. *See, e.g.*, *Becerra v. U.S. Dep't of Int.*, 276 F. Supp. 3d 953 (N.D. Cal. 2017); *State v. U.S. Bur. Of Land Mgt.*, 277 F. Supp. 3d 1106 (N.D. Cal. 2017).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-10-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

*Admin.*, 2018 WL 3189321, at *11-12 (2d Cir. June 29, 2018); *Nat. Res. Def. Council v. Abraham*, 355 F.3d 170, 202-03 (2d Cir. 2004). Just last year, the U.S. Court of Appeals for the D.C. Circuit reviewed the legality of EPA's decision to "stay" the "implementation" of portions of a final rule regarding fugitive emissions of methane and other greenhouse gases by the oil and gas industries, after the rule had already gone into effect. *Clean Air Council*, 862 F.3d at 1. The court rejected EPA's argument that it has "inherent authority" to temporarily stay or otherwise not enforce an already promulgated and effective rule while it reconsiders it. *Id*. at 9. The court reiterated "it is 'axiomatic' that 'administrative agencies may act only pursuant to authority delegated to them by Congress . . . .'" *id*. (internal citations omitted), and concluded that "EPA must point to something in either the Clean Air Act or the APA that gives it authority to stay the methane rule, and . . . the only provision it cites–CAA section 307(d)(7)(B)–confers no such authority." *Id*. Even more recently, the U.S. Court of Appeals for the Second Circuit rejected an argument by the National Highway Traffic Safety Administration that it had inherent authority to delay the effective date of a final, effective rule, pending reconsideration of that rule. *Nat. Res. Def. Council*, 2018 WL 3189321, at *11-12.

The Agencies have no statutory authority to simply fail to enforce a final effective rule under the CWA for two years, and as a result, the Applicability Date Rule must be vacated.

## II.    THE APPLICABILITY DATE RULE IS ARBITRARY AND CAPRICIOUS

Even if the Agencies had statutory authority to suspend the Clean Water Rule for two years, which they do not, the Applicability Date Rule should still be vacated because it was an arbitrary and capricious agency action that violated bedrock requirements of the APA. The Agencies conducted a notice and comment rulemaking for the Applicability Date Rule, albeit with an abbreviated 21-day public comment period. *See* Final Applicability Date Rule, 83 Fed. Reg. at 5,205. The Agencies must have, then, recognized that this rulemaking is a substantive

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

rulemaking requiring notice and comment under APA § 553. 5 U.S.C. § 553. "Notice and comment are not mere formalities," and the process requires a "forum for the robust debate of competing and frequently complicated policy considerations having far-reaching implications." *Nat. Res. Def. Council*, 2018 WL 3189321, at *14. However, the Agencies instead treated the applicability date rulemaking as a rushed paperwork exercise, violating several basic tenets of notice and comment rulemaking along the way.

    A.    <u>The Agencies failed to address the substance or merits of the rules or provide a rational explanation for their policy reversal.</u>

Because of the Applicability Date Rule, the Agencies will not implement the current definitional regulation of "waters of the United States" in the Code of Federal Regulations for the next two years. This failure to apply and enforce a valid and final rule unequivocally changes the standards used by Corps districts to make decisions about the application of the CWA to water bodies. Were it not for the Applicability Date Rule, the Clean Water Rule would have gone back into effect in more than half of the states in the country when the Sixth Circuit lifted its stay on February 28, 2018. The Applicability Date Rule decision is, accordingly, a meaningful policy reversal with on-the-ground consequences for waters.

