The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE and
SIERRA CLUB

               Plaintiffs,

    v.

ANDREW WHEELER,[1] in his official capacity
as Acting Administrator of the United States
Environmental Protection Agency, and R.D.
JAMES,[2] in his official capacity as Assistant
Secretary of the Army for Civil Works,

               Defendants.

Case No. 2:15-cv-01342-JCC

DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT AND
RESPONSE TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTIONS CALENDAR:
FRIDAY, OCTOBER 19, 2018

---

[1] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), Andrew Wheeler, Acting Administrator of the U.S. Environmental Protection Agency, is substituted as a defendant for Scott Pruitt.

[2] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), R.D. James, Assistant Secretary of the Army for Civil Works, is substituted as a defendant for Jo-Ellen Darcy.

Defendants' Cross-Motion for Summary Judgment and
Response to Plaintiffs' Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)

U.S. DOJ, ENVTL. DEFENSE SECTION
P.O. BOX 7611; WASHINGTON, D.C.
AMANDA.BERMAN@USDOJ.GOV
202-514-1950

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION .................................................................................................................1

BACKGROUND ...................................................................................................................2

I.   The Clean Water Act and Implementing Regulations .........................................2

II.  The 2015 Rule and Ensuing Litigation ..............................................................3

III. The Presidential Executive Order and Administrative Reconsideration ...........4

IV.  The Applicability Rule Proposal.........................................................................5

V.   The Supreme Court's Jurisdictional Decision ...................................................6

VI.  The Final Applicability Rule and Challenges Thereto .......................................6

VII. Subsequent Litigation against the 2015 Rule.....................................................7

STANDARD OF REVIEW ...................................................................................................8

ARGUMENT ........................................................................................................................9

I.   The Applicability Rule is a lawful exercise of the Agencies' rulemaking authority...........9

II.  The Applicability Rule is not arbitrary or capricious .......................................12

     A.  The Agencies reasonably concluded that the Applicability Rule promotes
         core goals of the 2015 Rule: regulatory consistency and clarity .........................12

     B.  The Agencies reasonably declined to reconsider the permanent merits of
         the 2015 Rule in this discrete rulemaking..............................................................15

     C.  The Agencies considered the effects of the Applicability Rule............................19

III. The Court should not vacate or enjoin the Applicability Rule .........................20

     A.  Remand, not vacatur or injunction, is the only appropriate remedy here .............21

     B.  The Court should limit the scope of any relief to the parties before the Court......22

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                    ii

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n.*,
    988 F.2d 146 (D.C. Cir. 1993) ...............................................................21, 22

*Am. Farm Bureau Fed'n, et al. v. EPA*,
    No. 3:15-cv-165 (S.D. Tex) ...........................................................................7

*Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs*,
    781 F.3d 1271 (11th Cir. 2015) ..................................................................21

*Cal. Cmtys. Against Toxics v. EPA*,
    688 F.3d 989 (9th Cir. 2012) .....................................................................21

*California ex. rel. Lockyer v. USDA*,
    575 F.3d 999 (9th Cir. 2009) .....................................................................17

*Chamber of Commerce et al. v. EPA*,
    No. 15-CV-0386 (N.D. Ok.) ......................................................................... 8

*Central & SW Servs., Inc. v. EPA*,
    220 F.3d 683 (5th Cir. 2000) .....................................................................22

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979)......................................................................................9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S.402 (1971)......................................................................................20

*Clean Air Council v. Pruitt*,
    862 F.3d 1 (D.C. Cir. 2017) ..................................................................11, 18

*Coeur Alaska, Inc. v. Southeast Alaska Conserv'n Council*,
    557 U.S. 261 (2009).......................................................................................2

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)...............................................................................10, 11

*Georgia v. Pruitt*,
    No. 2:15-cv-00079 (S.D. Ga)........................................................................7

*In re EPA & Dep't of Def. Final Rule*,
    803 F.3d 804 (6th Cir. 2015) ........................................................ 3- 4, 14, 17

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)      iii

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

*In re U.S. Dep't of Def.*,
    817 F.3d 261 (6th Cir. 2016),
        *cert granted*, 137 S. Ct. 811 (2017) ........................................................4

*In re U. S. Dep't of Def.*,
    713 Fed. Appx. 489 (6th Cir. 2018)..................................................6, 14

*Lewis v. Casey*,
    518 U.S. 343 (1996)................................................................................23

*Los Angeles Haven Hospice v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) .................................................................22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................23

*Lujan v. Nat'l Wildlife Fed.*,
    497 U.S. 871 (1990)................................................................................24

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
    453 U.S. 1 (1981)......................................................................................2

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29 (2013).............................................................................9, 16

*National Cable & Telecommunications Assn. v. Brand X Internet Services*,
    545 U.S. 967 (2005)................................................................................10

*Natural Res. Defense Council v. Nat'l Highway Traffic Safety Admin.*,
    894 F.3d 95 (2d Cir. 2018).....................................................................11

*Natural Res. Def. Council, Inc.. v. EPA*,
    No. 18-cv-1048 (S.D.N.Y.)......................................................................7

*Nat'l Ass'n of Mfrs. v. Dep't of Defense*,
    138 S. Ct. 617 (2018)...........................................................................2, 6

*New York v. EPA*,
    No. 1:18-cv-01048-JPO (S.D.N.Y.) .................................................. 7, 23

*North Carolina Growers' Ass'n v. United Farm Workers*,
    702 F.3d 755 (4th Cir. 2012) ............................................................ 18-19

*North Dakota v. EPA*,
    127 F. Supp. 3d 1047 (D.N.D. 2015)........................................................3

Defendants' Cross-Motion for Summary Judgment/          U.S. DOJ, Envtl. Defense Section
Response to Motion for Summary Judgment                 P.O. Box 7611; Washington, D.C.
(No. 2:15-cv-01342-JCC)          iv                      amanda.berman@usdoj.gov
                                                         202-514-1950

*Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*,
   475 F.3d 1136 (9th Cir. 2007) .......................................................................9

*Ohio et al. v. EPA*,
   No. 2:15-cv-2467-EAS-KAJ (S.D. Ohio).........................................................8

*Oklahoma v. EPA*,
   No. 15-CV-0381 (N.D. Okla.) ..........................................................................8

*Organized Village of Kake v. U.S. Dep't of Agriculture*,
   795 F.3d 956 (9th Cir. 2015) .........................................................................15

*Pacific Bell v. Pac-West Telecomm, Inc.*,
   325 F.3d 1114 (9th Cir. 2003) .......................................................................21

*Public Citizen v. Steed*,
   733 F.2d 93 (D.C. Cir. 1984) .........................................................................17

*Rapanos v. United States*,
   547 U.S. 715 (2006)...................................................................................3, 10

*Real Truth About Abortion, Inc. v. FEC*,
   681 F.3d 544 (4th Cir. 2012) .........................................................................24

*San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. Aug. 1, 2018)...........................................................23

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
   709 F.3d 1281 (9th Cir. 2013) .......................................................................21

*Solid Waste Agency of N. Cook Cty. v. United States Army Corps of Eng'rs*,
   531 U.S. 159 (2001)..........................................................................................3

*South Carolina Coastal Cons. League v. Wheeler*,
   No. 18-cv-330 (D.S.C.).......................................................................7, 19, 24

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017)....................................................................................23

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018)....................................................................................22

*United States Dep't of Def. v. Meinhold*,
   510 U.S. 939 (1993)........................................................................................22

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                    v

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

*United States v. Riverside Bayview Homes, Inc.*,
    474 U.S. 121 (1985)..........................................................................................9

*Va. Soc'y for Human Life v. FEC*,
    263 F.3d 379 (4th Cir. 2001) .......................................................................24

