THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

PUGET SOUNDKEEPER ALLIANCE, *et al.*,            CASE NO. C15-1342-JCC

10
                          Plaintiffs,             ORDER

11          v.

12   ANDREW WHEELER, *et al.*,

13                        Defendants,

14
     and
15
     AMERICAN FARM BUREAU
16   FEDERATION, *et al.*,

17

18                   Intervenor-Defendants.

19

20          This matter comes before the Court on Plaintiffs' motion for summary judgment (Dkt.

21   No. 51) and Defendants' cross-motion for summary judgment (Dkt. No. 57). Having thoroughly

22   considered the parties' briefing and the relevant record, the Court finds oral argument

23   unnecessary and hereby GRANTS in part and DENIES in part Plaintiffs' motion for summary

24   judgment and GRANTS in part and DENIES in part Defendants' cross-motion for summary

25   judgment for the reasons explained herein.

26   //

1    **I.      BACKGROUND**

2           The objective of the Clean Water Act (the "CWA") is "to restore and maintain the

3    chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The CWA

4    applies to "navigable waters," which are defined as "waters of the United States, including the

5    territorial seas." 33 U.S.C. §§ 1251(a)(1), 1362(7). The scope of the regulatory definition of

6    "navigable waters" has been the subject of several Supreme Court opinions. *See Rapanos v.*

7    *United States*, 547 U.S. 715 (2006); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corp. of*

8    *Engineers*, 531 U.S. 159 (2001); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121

9    (1985).

10          In 2015, the U.S. Army Corps of Engineers (the "Corps") and the Environmental

11   Protection Agency (the "EPA") (collectively, the "Agencies") issued a final rule defining the

12   jurisdictional scope of the CWA. Clean Water Rule: Definition of "Waters of the United States,"

13   80 Fed. Reg. 37,054 (Jun. 29, 2015) (to be codified at 33 C.F.R. pt. 328) (the "WOTUS Rule").

14   The WOTUS Rule sought to make "the process of identifying waters protected under the CWA

15   easier to understand, more predictable, and consistent with the law and peer-reviewed science . . .

16   ." *Id*. at 37,055. The WOTUS Rule became effective on August 28, 2015. *Id*. at 37,054.

17          Following multiple legal challenges to the WOTUS Rule across the United States, the

18   Sixth Circuit issued a nationwide stay of the WOTUS Rule in October 2015. *In re E.P.A.*, 803

19   F.3d 804, 808 (6th Cir. 2015), *vacated sub nom. In re United States Dep't of Def.*, 713 F. App'x

20   489 (6th Cir. 2018). In February 2016, the Sixth Circuit separately held that it had original

21   jurisdiction over challenges to the WOTUS Rule. *In re U.S. Dep't of Def., U.S. E.P.A. Final*

22   *Rule: Clean Water Rule: Definition of Waters of U.S.*, 817 F.3d 261, 274 (6th Cir. 2016), *cert.*

23   *granted sub nom. Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 137 S. Ct. 811 (2017), *and rev'd and*

24   *remanded sub nom. Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617 (2018). In January 2018,

25   the United States Supreme Court reversed the Sixth Circuit and held that challenges to the

26   WOTUS Rule must be brought in federal district courts. *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 634.

1    The Sixth Circuit subsequently vacated its nationwide stay. *In re United States Dep't of Def.*, 713
2    F. App'x at 490.
3           While the Supreme Court considered the Sixth Circuit's jurisdictional ruling, the
4    Agencies proposed a rule that would add an applicability date to the WOTUS Rule. Definition of
5    "Waters of the United States" —Addition of an Applicability Date to 2015 Clean Water Rule, 82
6    Fed. Reg. 55,542, 55,542 (Nov. 22, 2017) (to be codified at 33 C.F.R. pt. 328). The proposed
7    rule would delay the effect of the WOTUS Rule for two years from the date that final action was
8    taken on the proposed rule, in order to maintain the status quo and provide regulatory certainty in
9    case the Sixth Circuit's nationwide stay was vacated. *Id*. at 55,542. The Agencies solicited
10   comments on only the issue of whether adding an applicability date would be desirable and
11   appropriate, and expressly did not solicit comments on the merits of the pre-2015 definition of
12   "waters of the United States," or on the scope of the definition that the Agencies should adopt if
13   they repealed and revised the WOTUS Rule. *Id*. at 55,544–45.
14          In February 2018, after holding a 21-day comment period on the proposed addition of an
15   applicability date, the Agencies published a final rule adding an applicability date to the WOTUS
16   Rule, which would suspend the effectiveness of the WOTUS Rule until February 2020.
17   Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean
18   Water Rule, 83 Fed. Reg. 5,200, 5,200, 5,205 (Feb. 6, 2018) (to be codified at 33 C.F.R. pt. 328)
19   (the "Applicability Date Rule"). Under the Applicability Date Rule, the Agencies would apply
20   the pre-2015 definition of "waters of the United States" in the interim. *Id*. at 5,200.
21          In May 2018, Plaintiffs filed a first amended and supplemental complaint for declaratory
22   and injunctive relief, which added claims against the Applicability Date Rule. (Dkt. No. 33.)
23   Plaintiffs move for summary judgment on these claims. (Dkt. No. 51 at 13.) Intervenor-
24   Defendants have filed an opposition to Plaintiffs' motion for summary judgment (Dkt. No. 55)
25
26