    *1.*    *The Agencies did not address the findings of the Clean Water Rule.*

In order to lawfully complete a rulemaking, the agencies must "examine the relevant data and articulate a satisfactory explanation for [their] action." *FCC v. Fox Television Stations*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*")). The "relevant data" must necessarily include the substance of the rules. For example, in the seminal case of *State Farm*, the National Highway Traffic Safety Administration could not simply rescind a requirement for passive restraints, adopted by the previous administration, without considering alternatives that would achieve the

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

Motor Vehicle Safety Act's goal of greater traffic safety. *State Farm*, 463 U.S. at 48. By the same token, the Agencies here may not simply rescind, stay, or otherwise void the Clean Water Rule's protections without considering the effects on the CWA's goal of cleaner water. The Applicability Date Rule does not address that basic goal at all, nor does it address any factors relevant to the jurisdictional reach of the CWA.

Moreover, the Agencies must provide "a more detailed justification" when the "new policy rests upon factual findings that contradict those which underlay its prior policy . . . ." *Fox Television Stations*, 556 U.S. at 515; *see also id.* ("the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing position. An agency may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."). The Agencies failed to even address the factual findings of the Clean Water Rule, much less reverse them, *see* 83 Fed. Reg. 5,200; therefore, the Applicability Date Rule fails to satisfy this most fundamental requirement of rulemaking.

In a similar case regarding the Bureau of Land Management's recent suspension of the methane "Waste Prevention Rule," the U.S. District Court for the Northern District of California explained the type of "detailed justification" that is necessary to support a delay or suspension rule. The court explained that the agency

> must provide some basis – indeed, a "detailed justification:" – to explain why it is
> changing course after its three years of study and deliberation resulting in the
> Waste Prevention Rule. New facts or evidence coming to light, considerations
> that BLM left out in its previous analysis, or some other concrete basis supported
> in the record – these are the types of "good reasons" that the law seeks. Instead, it
> appears that BLM is simply "casually ignoring" all of its previous findings and
> arbitrarily changing course.

*Sierra Club v. Zinke*, 286 F. Supp. 3d 1054, 1068 (N.D. Cal. 2018) ("*Zinke*") (internal citation omitted). Here, the Agencies similarly "casually ignor[ed]" their previous science-based findings

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-13-

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

and four years of study and deliberation that led to the passage of the Clean Water Rule. The Agencies pointed to no new facts, no mistakes, and no considerations the Agencies neglected to include in their previous analysis. Therefore, as in *Zinke*, the Agencies failed to provide any concrete support in the record that would justify their policy reversal.

2. *The Agencies' sole justification for the Applicability Date Rule is irrational and unsupported by the record.*

Instead of addressing any substantive facts or failures of the Clean Water Rule, the Agencies repeatedly pointed to just one justification for the Applicability Date Rule: "regulatory certainty." Final Applicability Date Rule, 83 Fed. Reg. at 5,205. After the Supreme Court ruled that jurisdiction for any challenges to the Clean Water Rule lies with the district courts, the Agencies oddly claimed that this created some kind of new "uncertainty" and that the Applicability Date Rule was necessary to "maintain[] the legal *status quo* and thus provide[] continuity and certainty for regulated entities." *Id*. at 5,200. The Agencies' explanation is fundamentally unsound and contrary to reality because the Applicability Date Rule reverses the *status quo* and increases regulatory uncertainty.

After a rule's effective date passes and the rule is published in the Code of Federal Regulations, the regulatory *status quo* is the new regulation, until it is lawfully repealed. By attempting to delay, stay, or otherwise suspend the application or implementation of a final and effective rule, an agency is inherently upsetting the *status quo*. This is true even if there are pending judicial cases challenging the merits of the final rule. The Agencies could and should have chosen to apply the Clean Water Rule in the majority of states where it would have gone back into effect after the removal of the Sixth Circuit stay, and they could defend the rule in court in order to maintain the regulatory *status quo* in place since finalization of the rule in 2015.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-14-

The Agencies' decision to instead reverse course and abandon the Clean Water Rule is a purposeful dislodging of the *status quo*.