*Vigil v. Leavitt*,
    28 F.3d 826 (9th Cir. 2004) ...........................................................................8

*Waterkeeper Alliance et al. v. Wheeler*,
    No. 3:18-cv-3521 (N.D. Cal.) ........................................................................7

**STATUTES**

Administrative Procedure Act, 5 U.S.C. 551 et seq.:

    5 U.S.C. § 553(c) ...........................................................................................9

    5 U.S.C. § 706(2)(A)..................................................................................8, 12

Clean Water Act, 33 U.S.C. §§ 1251 to 1388:

    Section 101(a), 33 U.S.C. § 1251(a) ..............................................................2

    Section 301, 33 U.S.C. § 1311.......................................................................9

    Section 301(a), 33 U.S.C. § 1311(a) ..............................................................2

    Section 302, 33 U.S.C. § 1312.......................................................................9

    Section 311, 33 U.S.C. § 1321.......................................................................9

    Section 401, 33 U.S.C. § 1341.......................................................................9

    Section 402, 33 U.S.C. § 1342.......................................................................2

    Section 404, 33 U.S.C. § 1344....................................................................2, 9

    Section 501(a), 33 U.S.C. § 1361(a) ..............................................................9

    Section 502(7), 33 U.S.C. § 1362(7) ..............................................................2

    Section 502(12)(A), 33 U.S.C. § 1362(12)(A) ...............................................2

    Section 509(b)(1), 33 U.S.C. § 1369(b)(1) .....................................................6

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)    vi

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

**RULES**

Fed. R. Civ. P. 25(d)(1) ................................................................................................... 1

**FEDERAL REGISTER**

42 Fed. Reg. 37,122 (July 19, 1977) .................................................................................. 2

     42 Fed. Reg. 37,144 ........................................................................................................ 2

51 Fed. Reg. 41,206 (Nov. 13, 1986) ................................................................................. 2

     51 Fed. Reg. 41,216 ........................................................................................................ 2

     51 Fed. Reg. 41,217 ........................................................................................................ 2

53 Fed. Reg. 20,764 (June 6, 1988) ................................................................................... 2

     53 Fed. Reg. 20,765 ........................................................................................................ 2

74 Fed. Reg. 18,832 (Apr. 21, 2009) ............................................................................... 11

74 Fed. Reg. 48,153 (Sept. 22, 2009) .............................................................................. 11

75 Fed. Reg. 16,012 (Mar. 31, 2010) .............................................................................. 11

78 Fed. Reg. 53,033 (Aug. 28, 2013 ................................................................................ 11

80 Fed. Reg. 37,054 (June 29, 2015) ..............................................................1, 3, 12, 13, 22

     80 Fed. Reg. 37,055 ........................................................................................................ 3

     80 Fed. Reg. 37,082 ...................................................................................................... 13

     80 Fed. Reg. 37,090 ...................................................................................................... 13

     80 Fed. Reg. 37,095 ...................................................................................................... 13

     80 Fed. Reg. 37,101 ...................................................................................................... 16

82 Fed. Reg. 34,899 (July 27, 2017) .................................................................................. 4

     82 Fed. Reg. 34,903 ...................................................................................................... 18

82 Fed. Reg. 55,542 (Nov. 22, 2017) ................................................................................. 5

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)     vii

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

82 Fed. Reg. 55,543 ...................................................................................................5

82 Fed. Reg. 55,544 .......................................................................................5, 19, 20

82 Fed. Reg. 55,545 .......................................................................................5, 17, 18

83 Fed. Reg. 5200 (Feb. 6, 2018) ...........................................................................1, 6

83 Fed. Reg. 5201 ....................................................................................3, 4, 18

83 Fed. Reg. 5202 .....................................................................6, 10, 13, 15, 22

83 Fed. Reg. 5203-07.............................................................................................20

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                    viii

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

# INTRODUCTION

Earlier this year, the U.S. Environmental Protection Agency and Department of the Army ("the Agencies") added an applicability date to their 2015 rule[3] redefining the "waters of the United States" for purposes of the Clean Water Act ("CWA").  *See* 83 Fed. Reg. 5200 (Feb. 6, 2018) ("Applicability Rule").  In the Applicability Rule, the Agencies sensibly set application of the 2015 Rule for two years out, not only because the Agencies are administratively reconsidering that Rule, but also because the 2015 Rule has been widely challenged and its application enjoined by multiple courts.  The Agencies made that decision after undertaking notice-and-comment rulemaking, wherein they considered comments on, *inter alia*, whether to change the application date and what impacts a two-year change might have on stakeholders and the public.

Plaintiffs claim that the Agencies lacked authority to issue the Applicability Rule.  Yet they acknowledge that the Agencies have authority to issue notice-and-comment rulemakings under the CWA to fulfill their statutory obligations.  Plaintiffs also argue that the Agencies' decision not to apply the 2015 Rule until early 2020 was arbitrary and capricious.  But the Agencies explained why they made that choice:  to avoid the confusion and uncertainty that would result if different regulations were applied in different states—with the prospect of the standards further changing midstream because of ongoing litigation.  Plaintiffs' arguments thus fail.  In making them, Plaintiffs ignore the unusual circumstances the Agencies faced—including that the 2015 Rule had not only been judicially challenged, but enjoined nationwide for most of its existence.  It remains enjoined in more than half the country.  The Agencies' decision to postpone application of the 2015 Rule under those circumstances, and thus restore consistency and clarity to their permitting programs, was both rationale and lawful.

---

[3] 80 Fed. Reg. 37,054 (June 29, 2015) (the "2015 Rule").

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

**BACKGROUND**

**B. The Clean Water Act and Implementing Regulations**

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the CWA generally prohibits "the discharge of any pollutant by any person," 33 U.S.C. § 1311(a), unless the discharger "obtain[s] a permit and compl[ies] with its terms." *Middlesex Cty. Sewerage Auth.* v. *Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 11 (1981) (citation omitted). A "discharge of a pollutant" occurs when a person adds "any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). "[N]avigable waters" are "the waters of the United States." *Id.* § 1362(7).

The CWA establishes two permitting programs addressing the discharge of pollutants to "waters of the United States." 33 U.S.C. §§ 1342 & 1344; *Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261 (2009). The National Pollutant Discharge Elimination System program, which allows persons to discharge pollutants downstream under certain conditions, "is administered by the EPA under [33 U.S.C.] § 1342." *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 625 (2018). The Corps administers the section 404 program, issuing permits for "discharges of dredged or fill material." *Id.* (internal quotation omitted).

The Corps promulgated regulations defining "waters of the United States" in 1977. *See* 42 Fed. Reg. 37,122, 37,144 (July 19, 1977). In the 1980s, both Agencies adopted definitions of that statutory phrase substantially similar to the 1977 definition. 51 Fed. Reg. 41,206, 41,216-17 (Nov. 13, 1986) (Corps "h[as] not made changes to existing definitions; however, we have provided clarification by simply setting them apart in a separate and distinct [part] of the regulation"); 53 Fed. Reg. 20,764, 20,765 (June 6, 1988) ("The overall definition of waters of the United States has also been approved by the courts, both in its current articulation and in earlier versions. Therefore,

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

we see no need to change these definitions.").  Thus, as of 2015 the Agencies had implemented essentially the same definition of "waters of the United States" for nearly forty years.