1    and Defendants have filed a cross-motion for summary judgment (Dkt. No. 57).[1]

2    **II.    DISCUSSION**

3         **A.    Standing**

4              Plaintiffs assert that they have associational and organizational standing to challenge the

5    Applicability Date Rule. (Dkt. No. 51 at 29–30.) Defendants have not opposed Plaintiffs' motion

6    for summary judgment for lack of standing. (*See generally* Dkt. No. 57.) An association may

7    bring suit on behalf of its members when "(a) its members would otherwise have standing to sue

8    in their own right; (b) the interests it seeks to protect are germane to the organization's purpose;

9    and (c) neither the claim asserted nor the relief requested requires the participation of individual

10   members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343

11   (1977). Individual members of the association must establish that they would have standing to

12   bring suit themselves by showing that they have:

> (1) suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual
> or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the
> challenged action of the defendant; and (3) it is likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

16             Plaintiffs have submitted several declarations from their individual members, which

17   detail the members' recreational and aesthetic interests in various wetlands, tributaries, and other

18   smaller bodies of water. (*See generally* Dkt. Nos. 51-3–51-5, 51-7–51-9.) These declarations

19   state that these bodies of water were generally protected under the broader definition of "waters

20   of the United States" set forth by the WOTUS Rule, and now face increased risks of pollution

21   following the promulgation of the Applicability Date Rule. (*See id.*) Declarations submitted by

---

[1] The issues presented in the parties' cross-motions for summary judgment turn on the Agencies' promulgation of the Applicability Date Rule. (*See* Dkt. Nos. 51 at 7, 57 at 9.) The legality and merits of the WOTUS Rule, argued extensively in Intervenor-Defendants' briefing, are not at issue. (*See* Dkt. No. 55 at 10–21.) Beyond consideration of whether vacatur of the Applicability Rule is warranted, the Court will not address Intervenor-Defendants' other arguments.

1   Plaintiffs' employees state that Plaintiffs' organizational purposes include the protection of

2   surface waters and enforcement of the CWA. (*See* Dkt. Nos. 51-2 at 2–3, 51-6 at 2–6, 51-10 at

3   2–3.) Plaintiffs have established that their individual members have suffered injury in fact that is

4   fairly traceable to the promulgation of the Applicability Date Rule, and that those injuries would

5   be redressed by a favorable decision by this Court. They have also established that the interests

6   sought to be protected are germane to Plaintiffs' organizational purposes. In addition, the issues

7   presented in this case are purely legal and do not require the participation of Plaintiffs' individual

8   members to be resolved. Therefore, Plaintiffs have established that they have associational

9   standing to challenge the Applicability Date Rule.[2]

10   **B.      Summary Judgment Legal Standard**

11   "The court shall grant summary judgment if the movant shows that there is no genuine

12   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13   Civ. P. 56(a). Where a case involves review of a final agency action under the Administrative

14   Procedure Act (the "APA"), "the court's review is limited to the administrative record." *Nw.*

15   *Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). In their cross-

16   motions for summary judgment, the parties agree that there are no genuine issues of material

17   fact, and that this case may be resolved on summary judgment. (Dkt. Nos. 51 at 13–14, 57 at 16.)