In addition, the promulgation of the Applicability Date Rule increases regulatory uncertainty. Instead of allowing the regulation in the Code of Federal Regulations to go back into effect after the Sixth Circuit's stay was lifted, the Agencies decided to instruct Corps districts to ignore the current law and apply an uncodified, rescinded regulatory scheme for the next two years. The pace at which the Agencies have changed course regarding the definition of "waters of the United States" is dizzying. Since 2015, the Agencies have finalized the Clean Water Rule, announced an intent to repeal and replace the Clean Water Rule, proposed to repeal the Clean Water Rule outright and recodify the pre-2015 regulations, proposed and finalized the Applicability Date Rule instead of a repeal, and most recently filed a supplemental proposal for the earlier proposed repeal. With each new announcement, the Agencies foster further uncertainty regarding the current regulatory status. Indeed, the Agencies admitted they are sowing confusion by publishing the Applicability Date Rule. In the proposed rule, they stated they "recognize that there may be some confusion because there is an existing proposal to rescind the 2015 Rule and replace it with the previous definition of 'waters of the United States,' as well as ongoing pre-proposal stakeholder outreach and engagement about the scope of the Step Two rulemaking . . . ." Proposed Applicability Date Rule, 82 Fed. Reg. at 55,544. In the final rule, the Agencies similarly acknowledged "this action may be confused with the Step One and Step Two rulemaking efforts." Final Applicability Date Rule, 83 Fed. Reg. at 5,202.

The Applicability Date Rule also introduced uncertainty and confusion by stating an intent to return to the pre-2015 regime, *id*. at 5,200, without actually re-codifying the pre-2015 regulatory definitions. Unlike in the proposed Repeal Rule, the agencies did not remove the 2015

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1   regulatory definitions and replace them with the prior ones. Leaving a fully promulgated

2   regulation on the books, but failing to enforce it for a period of two years, raises far more

3   questions than it answers. It can only cause confusion for the state and federal agencies that

4   apply the CWA, and for the regulated industry and affected public that must live with the

5   consequences.

6        In addition, even if the Agencies had recodified the pre-2015 regime in the Applicability

7   Date Rule, that regime would itself continue the regulatory confusion the 2015 Rule was

8   intended to resolve. It is well-known that the pre-2015 regime engendered uncertainty due to the

9   change that the *SWANCC* and *Rapanos* decisions wrought on decades of broad application of the

10  CWA. In fact, the Agencies' desire to reduce that confusion was perhaps the most prominent

11  theme in the preamble for and discussion of the Clean Water Rule. In that rule, the Agencies

12  noted that the accumulated interpretations of the pre-existing regulations embodied in case law

13  and agency practice had led to a situation where "[m]any waters are currently subject to case-

14  specific jurisdictional analysis to determine whether a 'significant nexus' exists, a time and

15  resource intensive process can result in inconsistent interpretation of [Clean Water Act]

16  jurisdiction and perpetuate ambiguity over where the [Act] applies." 80 Fed. Reg. at 37,056. The

17  Agencies similarly found that pre-existing jurisdiction determinations "often depend[ed] on

18  individual, time-consuming, and inconsistent analyses of the relationship between a particular

19  stream, wetland, lake, or other water with downstream waters." *Id.* at 37,057. They also found

20  that the pre-existing regime fostered "confusion and inconsistency regarding the regulation of

21  ditches." *Id.* at 37,058. And they found a "lack of clarity and inconsistent field practices across

22  the nation" due to the lack of definition for the term "neighboring," as well as pre-existing

23  "inconsistency by clarifying the meaning of the term "similarly situated." *Id*. at 37,082, 37,095.

24

25  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
    (No. 2:15-cv-01342-JCC)

26                                          -16-

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

1    The Agencies specifically noted that the 2003 and 2008 guidance memoranda "did not provide

2    the public or agency staff with the kind of information needed to ensure timely, consistent, and

3    predictable jurisdictional determinations." *Id*. at 37,056. To counter the confusion and

4    inconsistencies, the Agencies developed a rule that, according to their contemporaneous findings,

5    "makes the process of identifying waters protected under the CWA easier to understand, more

6    predictable, and consistent with the law and peer-reviewed science." *Id*. at 37,055. Yet, the