Over those four decades, the Agencies refined their implementation of the regulatory definition of "waters of the United States" through guidance documents and agency practice, as informed by Supreme Court decisions.  *See, e.g.*, *Rapanos v. United States*, 547 U.S. 715 (2006); *Solid Waste Agency of N. Cook Cty.* v. *U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001).  Though "imperfect," this decades-old program provides a meaningful measure of certainty and predictability—particularly as compared to the patchwork application of an untested new rule in some, but not all, of the country, for an uncertain duration.  *See In re EPA & Dep't of Def. Final Rule*, 803 F.3d 804, 808 (6th Cir. 2015) (describing the "familiar" pre-WOTUS Rule regime).

## II.    The 2015 Rule and Ensuing Litigation

The Agencies promulgated the 2015 Rule in June of that year, revising the regulatory definition of "waters of the United States."  80 Fed. Reg. at 37,054.  A key purpose of that Rule was to "increase CWA program predictability and consistency by clarifying the scope of 'waters of the United States' protected under the Act."  *Id.*; *see also id.* at 37,055 (the rule "makes the process of identifying waters protected under the CWA easier to understand, more predictable").

Thirty-one states and other parties challenged the 2015 Rule in district and appellate courts spanning the country.  83 Fed. Reg. at 5201.  Several sought to enjoin the 2015 Rule.  On August 27, 2015—the day before the effective date of the 2015 Rule—a North Dakota district court enjoined the 2015 Rule in the thirteen states that had joined in that suit, holding that plaintiffs "are likely to succeed on the merits."  *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1055 (D.N.D. 2015).

Petitions for review of the 2015 Rule were consolidated in the Sixth Circuit Court of Appeals.  On October 9, 2015, that court stayed the 2015 Rule nationwide.  *See In re EPA*, 803

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

F.3d 804.  It "conclude[d] that petitioners have demonstrated a substantial possibility of success on the merits of their claims." *Id.* at 807.  Noting "the sheer breadth of the ripple effects caused by the Rule's definitional changes," the Sixth Circuit acted to "restore uniformity of regulation under the familiar, if imperfect, pre-Rule regime, pending judicial review." *Id.* at 808.  Consistent with the Sixth Circuit's order, the Agencies returned to their longstanding practice of applying the definition of "waters of the United States" set forth in their 1980s regulations, as informed by guidance, agency practice, and case law.  83 Fed. Reg. at 5201.  Thus, the 2015 Rule was only applicable for approximately six weeks, from August 28, 2015, to October 9, 2015—and only in the parts of the country not covered by the District of North Dakota's preliminary injunction.

Some parties in the Sixth Circuit case argued that the court did not have jurisdiction over the challenges under the 33 U.S.C. § 1369(b)(1).  The Sixth Circuit held that it had jurisdiction, and the Supreme Court granted certiorari.  *See In re U.S. Dep't of Def.*, 817 F.3d 261 (6th Cir. 2016), *cert. granted*, 137 S. Ct. 811 (2017).

### III.    The Presidential Executive Order and Administrative Reconsideration

In early 2017, the President directed the Agencies to reconsider the 2015 Rule.  Exec. Order No. 13,778, 82 Fed. Reg. 12,497 (March 3, 2017).  That executive order declared it to be "in the national interest to ensure that the Nation's navigable waters are kept free from pollution, while at the same time promoting economic growth, minimizing regulatory uncertainty, and showing due regard for the roles of the Congress and the States under the Constitution." *Id.* § 1.  Consistent with the President's directive, in July 2017 the Agencies proposed to rescind the 2015 Rule and recodify the prior regulatory definition of "waters of the United States," promulgated by the Agencies in the late 1980s.  "Definition of 'Waters of the United States'−Recodification of Pre-Existing Rules." 82 Fed. Reg. 34,899 (July 27, 2017).  That proposal remains under consideration.

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                    4

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

## IV.    The Applicability Rule Proposal

In November 2017, the Agencies proposed and solicited public comment on the Applicability Rule.  82 Fed. Reg. 55,542 (Nov. 22, 2017).  The Agencies' purpose was to provide "regulatory continuity and clarity for the many stakeholders affected by the definition of 'waters of the United States'" in light of, *inter alia*, the Supreme Court's then-pending subject matter jurisdiction ruling; the Sixth Circuit's then-effective nationwide stay of the 2015 Rule; the District of North Dakota's preliminary injunction of the 2015 Rule in thirteen states; the President's Executive Order; and the Agencies' ongoing administrative reconsideration of the 2015 Rule. *Id.* at 55,542-44.  The Agencies posited that postponing application of the 2015 Rule for two years would "ensure that there is sufficient time for the regulatory process for reconsidering the definition of 'waters of the United States' to be fully completed." *Id.* at 55,544.

The agencies invited comment on, *inter alia*, "whether it is desirable and appropriate to add an applicability date to the 2015 Rule," "whether adding the applicability date contributes to regulatory certainty," and "whether the time period should be shorter or longer." *Id.* at 55,544. The Agencies explained that because they proposed "to simply add the applicability date and ensure continuance of the legal *status quo* and because it is a temporary, interim measure pending substantive rulemaking," they were not, at that time, "undertak[ing] any substantive reconsideration of the pre-2015 'waters of the United States' definition" or "soliciting comment on the specific content of those longstanding regulations." *Id.* at 55,544-45.  Rather, the merits of the 2015 Rule would be addressed in other rulemaking. *Id.* at 55,545.

States, business and environmental groups, and citizens submitted hundreds of comments in response to the Applicability Rule proposal. *See* Administrative Record Index, Dkt. No. 36-2.

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                              5

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

1    **V.     The Supreme Court's Jurisdictional Decision**

2         On January 22, 2018, the Supreme Court overturned the Sixth Circuit's jurisdictional

3    ruling.   The Court held that, under CWA section 509(b)(1), 33 U.S.C. § 1369(b)(1), "any

4    challenges to the Rule . . . must be filed in federal district courts." *Nat'l Ass'n of Mfrs. v. Dep't of*

5    *Def.*, 138 S. Ct. at 624.   The Sixth Circuit subsequently vacated its stay of the 2015 Rule and

6    dismissed all circuit court petitions for lack of jurisdiction.  *In re U.S. Dep't of Def.*, 713 Fed.

7    Appx. 489 (6th Cir. 2018).   However, the preliminary injunction of the 2015 Rule entered by the

8    District of North Dakota covering 13 states remained in effect.   Litigation challenging the 2015

9    Rule then moved forward in the federal district courts.

10   **VI.    The Final Applicability Rule and Challenges Thereto**

11        On February 6, 2018, the Agencies took final action on the Applicability Rule.  *See* 83 Fed.

12   Reg. 5200.   In that final rule, the Agencies found that an applicability date of February 6, 2020,

13   would serve the public interest by temporarily maintaining the pre-2015 regulatory framework so

14   that only one regulatory definition of "waters of the United States" will be applicable throughout

15   the entire United States at a time.  *See* 83 Fed. Reg. at 5202 ("[T]he agencies recognize the need

16   to provide clarity, certainty, and consistency nationwide.").   The Agencies concluded the

17   alternative would be a patchwork of regulation, depending on the geographic extent of the courts'

18   injunctions of the 2015 Rule, undesirable for stakeholders.  "Having different regulatory regimes

19   in effect throughout the country would be complicated and inefficient for both the public and the

20   agencies."  *Id.*  The Applicability Rule therefore "ensures that, during an interim period, the scope

21   of CWA jurisdiction will be administered nationwide . . .  as it was administered prior to the

22   promulgation of the 2015 Rule."  *Id.*

23

24

25

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

Beyond this Court, the Applicability Rule has also been challenged in the District of South Carolina, the Southern District of New York, and the Northern District of California.  The South Carolina court recently enjoined the Applicability Rule nationwide, but the United States has asked the district court to stay judgment and will appeal that decision,[4] and the plaintiffs in that case have since acknowledged that a nationwide injunction of the Applicability Rule is not appropriate.[5]  The New York and California challenges remain pending.[6]