18   **C.      *Ultra Vires* Action**

19   Plaintiffs contend that the Applicability Date Rule is *ultra vires* because the Agencies

20   failed to cite a provision of the CWA granting them authority to stay, delay, suspend, or fail to

21   enforce the already-effective WOTUS Rule. (Dkt. No. 51 at 15.) "[A]n agency literally has no

22   power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n*

23

24   _____

[2] The Court notes that Plaintiffs have also established organizational standing to
25   challenge the Applicability Date Rule, as their submitted declarations demonstrate that they have
suffered concrete and demonstrable injury to their activities following the promulgation of the
26   Applicability Date Rule, which has consequently drained their resources. (Dkt. Nos. 51-2 at 3–5,
51-6 at 4–5, 51-10 at 7–8); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

*v. F.C.C.*, 476 U.S. 355, 374 (1986). Thus, an agency has "no constitutional or common law existence or authority, but *only* those authorities conferred upon it by Congress." *Michigan v. E.P.A.*, 268 F.3d 1075, 1081 (D.C. Cir. 2001).

Under the APA, when an agency engages in rule making, it must publish a general notice of the proposed rule making in the Federal Register, give "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," and "incorporate in the rules adopted a concise general statement of their basis and purpose" following review. 5 U.S.C. § 553(b),(c). After a final rule has been promulgated, an agency seeking to amend or revoke the rule must comply with these notice and comment requirements. 5 U.S.C. § 551(5) ("rule making" is defined as "agency process for formulating, amending, or repealing a rule"); *see Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) ("an agency issuing a legislative rule is itself bound by that rule until that rule is amended or revoked and may not alter [such a rule] without notice and comment") (internal quotations omitted). Therefore, when an agency suspends, retracts, or otherwise postpones the application or enforcement of an already-effective rule, the rule through which the suspension or retraction is effected must comply with the APA's notice and comment requirements. *See, e.g.*, *State v. United States Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1120–21 (N.D. Cal. 2017) (Bureau of Land Management was required to comply with APA's notice and comment requirements prior to postponing compliance dates in already-effective rule); *Becerra v. United States Dep't of Interior*, 276 F. Supp. 3d 953, 965–66 (N.D. Cal. 2017) (Office of Natural Resources was required to comply with APA's notice and comment requirements prior to essentially repealing already-effective rule through postponement of effectiveness).

Because the Applicability Date Rule suspended the already-effective WOTUS Rule, the Agencies were required to comply with the APA's procedural notice and comment

ORDER
C15-1342-JCC
PAGE - 6

1   requirements.[3] *See Becerra*, 276 F. Supp. 3d at 965–66. The Agencies did so when they

2   published a general notice of the proposed rule making in the Federal Register, *see* 82 Fed. Reg.

3   55,542, and held a 21-day comment period, *see* 83 Fed. Reg. 5,200 at 5,205. 5 U.S.C. §

4   553(b),(c). Therefore, the Agencies acted within the bounds of their statutory authority in

5   promulgating the Applicability Date Rule to suspend the already-effective WOTUS Rule.

6   Plaintiffs' motion for summary judgment is DENIED on this ground and Defendants' cross-

7   motion for summary judgment is GRANTED on this ground.

8         **D.      Arbitrary and Capricious**

9         Having concluded that the Agencies procedurally satisfied their notice and comment

10   obligations under the APA, the next issue before the Court is whether the notice and comment

11   period was substantively sufficient under the APA. For an agency to meet its obligation under

12   the APA, "[t]he opportunity to comment must be a meaningful opportunity." *Rural Cellular*

13   *Ass'n v. F.C.C.*, 588 F.3d 1095, 1101 (D.C. Cir. 2009).

14         The APA governs judicial review of agency action and permits courts to set aside agency

15   action and findings when they are "arbitrary, capricious, an abuse of discretion, or otherwise not

16   in accordance with law." 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious under the

17   APA if the agency "entirely fail[s] to consider an important aspect of the problem . . . ."

18   *Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1521 (9th Cir. 1995). Although generally

19   the APA's standard of review is highly deferential, courts must ensure "that agencies comply

20   with the 'outline of minimum essential rights and procedures' set out in the APA." *Nw.*

21   *Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007); *cf. Chrysler*

22   *Corp. v. Brown*, 441 U.S. 281, 313 (1979) (quoting H.R.Rep. No. 1980, 79th Cong., 2d Sess., 16

23   (1946)). Therefore, "[t]hough [a court's] review of an agency's final decision is relatively

24

25         [3] The Agencies relied in part on their general rule making authority under the CWA to
26   promulgate the Applicability Date Rule. *See* 83 Fed. Reg. 5,200 at 5,202 ("The authority for this
     action is . . . 33 U.S.C. 1251, et seq., including section[] . . . 501").