7    Agencies now state a desire to return to the pre-2015 state of confusion, on the grounds that they

8    need to avoid "inconsistencies, uncertainty, and confusion." Final Applicability Date Rule, 83

9    Fed. Reg. at 5,202.

10          The public notices for the Applicability Date Rule fail to address the Agencies' Clean

11   Water Rule findings regarding confusion and inconsistency under the pre-existing regime, either

12   to confirm those findings or to disclose that the Agencies now seek to abandon them. The public

13   notices further fail to explain how those 2015 findings are eclipsed by the Agencies' present

14   concern that some confusion might arise if they were to apply the Clean Water Rule in the states

15   where it is not under an injunction. The Agencies simply have not explained why it would

16   increase uncertainty to allow Corps districts to begin enforcing the Clean Water Rule again in the

17   districts where it is not enjoined. The fully promulgated 2015 Rule is unburdened by the

18   numerous uncertainties the Agencies identified in the pre-2015 regime. It is therefore irrational

19   to suggest that re-imposing that regime will avoid "inconsistencies, uncertainty, and confusion."

20   *Id*. at 5,202.

21          Finally, the Agencies also failed to consider the likelihood that their Applicability Date

22   Rule would prompt new litigation and all of its associated uncertainties. Indeed, multiple

23   challenges to the Applicability Date Rule, including the one in the above-captioned case, were

24

25   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
     (No. 2:15-cv-01342-JCC)

26                                         -17-

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

filed in response to this agency action. The Ninth Circuit held that an agency action violated the APA in a similar case involving a challenge to an agency move to exempt the entire Tongass National Forest in Alaska from the "Roadless Rule." *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015), *cert. denied sub nom. Alaska v. Organized Vill. of Kake, Alaska*, 136 S. Ct. 1509 (2016). In promulgating the "Tongass exemption," the U.S. Department of Agriculture claimed that its rule would "reduce[] the potential for conflicts regardless of the disposition of the various lawsuits" over the Roadless Rule. *Id*. But this claim was easily belied by the subsequent turn of events: the Tongass exemption itself "predictably led to [another] lawsuit, and did not even prevent a separate attack by Alaska on the Roadless Rule itself." *Id*. "At most," the Ninth Circuit found, "the Department deliberately traded one lawsuit for another." *Id*.

The Agencies' purported goal of reducing uncertainty appears to be a pretext for simply suspending the Clean Water Rule during their reconsideration process without providing a substantive justification for that decision. As such, it cannot provide the requisite reasonable and detailed justification for the Agencies' rulemaking.

B.    The Agencies are not otherwise excused from the requirement to address the substance and merits of the rules.

The Agencies cannot excuse their failure to comply with the APA's rulemaking requirements by claiming the procedural machinations of this rulemaking somehow vitiate the duty to fully address and explain the merits of the rulemaking.

1.    *The interim nature of the Applicability Date Rule does not eliminate the obligation to address the substance and merits of the rules.*

The fact that the Agencies described this rule as an "interim" measure, 83 Fed. Reg. at 5,200, did not excuse the Agencies from soliciting comments on and explaining the substance and merits of the legal regime. Courts have previously addressed situations where agencies in a

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

new administration have sought to reverse the recently-adopted policies of their predecessors

through a "temporary" suspension or repeal pending a new rulemaking, just as Agencies did

here. The courts have been consistent and clear that, to do so, the agency must fully justify the

substance and merits of even the "temporary" measure, just as they would be required to do in

any rulemaking.