## VII.    Subsequent Litigation against the 2015 Rule

The Agencies' concern that applying the 2015 Rule would result in a shifting landscape of inconsistent regulation was further validated when the District of Georgia enjoined that Rule in eleven more states.  *Georgia v. Pruitt,* No. 2:15-cv-00079, Dkt. No. 174 (S.D. Ga. June 8, 2018) (Ex. A). Like the North Dakota court and the Sixth Circuit, the Georgia court concluded that the plaintiffs had "demonstrated a likelihood of success on their claims that the [2015] Rule was promulgated in violation of the CWA and the APA."  *Id.* at 10.  Furthermore, earlier this week a Texas district court enjoined the 2015 Rule in three more states, concluding that plaintiffs had not only shown a likelihood of success on the merits of their challenges to the 2015 Rule, but that the public interest "tipped the balance in favor of granting an injunction . . . to an overwhelming degree" because "a stay provides much needed governmental, administrative, and economic stability."  Ex. B, *Am. Farm Bureau Fed'n v. EPA*, No. 3:15-cv-165, Doc. No. 87 (Order) (S.D. Tex. Sept. 12, 2018) (enjoining 2015 Rule in Texas, Louisiana, and Mississippi).

---

[4] *South Carolina Coastal Conserv'n League v. Pruitt*, No. 2:18-cv-330, Docs. Nos. 66 (order), 67 (judgment), 73 (notice of appeal), & 74 (motion to stay judgment) (D.S.C. Aug. 16, 2018).

[5] *Id*, Doc. No. 72 (Plaintiffs' motion to clarify or reconsider, asking the Court to amend its order to solely vacate, rather than enjoin, the Rule).

[6] *See Nat. Res. Def. Council, Inc.. v. EPA*, No. 18-cv-1048 (S.D.N.Y.) (summary judgment briefing completed); *New York v. Pruitt*, No. 1:18-cv-1030-JPO (S.D.N.Y.) (same); *Waterkeeper Alliance, Inc., v. Pruitt*, 3:18-cv-3521 (N.D. Cal.) (answer filed Aug. 17, 2018).

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                    7

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

1  The 2015 Rule is thus now enjoined in 27 states. Other motions to enjoin that Rule remain

2  pending.[7]  This map depicts the scope of the extant and pending injunctions of the 2015 Rule:



**STANDARD OF REVIEW**

16  The United States agrees that "resolution of th[is] case on a motion for summary judgment

17  is appropriate." Pl. Br. at 8.  When deciding the parties' cross-motions, the Court should apply the

18  familiar standard from the Administrative Procedure Act ("APA"), under which agency action is

19  unlawful only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

20  law." 5 U.S.C. § 706(2)(A).  This standard "is highly deferential, presuming the agency action to

---

[7] *See Ohio et al. v. EPA*, No. 2:15-cv-2467-EAS-KAJ (S.D. Ohio) (claims for preliminary relief by Ohio, Michigan, and Tennessee); *Chamber of Commerce et al. v. EPA*, No. 4:15-CV-0386, Doc. No. 68 & *Oklahoma v. EPA*, No. 4:15-CV-0381 (N.D. Ok.) (Joint Motion to Reopen Cases and Request for Ruling on Pending Preliminary Injunction Motions).

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                    8

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

1   be valid and affirming . . . if a reasonable basis exists for its decision." *Nw. Ecosystem Alliance v.*

2   *U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (quotation omitted). The agency

3   need only have "considered the relevant factors and articulated a rational connection between the

4   facts found and the choices made." *Id.* (quoting *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d

5   835, 841 (9th Cir. 2003)).  In short, the Agencies' decision must be upheld so long as it is rational.

6   *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 42-43 (2013).

7         The APA requires agencies to "give interested persons an opportunity to participate in the

8   rule making through submission of written data, views, or arguments with or without opportunity

9   for oral presentation." 5 U.S.C. § 553(c).  While the courts "are charged with . . . ensuring that

10   agencies comply with the 'outline of minimum essential rights and procedures' set out in the

11   APA," they may not require procedures "beyond those specified in the APA . . . ." *Chrysler Corp.*

12   *v. Brown*, 441 U.S. 281, 312-13 (quoting H.R. Rep. No. 79-1980 79th Cong., 2d Sess. (1946)).

13                                **ARGUMENT**

14   **I.     The Applicability Rule is a lawful exercise of the Agencies' rulemaking authority.**

15         Congress instructed EPA and the Corps to regulate discharges of pollutants into the waters

16   of the United States through the NPDES and 404 permitting programs. *See generally* 33 U.S.C.

17   §§ 1311, 1312, 1321, 1341, & 1344.  In CWA section 501, Congress also authorized EPA to

18   "prescribe such regulations as are necessary to carry out [its] functions under [the CWA]."  33

19   U.S.C. § 1361(a).  This broad authority includes the power to draft rules defining "waters of the

20   United States," as well as procedures for those seeking permits to discharge therein.  *See United*

21   *States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 134 (1985) (citing the "breadth of [the]

22   federal regulatory authority contemplated by the Act itself" when upholding the Corps' definition

25   Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
26   (No. 2:15-cv-01342-JCC)                    9

1  of "waters of the United States").  Thus, contrary to Plaintiffs' assertion, the "plain terms of the

2  CWA" <u>do</u> "provide authorization for the action taken."  Pl. Br. at 9.

3      Along with the authority to issue CWA regulations, the Agencies have concomitant

4  authority to revise such regulations to address changed facts and policy goals.  Just as the Agencies

5  had the authority to set the date for the 2015 Rule to take effect originally, they also have the

6  authority to change that date when warranted.  Changes to an agency rule merit the same deference

7  as the original; there is no "heightened standard" and the agency need not show that the new policy

8  is better than the old.  *F.C.C. v. Fox Television Stas., Inc.*, 556 U.S. 502, 514 (2009); *see also Nat'l*

9  *Cable & Telecommun's Ass'n. v. Brand X Internet Servs.*, 545 U.S. 967, 1001-02 (2005) (agency

10  "is free within the limits of reasoned interpretation to change course if it adequately justifies the

11  change").  Rather, "it suffices that the new policy is permissible under the statute, that there are

12  good reasons for it, and that the agency *believes* it to be better."  *Fox Television*, 556 U.S. at 515.

13      The Applicability Rule meets those criteria; the Agencies explained why they believe that

14  they can better carry out their functions if application of the 2015 Rule is postponed for two years.

15  83 Fed. Reg. at 5202 ("Addition of an applicability date to the 2015 Rule will result in additional

16  clarity and predictability and will ensure the application of a consistent interpretation and

17  definition of 'waters of the United States' nationwide . . . .").

18      Plaintiffs claim the Agencies must point to "a specific statutory provision that authorizes a

19  *stay* of final rules under the CWA."  Pl. Br. at 10 (emph. original).  Not so.  The Agencies have

20  been "delegated rulemaking authority under . . . the [CWA]," and with that comes "generous

21  leeway" to "refin[e]" the definition of waters of the United States through the rulemaking process.

22  *Rapanos v. United States*, 547 U.S. at 758 (Roberts, C.J. concurring) (such rulemakings "merit

23  deference under our generous standards").  That is exactly what the Agencies have done here:  they

24

25  Defendants' Cross-Motion for Summary Judgment/
   Response to Motion for Summary Judgment
26  (No. 2:15-cv-01342-JCC)

    10

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

have refined their 2015 definition of "waters of the United States" by adding an applicability date after the notice-and-comment rulemaking required to implement such regulatory changes. No separate statutory authority is needed simply because the change made to the 2015 Rule affects when that Rule will apply, as opposed to how it defines statutory or regulatory terms.