1   narrow, we must be strict in reviewing an agency's compliance with procedural rules." *BASF*

2   *Wyandotte Corp. v. Castle*, 598 F.2d 637, 641 (1st Cir. 1979) (citing *Weyerhaeuser Co. v. Castle*,

3   590 F.2d 1011, 1027–28 (D.C. Cir. 1978)).

4       The Fourth Circuit previously analyzed an attempted rule making that is factually

5   analogous to the present case. *See N. Carolina Growers' Ass'n, Inc. v. United Farm Workers*,

6   702 F.3d 755 (4th Cir. 2012). In 1987, the Department of Labor (the "Department") promulgated

7   regulations (the "1987 regulations") implementing the Immigration Reform and Control Act

8   amendments to the Immigration and Nationality Act (the "H-2A program"). *Id.* at 759. In

9   December 2008, the Department published a final rule that made substantial changes to the 1987

10  regulations, which became effective in January 2009 (the "2008 regulations"). *Id.*

11      In March 2009, the newly-appointed Secretary of Labor issued a notice of proposed rule

12  making that would suspend the 2008 regulations for nine months for further review and

13  consideration, and in the interim would reinstate the 1987 regulations. *Id.* at 760. The

14  Department allowed for a 10-day comment period, during which it "would consider comments

15  concerning the suspension action itself, and not regarding the merits of either set of regulations

16  (the content restriction)." *Id.* at 761. In May 2009, the Department published a final rule

17  suspending the 2008 regulations and reinstating the 1987 regulations (the "2009 suspension

18  rule"). *Id.*

19      The Fourth Circuit considered whether the Department's action in suspending the 2008

20  regulations constituted rule making under the APA and, if so, whether the Department satisfied

21  the APA's notice and comment requirements. *Id.* at 758. The Fourth Circuit rejected the

22  defendants' argument that the reinstatement of the 1987 regulations did not constitute rule

23  making under the APA, noting that:

24          When the 2008 regulations took effect on January 17, 2009, they superseded the
            1987 regulations for all purposes relevant to this appeal. As a result, the 1987
25          regulations ceased to have any legal effect, and their reinstatement would have put
            in place a set of regulations that were new and different "formulations" from the
26          2008 regulations.

ORDER
C15-1342-JCC
PAGE - 8

1     *Id*. at 765. The Fourth Circuit concluded that the Department engaged in rule making when it

2     "reinstat[ed] the superseded and void 1987 regulations (albeit temporarily)," and thus held that

3     the Department was required to comply with the APA's notice and comment procedures. *Id*. at

4     765–66.

5          The Fourth Circuit then turned to the scope of comments considered by the Department

6     prior to the promulgation of the 2009 suspension rule. *Id*. at 769. The Fourth Circuit concluded

7     that "the Department refused to receive comments on and to consider or explain 'relevant and

8     significant issues,'" as the Department's stated reasons for the 2009 suspension rule called into

9     question the efficacy of the 2008 regulations' review process as compared to that provided for

10    the 1987 regulations. *Id*. at 770. The Fourth Circuit noted that these comments were "integral to

11    the proposed agency action and the conditions that such action sought to alleviate," as well as the

12    "exceedingly short duration of the comment period" as compared to the 2008 regulations' 60-day

13    comment period. *Id*. at 769–70. The Fourth Circuit held that "because the Department did not

14    provide a meaningful opportunity for comment, and did not solicit or receive relevant comments

15    regarding the substance or merits of either set of regulations . . . the Department's reinstatement

16    of the 1987 regulations was arbitrary and capricious in that the Department's action did not

17    follow procedures required by law." *Id*. at 770.

18         The facts in this case are substantively indistinguishable from those examined by the

19    Fourth Circuit. THE WOTUS Rule established a new definition of the "waters of the United

20    States," and rendered the pre-2015 definition legally void when it became effective. 80 Fed. Reg.

21    37,054 at 37,054, 37,058; *see N. Carolina Growers' Ass'n, Inc.*, 702 F.3d at 765. The Agencies

22    then sought to suspend the WOTUS Rule and reinstate the pre-2015 definition of "waters of the

23    United States" via promulgation of the Applicability Date Rule. 83 Fed. Reg. 5,200 at 5,200. The

24    Agencies' reinstatement of the pre-2015 definition of "the waters of the United States," even

25    temporarily, constituted rule making subject to the APA's notice and comment requirements. *See*