For example, in *Public Citizen v. Steed*, 733 F.2d 93 (D.C. Cir. 1984), the National

Highway Traffic Safety Administration in the Reagan administration adopted a final rule

temporarily suspending, pending further study, tire treadwear standards adopted at the end of the

Carter administration. *Id.* at 95-97, 99. The agency argued that its action should be reviewed

under a less stringent standard because it was only temporary. *Id.* at 98. The court summarily

rejected this argument, holding that the agency's "action should be treated as a revocation,

subject to the standard of review set forth in *State Farm*." *Id.* The court proceeded to consider the

merits of the revocation and held it arbitrary for failure to consider various alternatives relating

to the substance of the rule. *Id.* at 99-100; *see also N.C. Growers' Ass'n v. United Farm

Workers*, 702 F.3d 755, 759-60, 771 (4th Cir. 2012) (holding arbitrary, for failure to address the

substance and merits through APA notice-and-comment rulemaking, a rule adopted for nine

months) ("*North Carolina Growers' Association*"); *Organized Village of Kake v. USDA*, 795

F.3d 956, 962, 967-70 (9th Cir. 2015) (en banc) (holding arbitrary, for failure to justify

substantive changes, a rule "temporarily" exempting one national forest from a nationwide rule).

2. *The proposed return to a prior regulatory regime did not eliminate the obligation to address the substance and merits of the rules.*

The fact that the Agencies instructed the Corps to "revert" to the legal regime in place

before 2015 did not excuse the Agencies from fully considering the substance and merits of the

two respective regimes, or from soliciting and addressing public comments on them. If the Clean

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-19-

Water Rule was necessary in the first instance (as demonstrated by the extensive resources, research, and careful justification that went into it), then "reverting" back is an action that belies that record and returns the country to a regime that the Agencies had already found to be inadequate, contrary to facts, and contrary to law.

The Department of Labor faced the same situation in *North Carolina Growers' Association*. There, the Department of Labor in the newly-elected Obama administration attempted to suspend regulations adopted in 2008—the last year of the Bush administration— governing wages for agricultural workers. *N.C. Growers' Ass'n*, 702 F.3d at 759-60. The suspension was to last nine months, pending review and reconsideration, during which time the pre-existing 1987 regulations would be reinstated. *Id.* at 760. In the notice of the proposed suspension, the agency stated that it would consider comments only on the temporary suspension and not on the substance of either the 1987 regulations or the 2008 regulations. *Id.* at 761. Despite the fact that the agency was reinstating a rule previously in force, the court held that the reinstatement of the old regulations was subject to the rulemaking requirements of the APA. *Id.* at 764-66. The court rejected the agency's attempt to reinstate the pre-existing rule without considering the merits: "because the Department . . . did not solicit or receive relevant comments regarding the substance or merits of either set of regulations, we have no difficulty in concluding that the Department 'ignored important aspects of the problem.'" *Id.* at 770 (quoting *Ohio River Valley Envt'l Coal. v. Kempthorne*, 473 F.3d 94, 103 (4th Cir. 2006)). Accordingly, the court held the action was arbitrary. *Id.*

In the Applicability Date Rule, the Agencies made the same error as the agency in *North Carolina Growers' Association*. Namely, they suspended a new rule and reinstated an old one without considering the merits of either. The public notice for the proposed Applicability Date

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-20-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

Rule states that "this proposed rulemaking does not undertake any substantive reconsideration of the pre-2015 'waters of the United States' definition nor are the agencies soliciting comment on the specific content of those longstanding regulations." Proposed Applicability Date Rule, 82 Fed. Reg. at 55,545. As recognized in *North Carolina Growers' Association*, the Agencies did not have that option. They were required to provide a rational explanation for their decision that considered all the relevant factors concerning the Clean Water Rule and the legal regime that preceded it, and they had a duty to solicit public comments on those substantive choices. The Agencies' unequivocal failure to take this step deprived the public of a meaningful opportunity to comment and violated the requirements of the APA.