To suggest otherwise, Plaintiffs rely on *Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017). Pl. Br. at 10-11. But there, the D.C. Circuit vacated a stay issued pursuant to a Clean Air Act provision (42 U.S.C. § 7607(d)(7)(B)) that allows rules to be stayed without notice-and-comment rulemaking in certain circumstances.[8] The Court noted that "nothing in this opinion in any way limits EPA's authority to reconsider the final rule and proceed with its June 16 [notice of proposed rulemaking]." 862 F.3d at 14. Like the Applicability Rule, that June 16 notice announced EPA's intent to delay the applicability of regulations for two years, through notice-and-comment rulemaking, while it reconsidered them. *Id.* at 5. Indeed, agencies routinely delay compliance deadlines and effective dates through rulemaking for this purpose.[9]

Thus, despite Plaintiffs' arguments, there is nothing *ultra vires* about the Applicability Rule. Agencies can lawfully exercise their authority to revise regulations and extend the start of their application through notice-and-comment rulemaking, as the Agencies did here. The resulting regulation must be upheld so long as the Agencies express "good reasons for it, and [ ] the agency *believes* it to be better." *Fox Television*, 556 U.S. at 515 (emphasis original).

---

[8] Plaintiffs' reliance on *Natural Res. Defense Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 111-13 (2d Cir. 2018) is misplaced for the same reason. Here, the Agencies are not claiming to have "inherent authority to delay" a final rule without notice and comment.

[9] *E.g.*, 78 Fed. Reg. 53,033 (Aug. 28, 2013) (extending compliance dates for emissions limits for 18 months); 75 Fed. Reg. 16,012 (Mar. 31, 2010) (staying emissions requirements for 18 months); 74 Fed. Reg. 48,153 (Sept. 22, 2009) (staying regulation for nine months so EPA could reconsider); 74 Fed. Reg. 18,132 (Apr. 21, 2009) (delaying "applicability date" of DOL regulations by one year).

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

**II.     The Applicability Rule is not arbitrary or capricious.**

Because the Agencies have authority under the CWA to add an applicability date to the 2015 Rule through notice-and-comment rulemaking, their action must be upheld unless arbitrary, capricious, or otherwise unlawful.  5 U.S.C. § 706(2)(A).  Plaintiffs fail to make this showing.  The addition of an applicability date to the 2015 Rule was straightforward, sensible, and easily passes muster under that highly deferential standard of review.

> A.   The Agencies reasonably concluded that the Applicability Rule promotes core goals of the 2015 Rule: regulatory consistency and clarity.

The Agencies' decision to add an applicability date of February 6, 2020, to the 2015 Rule was reasonable.  It promoted "clarity, predictability, and consistency" by maintaining the status quo—the regulatory framework that applied throughout the Sixth Circuit's year-and-a-half long nationwide stay of the 2015 Rule.  It is also consistent with one of the purposes of the 2015 Rule: to "increase CWA program predictability and consistency." 80 Fed. Reg. 37,054.

When they proposed the Applicability Rule, the Agencies explained their concern that, if the Sixth Circuit stay were dissolved, different definitions of the "waters of the United States" would apply in different parts of the country.  Instead of a consistent, nationwide set of practices and standards, the definition of "waters of the United States" would depend on the geographic extent of preliminary injunctions secured by challengers of the 2015 Rule.  And, because the number of injunctions can change—as demonstrated by the Georgia and Texas courts' recent injunctions of the 2015 Rule in 14 more states—that geographic patchwork of different definitions of "waters of the United States" might shift.  Indeed, even for states where the 2015 Rule might have gone into effect, a court could set the Rule aside if it decides that challenges to the Rule have merit (as three courts have now held is "likely").  Considering this, the Agencies reasonably concluded that "[h]aving different regulatory regimes in effect throughout the country would be

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                         12

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

complicated and inefficient for both the public and the agencies."  83 Fed. Reg. at 5202.  This

reasoning easily satisfies the deferential standard of APA review.

Plaintiffs argue that Agencies' concerns about regulatory certainty and consistency are

"irrational," "unsupported by the record," and "contrary to reality."  Pl. Br. at 14.  They are not.

Plaintiffs admit that the 2015 Rule was promulgated to bring clarity and consistency to the

Agencies' permitting regimes.  Pl. Br. at 16 ("the Agencies' desire to reduce [ ] confusion was

perhaps the most prominent theme in the preamble for and discussion of the [2015] Rule").  Indeed,

the goal of "increas[ing] program predictability and consistency" was not only featured in the first

paragraph of the 2015 Rule, 80 Fed. Reg. 37,054, but repeated throughout.[10]  The Agencies

reiterated that theme in their Sixth Circuit brief defending the 2015 Rule.[11]  Thus, it is unsurprising

that, when the 2015 Rule was enjoined, the Agencies were concerned about whether applying that

Rule in only part of the country would be contrary its purpose.  *See* 83 Fed. Reg. at 5202 ("[h]aving

different regulatory regimes in effect throughout the country would be complicated and inefficient

for both the public and the agencies").  Plaintiffs' suggestion that those concerns were

manufactured late in the game to justify a predetermined outcome is thus belied by the record.

Moreover, it is rational and realistic for the Agencies to be concerned about the practical

impacts of applying multiple regulatory regimes.  Water resources cross state borders, meaning

that the Agencies would be confronted with confusing jurisdictional questions.  The Agencies

might be forced to apply multiple regulatory tests to make one determination.[12]  And the analysis

---

[10] 80 Fed. Reg. at 37,082 (Agencies defined neighboring waters to "provide greater clarity and consistency"), 37,090 ("enhancing regulatory clarity, predictability and consistency" justified boundary) & 37,095 (grouping waters as "similarly situated" for "will add consistency, predictability, and consistency").

[11] Brief for Respondents, *In re EPA*, No. 15-3751, Doc. 149 at 215 (6th Cir.) ("[T]he scope of the CWA jurisdiction after *Rapanos* lacked clarity. (That, of course, is what made the [2015] Rule necessary.)").

[12] For example: After the South Carolina court's decision, the 2015 Rule applies in Ohio, but remains enjoined in Indiana.  If a jurisdictional determination is requested for an Ohio water body that requires a

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                                13

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

applicable to a jurisdictional determination could change midway through the process if additional injunctions are granted.   These problems are compounded by the volume of jurisdictional determinations (over 5,000) and permit decisions (over 11,000) currently pending.  The Agencies' concerns about regulatory uncertainty and confusion are thus neither irrational nor insubstantial.[13] Indeed, when it stayed the 2015 Rule earlier this week, the Southern District of Texas explained that, if that rule applied now, "states . . . and their citizens" would have "to expend valuable resources and time operationalizing a rule that may not survive judicial review."  Ex. B. at 2.

Plaintiffs also argue that the 2015 Rule is the "regulatory status quo," and that the Agencies disturbed that status quo—and thereby caused, not cured, confusion—by promulgating the Applicability Rule.  Pl. Br. at 14.  But although the 2015 Rule was briefly in effect in 37 states, it never went into effect nationwide; rather, it was enjoined in 13 states on August 27, 2015, the day before it was to become effective.  And from October 9, 2015 until February 28, 2018, the 2015 Rule was enjoined nationwide.  *See In re EPA*, 803 F.3d at 806 (staying Rule nationwide in order to preserve the "status quo," which "is the pre-Rule regime of federal-state collaboration"); *In re Dept. of Defense*, 713 Fed. Appx. 489 (6th Cir. Feb. 28, 2018) (vacating stay).  The fact that, in addition to being enjoined in part of the country for all of its existence, the 2015 Rule has been enjoined in all of the country for most of its existence supports the Agencies' reasoned assessment of what should be considered the status quo as of February 2018.

significant nexus determination and that water is in a single point of entry watershed that extends into Indiana, the difficult question arises as to whether waters in the same watershed, but subject to different regulations, are "similarly situated" under the 2015 Rule.