26    *N. Carolina Growers' Ass'n, Inc.*, 702 F.3d at 765–66. Although the Agencies held a 21-day

comment period, they expressly excluded substantive comments on either the pre-2015 definition of "waters of the United States" or the scope of the definition that the Agencies should adopt if they repealed and revised the WOTUS Rule. 82 Fed. Reg. 55,542 at 55,545. Instead, the Agencies limited the content of the comments considered to the issue of "whether it is desirable and appropriate to add an applicability date to the [WOTUS Rule]." *Id.* at 55,544. By restricting the content of the comments solicited and considered, the Agencies deprived the public of a meaningful opportunity to comment on relevant and significant issues in violation of the APA's notice and comment requirements. *BASF Wyandotte Corp.*, 598 F.2d at 641. Therefore, the Agencies acted arbitrarily and capriciously when they promulgated the Applicability Date Rule.

Defendants attempt to distinguish this case from *N. Carolina Growers' Ass'n, Inc.*, but their arguments are unpersuasive. First, Defendants argue that the Agencies appropriately considered comments "relevant to how to proceed for the next two years while litigation challenging the [WOTUS] Rule is ongoing and further regulatory action is pending" while deferring more complex issues for a separate rule making proceeding. (Dkt. Nos. 57 at 26, 59 at 14) (citing *N. Carolina Growers' Ass'n, Inc.*, 702 F.3d at 769–70 (noting that Department's stated reasons for suspending the 2008 regulations rendered excluded comments "integral")). The practical effect of the Applicability Date Rule was to repeal the CWA's definition of "waters of the United States" set forth in the already-effective WOTUS Rule and replace it with a new definition. The definition of "waters of the United States" is integral to the Agencies' enforcement of the CWA, as it defines the jurisdictional scope of the CWA itself. The Agencies refused to consider comments on the merits of the WOTUS Rule, the pre-2015 definition sought to be reinstated, or the scope of a possible future definition of "waters of the United States." Thus, the Agencies excluded comments that were relevant and important, and which could not be deferred until a later rule making.

Second, Defendants argue that the Applicability Date Rule did not disturb either "settled expectations" of interested parties or a "uniform preexisting regulatory regime" in light of the

preliminary stays entered against the WOTUS Rule. (Dkt. Nos. 57 at 26–27, 59 at 14.) Defendants do not cite legal authority standing for the proposition that the enjoining of a final rule limits its status as the law or otherwise excuses agencies from complying with the APA when they engage in rule making. (*See* Dkt. Nos. 57 at 24–25, 27, 59 at 8–9, 11, 14.) Thus, the injunctions entered against enforcement of the WOTUS Rule did not alter the Agencies' obligations to solicit and consider comments important and relevant to their decision to promulgate the Applicability Date Rule.

Because the Court concludes that the Agencies acted arbitrarily and capriciously in promulgating the Applicability Date Rule, it need not consider whether the Agencies failed to address the findings of the WOTUS Rule or whether the Agencies provided a reasonable or rational justification for the Applicability Date Rule. (*See* Dkt. Nos. 51, 57, 58, 59.) Therefore, Plaintiffs' motion for summary judgment is GRANTED on this ground, and Defendants' cross-motion for summary judgment is DENIED on this ground.

### E.    Remedy

When reviewing an agency action, "[t]he reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Thus, "[o]rdinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid." *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).[4]

"To determine whether to make an exception to the usual remedy of vacatur, the Court considers two factors: (1) 'how serious the agency's errors are,' and (2) 'the disruptive consequences of an interim change that may itself be changed.'" *United States Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1125 (quoting *California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012). "But courts in the Ninth Circuit decline vacatur only in rare

---

[4] Plaintiffs and Defendants agree that injunctive relief is neither sought nor an appropriate remedy in this proceeding. (*See* Dkt. Nos. 51 at 30, 58 at 15, 59 at 15).

circumstances." *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015). The cases in which remand without vacatur was deemed appropriate "highlight the significant disparity between the agencies' relatively minor errors, on the one hand, and the damage that vacatur could cause the very purpose of the underlying statutes, on the other." *Id.* (internal quotations omitted); *see, e.g.*, *California Communities Against Toxics*, 688 F.3d at 992–94 (finding that technical procedural error was harmless, and that balancing substantive errors against "significant public harms" that would result from vacatur warranted remand without vacatur); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405–06 (9th Cir. 1995) (Fish and Wildlife Service's procedural error in not providing public with opportunity to review provisional report before comment period's close was unlikely to alter agency's final decision, and vacatur risked contributing to extinction of endangered snail species); *W. Oil & Gas Ass'n v. U.S. E.P.A.*, 633 F.2d 803, 813 (9th Cir. 1980) (declining to vacate rule to avoid "thwarting in an unnecessary way the operation of the Clean Air Act in the State of California during the time the deliberative process is reenacted").