   3. *The judicial stay and injunction of the Clean Water Rule did not eliminate the obligation to address the substance and merits of the rules.*

  Similarly, the fact that at the time of the promulgation of the Applicability Date Rule the U.S. Court of Appeals for the Sixth Circuit had stayed the Clean Water Rule nationwide, and the U.S. District Court for the District of North Dakota had enjoined the rule in thirteen states, did not excuse the Agencies from fully considering the substance and merits of the Clean Water Rule.[6] In the Applicability Date Rule, the Agencies expressed a concern that the Sixth Circuit's stay was about to expire and the North Dakota court's injunction only applied to thirteen states, meaning the Clean Water Rule was about to go back into effect in most of the country. *See* Final Applicability Date Rule, 83 Fed. Reg. at 5,202. Due to the "uncertainty" this would cause, the Agencies stated an intent to "ensure[] that, during an interim period, the scope of CWA jurisdiction will be administered nationwide exactly as it is now being administered by the

---

[6] Well after the finalization of the Applicability Date Rule, on June 8, 2018, the U.S. District Court for the Southern District of Georgia preliminarily enjoined the Clean Water Rule in the eleven states involved in that lawsuit. Therefore, the Clean Water Rule is now enjoined in a total of twenty-four states. Notice of Order in Related Case (Dkt. No. 37).

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-21-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

agencies." *Id*. However, the Agencies cannot choose to extend temporary court injunctions

without considering the substance of the decision, under the pretext that they must do so to

maintain the *status quo*.

The U.S. Forest Service made the same mistake in *California ex rel. Lockyer v. USDA*,

575 F.3d 999 (9th Cir. 2009) ("*Lockyer*"). There, the Forest Service had adopted the "Roadless

Rule" governing un-roaded areas of the national forests. Like the Clean Water Rule at issue here,

the Roadless Rule was enjoined. *Id*. at 1007. While the injunction and its appeal were pending,

the Forest Service repealed the Roadless Rule and replaced it with the "State Petitions Rule." *Id*.

at 1007-08. The Forest Service argued that neither the National Environmental Policy Act nor

the Endangered Species Act applied, because the injunction against the Roadless Rule rendered

its repeal merely a procedural, administrative matter, or a "paper exercise." *Id*. at 1015. The court

rejected this argument, noting that "[t]he most obvious problem" was that the injunction was

under appeal with an outcome that could change. *Id*. The court noted its agreement with the

district court's observation that "this type of self-serving argument 'leaves too much to the

vicissitudes of the timing of litigation.'" *Id*. at 1016 (quoting district court). The court wrote:

> The promulgation of the State Petitions Rule had the effect of
> permanently repealing uniform, nationwide, substantive protections
> that were afforded to inventoried roadless areas, and replacing them
> with a regime of the type the agency had rejected as inadequate a
> few years earlier. Such a substantial regulatory change is neither
> routine nor merely procedural.

*Id*. at 1021. By the same token, the Applicability Date Rule nullifies the uniform, nationwide,

substantive jurisdictional definition of "waters of the United States" in the Clean Water Rule and

replaces it with the very regime the agencies deemed inadequate just a few years ago.[7] As with

---

[7] Although the public notices state that the Agencies intend to follow the pre-2015 regime, the Agencies did not
recodify the pre-2015 regulatory definitions. Therefore, it is not clear that the pre-2015 regulatory definitions would

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1 | the parallel circumstances in *Lockyer*, "[s]uch a substantial regulatory change is neither routine

2 | nor merely procedural." *Id.* Therefore, the Agencies had a duty to address the substance and

3 | merits of their suspension of the Clean Water Rule, notwithstanding the temporary injunctions of

4 | the rule in some states.

5 | III.     PLAINTIFFS HAVE STANDING TO CHALLENGE THE APPLICABILITY DATE
       RULE

6 |          Plaintiffs have associational standing to challenge the Applicability Date Rule. "An

7 | association has standing to bring suit on behalf of its members when its members would

8 | otherwise have standing to sue in their own right, the interests at stake are germane to the

9 | organization's purpose, and neither the claim asserted nor the relief requested requires the

10 | participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

11 | *Servs.*, 528 U.S. 167, 181 (2000) (internal citation omitted). Plaintiffs satisfy this standard

12 | because their members have suffered injuries-in-fact that are redressable by a favorable court

13 | decision, the water protection interests at stake are germane to these conservation organizations'

14 | purposes, and the lawsuit does not require the participation of individual members.