[13] Plaintiffs assert that the Applicability Rule "increases regulatory uncertainty" because it requires the Corps to "apply an uncodified, rescinded regulatory scheme" (the pre-2015 regulations).  Pl. Br. at 15. But the Agencies' 1980s definitions of "waters of the United States" remain on the books, and can be easily viewed online.  *See* Ex. C (pre-2015 versions of 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3).

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                    14

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

1    Plaintiffs argue that, as in *Organized Village of Kake v. U.S. Dep't of Agriculture*, 795 F.3d

2    956, 970 (9th Cir. 2015), the Agencies' concerns about litigation fail to justify their action because

3    the agency merely "traded one lawsuit for another." Pl. Br. at 18. But in *Kake*, the Department of

4    Agriculture did not simply postpone application of a prior rule. It "reversed course" and exempted

5    an area from the prior regulation based on "unexplained" findings "directly contrary" to those in

6    the prior rule. *Id.* at 959, 968-69. As discussed below, the Agencies did not "reverse course" in

7    regard to the 2015 Rule by promulgating the Applicability Rule—which only adds an applicability

8    date to the 2015 Rule, rather than repealing it—and the findings underlying the two rules are

9    consistent, not contradictory. Both the 2015 Rule, as well as the modification made to that Rule

10   in the Applicability Rule, were intended to promote regulatory consistency and predictability.

11   Finally, Plaintiffs suggest that "the Agencies admitted they are sowing confusion by

12   publishing the Applicability Date Rule." Pl. Br. at 15. This assertion is disingenuous; the quoted

13   language discusses potential confusion between different WOTUS-related rulemakings the

14   Agencies have recently undertaken, not which definition of "waters of the United States" would

15   apply under the Applicability Rule. The Agencies made the latter quite clear.[14]

16       B.   The Agencies reasonably declined to reconsider the permanent merits of the 2015
            Rule in this discrete rulemaking.

17

18   Plaintiffs argue that the Agencies failed to engage in reasoned decision-making because

19   they allegedly did not consider the "substance or merits" of the 2015 Rule, and compare it with

20   the Agencies' 1980s regulations. Pl. Br. at 12. This argument fails for a number of reasons.

21

22

23   [14] *See* 83 Fed. Reg. at 5202 ("Until the applicability date of the 2015 Rule . . . the agencies will continue
     to implement nationwide the previous regulatory definition of 'waters of the United States'"; i.e., "the
     EPA and the Corps separate regulations defining the statutory term 'waters of the United States,' which
     are interpreted identically and have remained largely unchanged since 1977").

24

25   Defendants' Cross-Motion for Summary Judgment/        U.S. DOJ, Envtl. Defense Section
     Response to Motion for Summary Judgment               P.O. Box 7611; Washington, D.C.
26   (No. 2:15-cv-01342-JCC)                    15         amanda.berman@usdoj.gov
                                                           202-514-1950

First, under the APA's narrow standard of review, the reasoning necessary to support an agency action depends on the scope and nature of the action taken. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (agencies must examine "relevant data" and articulate a "satisfactory explanation" for the particular action taken). Here, the Applicability Rule does nothing more than delay application of the 2015 Rule for a finite period. So there was no reason for the Agencies to reconsider, in this rulemaking, the merits of that Rule.

Plaintiffs cite *Fox Television Stations*, 556 U.S. at 515, and *Sierra Club v. Zinke*, 286 F. Supp. 3d 1054, 1068 (N.D. Cal. 2018), for the idea that agencies must provide a "more detailed justification" where they "reverse" or "contradict" prior "factual findings." Pl. Br. at 13. But the Agencies did not do that here; they have not revised or repealed the 2015 Rule, and the "findings" on which the Applicability Rule is based—that postponing application of the 2015 Rule will avoid uncertainty and confusion—do not "contradict" the Agencies' 2015 findings. To the contrary, the Agencies' conclusion that the Applicability Rule will not harm the public is consistent with their conclusion in the 2015 Rule that the definition of "waters of the United States" therein would not expand the Agencies' jurisdiction. *See* 80 Fed. Reg. at 37,101.

Moreover, Plaintiffs' argument that Agencies had to compare the merits of the 2015 Rule with the prior regulations when promulgating the Applicability Rule rests on a false premise: that the Agencies were choosing between nationwide application of the 2015 Rule and nationwide application of the prior regulatory regime. No such choice was available. When the Agencies proposed the Applicability Rule, the 2015 rule was enjoined nationwide. And when the Agencies promulgated the final Applicability Rule, they knew the 2015 Rule would remain enjoined in at least thirteen states, and that litigants in other district courts would soon move to enjoin it elsewhere. Thus, the choice before the Agencies was whether to (1) apply, only in some states, a

1  rule that had been found likely to fail on the merits and enjoined by two courts, or (2) delay

2  application of that rule until legal uncertainty could be resolved and "restore uniformity of

3  regulation under the familiar, if imperfect, pre-[2015] Rule regime, pending judicial review." *In*

4  *re EPA*, 803 F.3d at 808.  In this context, the Agencies had no reason to consider the comparative

5  substantive merits of the 2015 and 1980s definitions of "waters of the United States."  They were

6  not choosing which of those definitions should apply long-term, but only whether the definition in

7  the 2015 Rule should apply in the near term, while it remains enjoined in much of the country.

8           Plaintiffs rely on *California ex. rel. Lockyer v. USDA*, 575 F.3d 999 (9th Cir. 2009) to

9  argue that the Agencies cannot avoid considering "the substance of the[ir] decision" because a

10  prior regulation has been enjoined.  Pl. Br. at 22.  But the language Plaintiffs quote shows how

11  different the situation was in that case.  That challenged rulemaking "had the effect of permanently

12  repealing uniform, nationwide, substantive protections."  *Id.* (quoting 575 F.3d at 1021).  Here,

13  the Applicability Rule is of limited duration, and does not repeal or revise the 2015 Rule's

14  definition of "waters of the United States."  As the Agencies explained, any such action will be

15  taken in a separate rulemaking, where the Agencies will squarely address whether the 2015 Rule

16  should be permanently revised or repealed.  82 Fed. Reg. at 55,545

17           Plaintiffs contend that a rule should not be reviewed "under a less stringent standard

18  because it [is] only temporary.  Pl. Br. at 19 (citing *Public Citizen v. Steed*, 733 F.2d 93 (D.C. Cir.

19  1984)).[15]  The Agencies agree; the normal APA standard, under which an action must be upheld

20  so long as it is rational, applies here.  However, every action (including the Applicability Rule)

21

22

23  _____

24  [15] While the Agencies agree with the proposition for which *Steed* is cited, that case was different because the agency had <u>indefinitely</u> suspended, and thus effectively revoked, prior rules.  *See* 733 F.2d at 98.

25

26

must be fairly assessed based on the nature of, and the reasoning put forth in support of that particular action—not unfairly compared with a prior action of much larger scope and substance.