In this case, the Agencies acted arbitrarily and capriciously when they excluded relevant and important comments prior to promulgating the Applicability Date Rule in violation of the APA's notice and comment requirements. The Agencies' failure to comply with the APA is a serious error. *See Nat. Res. Def. Council v. E.P.A.*, 489 F.3d 1364, 1374 (D.C. Cir. 2007) ("The agency's errors could not be more serious insofar as it acted unlawfully, which is more than sufficient reason to vacate the rules."). This is not a minor procedural error akin to those the Ninth Circuit has found may be cured by remand without vacatur. *See United States Bureau of Land Mgmt.*, 277 F. Supp. 3d at 1125 ("Courts generally only remand without vacatur when the errors are minor procedural mistakes, such as failing to publish certain documents in the electronic docket of a notice-and-comment rulemaking") (citing *California Communities Against Toxics*, 688 F.3d at 992).

In arguing that remand without vacatur is warranted, Intervenor-Defendants point to the

alleged unlawfulness of the WOTUS Rule, the fact that Plaintiffs' claims of error are primarily procedural in nature, and the disruptive economic and regulatory consequences of vacatur. (Dkt. No. 55 at 21–25.) Defendants contend that vacatur would cause regulatory uncertainty. (Dkt. No. 57 at 29–30.) These alleged disruptive consequences of vacatur do not contravene the purpose of the CWA, the underlying statute, and do not rise to the level of harm that has previously warranted remand without vacatur in the Ninth Circuit. *See California Communities Against Toxics*, 688 F.3d at 992–94; *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405–06; *W. Oil & Gas Ass'n*, 633 F.2d at 813. Moreover, these alleged disruptive consequences cannot overcome the serious procedural error committed by the Agencies in promulgating the Applicability Date Rule without providing the public with a meaningful opportunity to comment, as required by the APA.

Therefore, the proper remedy in this case is vacatur of the Applicability Date Rule pursuant to 5 U.S.C. § 706(2)(A). The remedy provided by the statute requires the Court to set aside the entirety of the unlawful agency action, as opposed to a more limited remedy particular to the plaintiffs in a given case. *See id*. Therefore, as the unlawful Applicability Date Rule is nationwide in scope, so too is the remedy the Court must grant under 5 U.S.C. § 706(2)(A).[5]

---

[5] Defendants contend that no remedy is warranted in this case because a federal district court in South Carolina recently enjoined the Applicability Date Rule nationwide. *S.C. Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959, 969–70 (D.S.C. 2018). In that case, the plaintiffs asked the district court to vacate the Applicability Date Rule. *Id*. at 962. In a later section of the order, the court stated that it "vacate[d] the [Applicability Date Rule]." *Id*. at 967. But the district court proceeded to "determine the scope of the injunction," and stated that it "**ENJOINS** the [Applicability Date Rule] nationwide." *Id*. at 968, 970 (emphasis in original). The parties note that the plaintiffs in that case have filed a motion for clarification and reconsideration regarding whether the district court intended to vacate or enjoin the Applicability Rule. (Dkt. Nos. 57 at 15, 58 at 15.)

In light of the lack of clarity regarding the relief granted in the District of South Carolina, this Court declines to defer the resolution of this case pending the outcome of that litigation. Further, Defendants have not cited legal authority standing for the proposition that the enjoining of an unlawful agency action by another court precludes this Court from vacating the rule pursuant to 5 U.S.C. § 706(2)(A). (*See* Dkt. No. 57 at 29) (citing case law analyzing the irreparable harm absent injunctive relief).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 51) is GRANTED in part and DENIED in part. Defendants' cross-motion for summary judgment (Dkt. No. 57) is GRANTED in part and DENIED in part. The Applicability Date Rule is hereby VACATED nationwide pursuant to 5 U.S.C. § 706(2)(A).

DATED this 26th day of November 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C15-1342-JCC
PAGE - 14