15 |          Members of the plaintiff organizations have submitted declarations demonstrating their

16 | recreational and aesthetic interests in specific wetlands, tributaries, and similar water bodies

17 | throughout the country, which are at risk of various forms of pollution that would be regulated

18 | under the CWA. Decl. of Katherine Melmoth ¶¶ 6-18; Decl. of Katherine Slama ¶¶ 5, 7-10; Decl.

19 | of Steven Ring ¶¶ 8, 11-15, 21-22; Decl. of Peter Haase ¶¶ 6-8, 14-16; Decl. of Richard Finch ¶¶

20 | 5-8, 11; Decl. of James DeWitt ¶¶ 3, 7-11, 13-15. The Clean Water Rule, among other things,

21 | increased protections for tributaries and so-called "adjacent" waters like wetlands, because it

23 | _____

24 | fill the regulatory void created by the Applicability Date Rule.

25 | PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
    (No. 2:15-cv-01342-JCC)

26 |                                      -23-

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

provided clear categorical definitions that broadly encompassed most of these waters. Without these definitions, the "smaller" waters are more susceptible to unregulated or unpermitted pollution, harming the members who care about these specific waters. Due to the Applicability Date Rule's suspension of the protections of the Clean Water Rule for the next two years, the member declarants are harmed by the increased risk of unregulated or unpermitted pollution that their cherished water bodies now face. Decl. of Katherine Melmoth ¶¶ 19-25; Decl. of Katherine Slama ¶¶ 11-12; Decl. of Steven Ring ¶¶ 21-26, 29; Decl. of Peter Haase ¶¶ 18-22; Decl. of Richard Finch ¶¶ 11-12; Decl. of James DeWitt ¶¶ 16-18.

In addition, Plaintiffs have organizational standing in their own right, as the Applicability Date Rule conflicts with their organizational missions and they have had to expend additional resources to combat its effects. Decl. of Austin Hopkins ¶¶ 12-17; Decl. of Dalal Aboulhosn ¶¶ 8-12; Decl. of Chris Wilke ¶¶ 15-17; *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

## CONCLUSION

By rendering the Clean Water Rule "inapplicable" for a period of two years, the Agencies have substantially altered the manner in which they assess CWA jurisdiction. The Agencies had no statutory authority to take this action. In addition, the Agencies provided no rational justification for this meaningful policy reversal, as required by the APA. As a result, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment, declare the Applicability Date Rule unlawful, and vacate the rule.

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-24-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

Respectfully submitted this 27th day of July, 2018.

*Anna M. Sewell*

Anna Sewell, WSB # 48736
EARTHJUSTICE
1625 Massachusetts Avenue, NW, Suite 702
Washington, D.C. 20036
(202)667-5233
asewell@earthjustice.org

Janette K. Brimmer, WSBA # 41271
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340
jbrimmer@earthjustice.org

Jennifer Chavez
(*Pending Pro Hac Vice Application*)
EARTHJUSTICE
1625 Massachusetts Avenue, NW, Suite 702
Washington, D.C. 20036
(202) 667-4500
jchavez@earthjustice.org

*Counsel for Puget Soundkeeper Alliance,
Sierra Club, and Idaho Conservation
League*

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-25-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2018, I electronically filed the following documents with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants:

- Plaintiffs' Motion for Summary Judgment
- Exhibit 1 to Plaintiffs' Motion for Summary Judgment
- Declaration of Dalal Aboulhosn
- Declaration of James D. DeWitt
- Declaration of Richard C. Finch
- Declaration of Peter C. Haase
- Declaration of Austin Hopkins
- Declaration of Katherine Melmoth
- Declaration of Steven J. Ring
- Declaration of Katherine M. Slama
- Declaration of Chris Wilke
- Proposed Order

*/s/ Janette K. Brimmer*
Janette K. Brimmer

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

-26-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*