Finally, Plaintiffs' argument that the Agencies should have substantively re-examined the permanent merits of the 2015 Rule also ignores that the Agencies are separately undertaking a fulsome, substantive reconsideration of that Rule.  82 Fed. Reg. at 55,545 (substantive issues "related to the 2015 Rule[]" will be addressed "in the [separate] notice and comment rulemaking to consider adopting a revised definition of 'waters of the United States'").  Plaintiffs have been provided the opportunity to have their views of the 2015 Rule's substance and protections heard in that separate process.  *See* 82 Fed. Reg. at 34,903; 83 Fed. Reg. at 5201.  Addressing such issues in a separate rulemaking is entirely logical because the issue here—whether to defer applicability of the 2015 Rule given the shifting legal landscape and ongoing reconsideration—is distinct from the issue of how "waters of the United States" should be defined long-term.  This is exactly the sort of bifurcated process that the D.C. Circuit acknowledged is appropriate in *Clean Air Council*: staying a rule under reconsideration for a limited time through one notice-and-comment rulemaking, while undertaking a broader reconsideration through another.  *See* 862 F.3d at 4, 14.

Plaintiffs rely on *North Carolina Growers' Ass'n v. United Farm Workers*, 702 F.3d 755 (4th Cir. 2012), to argue otherwise.  Pl. Br. at 19-21.  But there, the agency's own reasoning for suspending the regulation made the regulation's merits "integral" to the suspension decision.  702 F.3d at 769-70.  Here, the Agencies appropriately took comment on issues relevant to how to proceed for the next two years while litigation challenging the 2015 Rule is ongoing and further regulatory action is pending, and merely deferred more complex questions about the best permanent rule for consideration in separate rulemaking proceedings.  Further, in *North Carolina Growers*, the challenged action undermined settled expectations of parties who had already made

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                          18

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

significant expenditures and decisions based on the suspended regulation.  *See id.*  Here, in contrast, the 2015 Rule's goal of a consistent definition of "waters of the United States" was never achieved due to preliminary stays of the Rule, and so there were no "settled expectations" to disturb.  *North Carolina Growers* therefore did not foreclose the Agencies from focusing here on "whether it is desirable and appropriate to add an applicability date."  82 Fed. Reg. at 55,544.

Plaintiffs will no doubt cite a recent South Carolina district court decision that relied on *North Carolina Growers* to enjoin the Applicability Rule.  *See South Carolina Coastal Conserv'n. League v. Pruitt*, No. 18-cv-330, Order, Dkt. No. 66 at 6-13 (D.S.C. Aug. 16, 2018).  That decision, however, failed to recognize the differences discussed above.  The court instead overgeneralized from the outcome of *North Carolina Growers* to hold that an agency must always fully reconsider the "substance or merits" of a rule it is postponing.  *Id.* at 10.  But the Fourth Circuit's holding was not that broad.  And the South Carolina court did not give adequate weight to the fact that, here, there was no uniform preexisting regulatory regime due to preliminary injunctions of the 2015 Rule.  The Agencies do not contend that the challenges to the 2015 Rule "mean that agencies may disregard" the APA.  *Id.* at 13.  But agencies <u>are</u> entitled to tailor their rulemakings to the situation before them, which is what they did here.  The Agencies' decision to decline to engage in full-scale reanalysis of the 2015 Rule in this discrete rulemaking was pragmatic and rational.

C.   The Agencies considered the effects of the Applicability Rule.

Plaintiffs argue that the Agencies had to "justify [the Applicability Rule's] substance and merits" even though it was a "temporary measure."  Pl. Br. at 19.  The Agencies did just that.

When they proposed the Applicability Rule, the Agencies sought comment on, *inter alia,* "whether it is desirable and appropriate to add an applicability date to the 2015 Rule" and thus maintain the prior regulatory regime for two years, or whether allowing the 2015 Rule to be applied

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                                    19

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

now would be better.  82 Fed. Reg. at 55,544.  When they promulgated the final Rule, the Agencies addressed a wide range of topics, including whether they had statutory authority to adopt an applicability date; whether the Applicability Rule would upset implementation of the CWA; whether the Applicability Rule would preserve the status quo, and (if so) whether doing so would benefit the public; and whether piecemeal application of different rules in different states could be confusing and lead to public hardships.  83 Fed. Reg. at 5203-07.  Thus, the Applicability Rule was no "rushed paperwork exercise." Pl. Br. at 12.  It was a notice-and-comment rulemaking wherin the Agencies comprehensively considered the problem before them.

Plaintiffs claim that the Agencies improperly "void[ed] the [2015] Rule's protections without considering the effects on the CWA's goal of cleaner water."  Pl. Br. at 13.  But the Agencies weighed the costs and benefits of postponing application of the 2015 Rule in a record memorandum supporting the Applicability Rule, in which they responded to "commenters [who] argued that removing waters from federal jurisdiction would mean that waters would not be protected."  Ex. D, *Consideration of Potential Economic Impacts*, at 2 (Jan. 30, 2018).  The Agencies explained that they disagreed because that argument "depends on a baseline of the 2015 Rule being implemented," but the 2015 Rule was stayed nationwide and likely would remain enjoined in much of the country.  *Id.*  The Agencies concluded that, on balance, the Applicability Rule would benefit the public by avoiding piecemeal application of the 2015 Rule while there was uncertainty as to "whether the 2015 Rule would be in effect, even for part of the nation, for an extended period of time."  *Id.* at 4-5.  The Court should not "substitute its judgment for that of the agency" on these issues.  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 492, 416 (1971).

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

**III.     The Court should not vacate or enjoin the Applicability Rule.**

Even if the Court believes that Plaintiffs' claims have merit, it should not vacate or enjoin the Applicability Rule.  As noted above, a South Carolina district court recently enjoined the Applicability Rule nationwide.  So long as that injunction remains in place, no further remedy is warranted; indeed, the South Carolina court's action precludes any possible finding of "irreparable harm absent . . . relief."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1287 (9th Cir. 2013).  Rather, if the Court rules for Plaintiffs, it should hold further proceedings in abeyance until a remedy could have practical effect.  If that time comes, the parties should be permitted to further brief the remedy issue.  But even if the District of South Carolina's injunction were stayed or vacated, this Court still should not vacate or enjoin the Applicability Rule.  Remand is the only appropriate remedy for any error, and the broad vacatur Plaintiffs request (Pl. Br. at 24) is at odds with Article III and equitable principles.

A.   <u>Remand, not vacatur or injunction, is the only appropriate remedy here.</u>

Notwithstanding the South Carolina court's decision, neither vacatur nor an injunction is required if the Court concludes the Applicability Rule is deficient.  Rather, "where it is not at all clear that the agency's error incurably tainted the agency's decisionmaking process, the remedy of remand <u>without vacatur</u> is surely appropriate."  *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) (emphasis added).

The Ninth Circuit has adopted the test formulated by the D.C. Circuit for deciding when remand without vacatur is appropriate, which balances the seriousness of the action's deficiencies against the disruptive consequences of a vacatur.  *See Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012) (per curiam); *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993).  Under that test, remanding a rule is "generally appropriate

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

1   when 'there is at least a serious possibility that the [agency] will be able to substantiate its decision'

2   given an opportunity to do so, and when vacating would be 'disruptive.'"   *Central & SW Servs.,*

3   *Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000) (quoting *Allied-Signal*, 988 F.2d at 151).   Here, the

4   disruptive effect of vacating the Applicability Rule would be significant.   One of the purposes

5   of the 2015 Rule was to promote "predictability and consistency" in the application of the

6   Agencies' CWA permitting program.   80 Fed. Reg. 37,054.   But absent the Applicability Rule,

7   different definitions of "waters of the United States" would apply in different parts of the

8   country—and even sometimes within the same region.   Such a regulatory patchwork would be

9   "complicated and inefficient for both the public and the agencies," 83 Fed. Reg. at 5202, and does

10   not serve the public interest.

11        At a minimum, the Agencies respectfully request that the Court order supplemental briefing

12   so that the issue of remedy might be more fully addressed.   The factors relevant to this issue are

13   fact-specific, turning on the nature of any deficiency the Court identifies and the state of affairs

14   when the Court issues its decision.   Given the Agencies' appeal of the South Carolina court's

15   injunction and the challenges to the Applicability Rule pending elsewhere, events relevant to

16   remedy will likely develop after this filing, and should be addressed before any remedy is ordered.

17        B.   The Court should limit the scope of any relief to the parties before the Court.

18        If the Court were to vacate the Applicability Rule as requested (Pl. Br. at 24), the

19   scope of that vacatur should not be nationwide.   Nationwide remedies are strongly

20   disfavored.[16]   As the New York court considering Applicability Rule challenges noted when

21

22   ─────────────────────────
[16] *See United States Dep't of Def. v. Meinhold*, 510 U.S. 939 (1993) (staying injunction to extent it

23   reached beyond parties); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664-65 (9th Cir.
2011) (nationwide relief "too broad").   *See also Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018)

24   (Thomas, J., concurring) (nationwide injunctions "prevent[] legal questions from percolating through the
federal courts" and "encourage[e] forum shopping").

25   Defendants' Cross-Motion for Summary Judgment/        U.S. DOJ, Envtl. Defense Section
     Response to Motion for Summary Judgment               P.O. Box 7611; Washington, D.C.
26   (No. 2:15-cv-01342-JCC)                22              amanda.berman@usdoj.gov
                                                            202-514-1950

1    ruling on a procedural motion, such broad injunctions "are relatively new and legally untested."

2    *NRDC, Inc. v. EPA*, No. 1:18-cv-01048-JPO, Dkt. No. 81 at 10 (S.D.N.Y. May 29, 2018).

3    Thus, the Ninth Circuit recently vacated a nationwide injunction, noting that they are limited to

4    "exceptional cases." *San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. Aug. 1, 2018).

5         Moreover, Article III standing principles require that any relief be limited to what is

6    necessary to prevent injury to the plaintiffs.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996)

7    ("The actual-injury requirement would hardly serve [its] purpose . . . if once a plaintiff

8    demonstrated harm from one particular inadequacy in government administration, the court

9    were authorized to remedy *all* inadequacies in that administration.")  Nationwide relief would

10   thus require a finding that Plaintiffs proved "concrete and particularized" "injury in fact" in each

11   U.S. state and territory necessary to establish Article III standing.  *Lujan v. Defenders of Wildlife*,

12   504 U.S. 555, 560 (1992); *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)

13   (Article III requires a plaintiff to "demonstrate standing for each claim he seeks to press and for

14   each form of relief that is sought.")  Here, Plaintiffs' standing arguments are primarily

15   predicated on allegations that regional waters their members use are better protected by the

16   2015 Rule.  *See, e.g.,* Declarations of James Dewitt (Doc. No. 51-3) ¶¶ 1-4, 7-11, 13-15

17   (alleging that he birds, hikes and fishes in Idaho, Alaska, and Oregon); Peter C. Haase (Doc.

18   No. 51-5) ¶¶ 7-17 (alleging that he recreates in and around Puget Sound and Padilla Bay); &

19   Chris Wilke (Doc. No. 51-10) ¶¶ 7-9 (declarant sails and fishes in "Puget Sound and its

20   tributaries").[17]  Nationwide relief would accordingly be inappropriate here.  Instead, under

21   Article III principles this Court may only set aside the Applicability Rule in regard to a

22

23   ────────────────
     [17] While Plaintiffs have alleged interests in waters in a few other states such as Minnesota, Tennessee, and
24   Michigan, their claim that their members have "recreational and aesthetic interests in specific [waters]
     throughout the country" (Pl. Br. at 23) is not sufficiently supported to justify broader relief.

25   Defendants' Cross-Motion for Summary Judgment/        U.S. DOJ, Envtl. Defense Section
     Response to Motion for Summary Judgment              P.O. Box 7611; Washington, D.C.
26   (No. 2:15-cv-01342-JCC)                  23          amanda.berman@usdoj.gov
                                                          202-514-1950

1    "concrete action applying the regulation to the claimant's situation in a fashion that harms or

2    threatens to harm him."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  There is

3    no showing in Plaintiffs' declarations that the Applicability Rule will result in any particular

4    water being deemed beyond the jurisdiction of the CWA, nor is there any showing that such

5    application will result in pollution that injures them.  This Court therefore should not vacate

6    or enjoin the Applicability Rule as to every state and water nationwide.  *See also* Ex. B

7    (Texas order enjoining 2015 Rule) (explaining that the "extraordinary remedy" of a preliminary

8    injunction "should only be granted nationwide when it is clear and unambiguous that the harm

9    threatened is one of national character," which the evidence did not establish).

10       Nationwide relief is also inappropriate where it would encroach on the jurisdiction of

11   other courts considering challenges to the same rulemaking.[18]  Here, the Court should not

12   render the other pending Applicability Rule challenges (in which many litigants support the

13   Rule) ineffective.  In accordance with that important principle, the North Dakota, Georgia and

14   Texas courts' injunctions of the 2015 Rule cover only the states that are the plaintiffs in

15   those actions.  If the Court were to conclude that relief is appropriate here, it should similarly

16   limit the scope of that relief to avoid conflicts with the other courts considering challenges to

17   the Applicability Rule.  The South Carolina court erred by awarding a nationwide remedy,[19] and

18   that error should not be repeated and compounded here.

19

20

21   [18] *See Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001), *overruled on other grounds by The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544 (4th Cir. 2012) (rejecting nationwide injunction because it "preclud[ed] other circuits from ruling").

22

23   [19] In doing so, the court relied on the Seventh Circuit's affirmance of a nationwide injunction.  *South Carolina Coastal Cons. League*, No. 18-cv-330, Dkt. No. 66 at 18 n. 4 (citing *City of Chicago v. Sessions*, 888 F.3d 272, 288 (7th Cir. 2018)).  But the Seventh Circuit subsequently vacated that nationwide relief.  *See* Order (Ex. E), *City of Chicago v. Sessions*, No. 17-2991, Dkt. No. 128 (7th Cir. June 4, 2018).

24

25   Defendants' Cross-Motion for Summary Judgment/
     Response to Motion for Summary Judgment                    U.S. DOJ, Envtl. Defense Section
26   (No. 2:15-cv-01342-JCC)              24                    P.O. Box 7611; Washington, D.C.
                                                                amanda.berman@usdoj.gov
                                                                202-514-1950

Respectfully submitted this 14th day of September, 2018.

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

JONATHAN BRIGHTBILL
Deputy Assistant Attorney General

*/s/ Amanda Shafer Berman*
AMANDA SHAFER BERMAN
ANDREW J. DOYLE
SUE CHEN
SIMI BHAT
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Tel: (202) 514-0223
Fax: (202) 514-8865
amanda.berman@usdoj.gov

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                      25

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on September 14, 2018, I electronically filed the foregoing CROSS-

3

MOTION FOR SUMMARY JUDGMENT with the Court using the CM/ECF system, which

4

will send notification of this filing to the attorneys of record and all registered participants.

5

*/s/ Amanda Shafer Berman*
Amanda Shafer Berman

6

United States Department of Justice
Environmental Defense Section

7

P.O. Box 7611
Washington, DC 20044

8

Tel: (202) 514-1950
Fax: (202) 514-8865

9

Amanda.berman@usdoj.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendants' Cross-Motion for Summary Judgment/
Response to Motion for Summary Judgment
(No. 2:15-cv-01342-JCC)                        26

U.S. DOJ, Envtl. Defense Section
P.O. Box 7611; Washington, D.C.
amanda.berman@usdoj.gov
202-514-1950