1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE, SIERRA
CLUB, and IDAHO CONSERVATION
LEAGUE,

                            Plaintiffs,

      v.

ANDREW WHEELER,[1] in his official capacity
as Acting Administrator of the United States
Environmental Protection Agency, and R.D.
JAMES,[2] in his official capacity as Secretary of
the Army for Civil Works,

                            Defendants.

Case No. 2:15-cv-01342-JCC

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

NOTE ON MOTIONS CALENDAR:
April 26, 2019

ORAL ARGUMENT REQUESTED

---

[1] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), Andrew Wheeler, Acting Administrator of the U.S. Environmental Protection Agency, is substituted for Scott Pruitt, who was substituted as a defendant for Gina McCarthy.

[2] Please note that pursuant to Fed. R. Civ. P. 25(d)(1), R.D. James, Secretary of the Army for Civil Works, is substituted as a defendant for Jo-Ellen Darcy.

PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................1

BACKGROUND ...........................................................................................................1

STANDARD OF REVIEW ...........................................................................................3

ARGUMENT .................................................................................................................5

     I.      THE WASTE TREATMENT SYSTEM EXCLUSION IS UNLAWFUL. ...........5

          A.     The Agencies Lack Statutory Authority To Convert Waters Of The United States Into Waste Treatment Systems. ...............................................6

          B.     The Agencies' action also fails *Chevron* Step Two, as it is arbitrary and capricious. .........................................................................................7

          C.     The Agencies acted on the Waste Treatment System Exclusion without mandatory notice-and-comment procedures...................................9

     II.     PLAINTIFFS HAVE STANDING TO CHALLENGE THE WASTE TREATMENT SYSTEM EXCLUSION. ...............................................12

     III.    THE COURT SHOULD ENTER A DECLARATORY RULING AND PERMANENT INJUNCTION PENDING A LEGALLY COMPLIANT RULEMAKING...................................................................................13

CONCLUSION............................................................................................................16

PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

              i

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)........................................14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................3

*Arizona Dream Act Coal. v. Brewer*,
    818 F.3d 901 (9th Cir. 2016) .........................................................................14

*Arizona Dream Act Coal. v. Brewer*,
    855 F.3d 957 (9th Cir. 2017), cert. denied, 138 S. Ct. 1279 (2018))....................14

*Chevron, U.S.A., Inc. v. Natural Resources Defence Counsil, Inc.*
    467 U.S. 837, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984)........................................7

*Dioxin/Organochlorine Center v. Clarke*,
    57 F.3d 1517 (9th Cir. 1995) ..........................................................................4

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016)...............................................................................7, 9

*Envtl. Def. Fund, Inc. v. Gorsuch*,
    713 F.2d 802 (D.C. Cir. 1983) .......................................................................10

*FCC v. Fox Television Stations*,
    556 U.S. 502 (2009).......................................................................................4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000).......................................12

*Koniag, Inc. v. Koncor Forest Res.*,
    39 F.3d 991 (9th Cir. 1994) ...........................................................................15

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) .........................................................................14

*Louisiana Public Service Comm. v. FCC*,
    476 U.S. 355, 106 S. Ct. 1890, 90 L.Ed.2d 369 (1986)........................................4

*Lynch v. Dawson*,
    820 F.2d 1014 (9th Cir. 1987) .........................................................................4

PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

ii

*Michigan v. EPA*,
    268 F.3d 1075 (D.C. Cir. 1995) ...........................................................................4

*Mid-Tex Elec. Co-op., Inc. v. FERC*,
    822 F.2d 1123 (D.C. Cir. 1987) .........................................................................10

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010) ...................................14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*,
    463 U.S. 29, 103 S. Ct. 2556, 77 L.Ed.2d 443 (1983) ....................................4, 8

*Nat'l Ass'n of Mfrs. v. Dep't of Labor*,
    159 F.3d 597 (D.C. Cir. 1998) .............................................................................6

*Nat'l Fed'n of Fed. Emps. v. Devine*,
    671 F.2d 607 (D.C. Cir. 1982) ...........................................................................10

*Northern Spotted Owl v. Hodel*,
    716 F. Supp. 479 (W.D. Wash. 1988) ...................................................................5

*NRDC v. Abraham*,
    355 F.3d 179 (2d Cir. 2004) ...............................................................................10

*NRDC v. Callaway*,
    392 F. Supp. 685 (D.D.C. 1975) ...........................................................................6

*NRDC v. Costle*,
    568 F.2d 1369 (D.C. Cir. 1977) ...........................................................................6

*Nw. Motorcycle Ass'n v. U.S. Dep't. of Agric.*,
    18 F.3d 1468 (9th Cir. 1994) ...............................................................................3

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*,
    556 F.3d 177 (4th Cir. 2009) .......................................................................7, 9, 13

*Pacific Coast Fed'n of Fishermen's Ass'ns v. NMFS*,
    265 F.3d 1028 (9th Cir. 2001) ..............................................................................4

*S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*,
    547 U.S. 370, 126 S. Ct. 1843, 164 L.Ed.2d 625 (2006) ......................................8

*United States v. Moses*,
    496 F.3d 984 (9th Cir. 2007) ................................................................................8

*W. Va. Coal Ass'n v. Reilly*,
    728 F. Supp. 1276 (S.D. W. Va. 1989) ..................................................................9

PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

iii

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008) ...........................................................14

**Statutes**

5 U.S.C. § 553 ...........................................................10

5 U.S.C. § 706 ...........................................................14

5 U.S.C. § 706(2) ...........................................................4

5 U.S.C. § 706(2)(A) ...........................................................9

5 U.S.C. § 706(2)(D) ...........................................................11, 12

33 U.S.C. § 1251 ...........................................................6

33 U.S.C. § 1251(a)(1) ...........................................................1, 7

33 U.S.C. § 1251, *et seq* ...........................................................1

33 U.S.C. § 1362(7) ...........................................................6

**Regulations**

33 C.F.R. § 328.3(b)(1) ...........................................................1, 3

**Other Authorities**

45 Fed. Reg. 33,290 (May 19, 1980) ...........................................................5, 8

45 Fed. Reg. 48,620 (July 21, 1980) ...........................................................5, 8

79 Fed. Reg. 22,188 (Apr. 21, 2014) ...........................................................2, 11

80 Fed. Reg. 37,054 (June 29, 2015) ...........................................................1, 2, 5, 8, 9, 11

84 Fed. Reg. 4193 (February 14, 2019) ...........................................................15

Fed. R. Civ. P. 56(c) ...........................................................3

S. Rep. No. 92-414 (1972) as reprinted in 1972 U.S.C.C.A.N. 3668, 3674 ...........................................................6

PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

iv

1

## INTRODUCTION

2

Plaintiffs challenge the 2015 action by Defendants, U.S. Environmental Protection

3

Agency ("EPA") and U.S. Army Corps of Engineers (collectively "Agencies"), in which they

4

permanently codified an extremely broad version of the so-called Waste Treatment System

5

Exclusion, a Clean Water Act loophole, while failing to comply with notice-and-comment

6

rulemaking procedures. *See* 33 C.F.R. § 328.3(b)(1). Defendants undertook the action as part of

7

their rulemaking re-defining the term "waters of the United States," which in turn defines the

8

specific types of water bodies covered by the Clean Water Act. *See* "Clean Water Rule:

9

Definition of 'Waters of the United States,'" 80 Fed. Reg. 37,054, 37,056 (June 29, 2015)

10

(hereinafter Final Rule); 33 U.S.C. § 1251, *et seq.*; *id.* § 1362. The Waste Treatment System

11

Exclusion allows waters of the United States to be stripped of protection under Clean Water Act

12

programs if they are appropriated for use as industrial waste dumps. Because it exceeds the

13

Agencies' authority, is arbitrary and capricious, and violates mandatory notice-and-comment

14

requirements, the Plaintiffs seek relief from this Court as further detailed below.

15

## BACKGROUND

16

The Clean Water Act is one of the nation's most important environmental protection

17

laws, enacted by Congress to "restore and maintain the chemical, physical, and biological

18

integrity of the Nation's waters." *Id.* § 1251(a). Consistent with this purpose and intent, Congress

19

established "the national goal that the discharge of pollutants into the navigable waters be

20

eliminated by 1985." *Id.* § 1251(a)(1).

21

The cornerstone of the CWA is its prohibition against "the discharge of any pollutant by

22

any person" except in compliance with the CWA's permitting requirements and other pollution

23

prevention programs. *Id.* § 1311(a) (incorporating *id.* §§ 1312, 1316, 1317, 1328, 1342, and

24

1344). These programs include the National Pollutant Discharge Elimination System, *id.* § 1342;

25

26

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

1

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

the CWA section 404 permitting program for discharges of dredged or fill material, *id*. § 1344; and the CWA section 311 oil spill prevention and response programs, *id*. § 1321. The jurisdiction of the CWA extends to "navigable waters," and the CWA defines that term as "the waters of the United States, including the territorial seas." *See id*. § 1251, 1321, 1342, 1344, and 1362(7). Thus, the Agencies' interpretation and application of the statutory definition of "waters of the United States" affects which waters the Agencies choose to protect under CWA programs.

With a stated purpose of resolving uncertainties that had developed around the meaning of the term "waters of the United States," the Agencies in 2014 published their proposed Clean Water Rule. "Definition of 'Waters of the United States' Under the Clean Water Act," 79 Fed. Reg. 22,188 (Apr. 21, 2014). The Agencies concurrently published a "synthesis of published peer-reviewed scientific literature discussing the nature of connectivity and effects of streams and wetlands on downstream waters," prepared by EPA's Office of Research and Development. *Id*. at 22,189.

In the final Rule, published on June 29, 2015, the Agencies defined several categories of waters. One is waters that are jurisdictional-by-rule, meaning these waters are categorically protected under the Clean Water Act as "waters of the United States" with no further case-specific analysis required. 80 Fed. Reg. at 37,058. This first category includes traditional navigable waters, interstate waters, the territorial seas, impoundments of jurisdictional waters, tributaries, and adjacent waters, with each of those terms further defined in the regulation or described in the preamble. The second category encompasses certain types of waters that are jurisdictional if they are determined in a case-by-case analysis to have a "significant nexus" to jurisdictional waters. *Id*. The third category addressed in the Final Rule is waters that are categorically excluded from the definition of "the waters of the United States." *Id*. at 37,059. The

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

2

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

1  Waste Treatment System Exclusion is one of those categorical exclusions. 33 C.F.R. §

2  328.3(b)(1).

3        The damage from this exclusion is serious and extensive. In the absence of language

4  limiting the exclusion to "manmade" bodies of water outside of waters of the United States, the

5  exclusion has been and will continue to be invoked in regions from Alaska to Appalachia to

6  convert impounded waters of the United States into containment ponds for waste generated by

7  large-scale surface mining, confined animal feeding operations, and coal-burning power plants.

8  See Response to Comments, Topic 7 at 52, AR Dkt. No. EPA-HQ-OW-2011-0880-20872;

9  Waterkeeper Alliance *et al*. Comments 60-62, AR Dkt. No. EPA-HQ-OW-2011-0880-16650;

10  Earthjustice Comments 14-15, AR Dkt. No. EPA-HQ-OW-2011-0880-14564; Idaho

11  Conservation League Comments, AR Dkt. No. and NRDC, *et al.* Comments 58-59, AR Dkt. No.

12  EPA-HQ-OW-2011-0880-16674.

13        Plaintiffs submitted public comments objecting to the Agencies' proposed action on the

14  Waste Treatment System Exclusion during the public comment period. *See* AR Dkt. No. EPA-

15  HQ-OW-2011-0880-16674 at 58-60 (attached as Ex. 1); AR Dkt. No. EPA-HQ-OW-2011-0880-

16  17076 at 14-16 (attached as Ex. 2)

17                     STANDARD OF REVIEW

18        Summary judgment is appropriate if there is no genuine issue of material fact and the

19  moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v.*

20  *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In the context of a record review case, resolution

21  of the plaintiffs' claims, however, does not require traditional fact finding by the court but rather

22  court review of the administrative record. *Nw. Motorcycle Ass'n v. U.S. Dep't. of Agric.*, 18 F.3d

23  1468, 1471-72 (9th Cir. 1994) (citations omitted). Because this case involves review of final

24

25  PLAINTIFFS' MOTION FOR
   SUMMARY JUDGMENT
26  (No. 2:15-cv-01342-JCC)

                   3

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

1   agency action and an administrative record, it does not present any genuine issues of material

2   fact, and resolution of the case on a motion for summary judgment is appropriate.

3         Under the APA, courts are charged with determining whether an agency's decision is

4   "arbitrary, capricious, . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2).

5   Plaintiffs' challenge to the Rule implicates each of these elements. First, agencies may not take

6   any actions that are not authorized by statute. "[A]n agency literally has no power to act, . . .

7   unless and until Congress confers power upon it." *Louisiana Public Service Comm. v. FCC*, 476

8   U.S. 355, 374 (1986). An agency's action "cannot stand" without statutory authorization for the

9   action. *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 1995).

10        Moreover, the APA standard of review requires the reviewing court to determine whether

11   the agency correctly interpreted the law, and agencies must "examine the relevant data and

12   articulate a satisfactory explanation for [their] action." *FCC v. Fox Television Stations*, 556 U.S.

13   502, 513 (2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463

14   U.S. 29, 43 (1983)); *see also Pacific Coast Fed'n of Fishermen's Ass'ns v. NMFS*, 265 F.3d

15   1028, 1034 (9th Cir. 2001) (stating that a court must ask whether an agency "considered the

16   relevant factors and articulated a rational connection between the facts found and the choice

17   made"). An agency's decision is arbitrary and capricious when it "failed to consider an important

18   aspect of the problem." *Dioxin/Organochlorine Center v. Clarke*, 57 F.3d 1517, 1525 (9th Cir.

19   1995) (citations omitted); *see also Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 43 (same).

20   Additionally, agencies must provide "a more detailed justification" when they adopt a new

21   policy that "rests upon factual findings that contradict those which underlay its prior policy…."

22   *Fox Television Stations*, 556 U.S. at 515. An agency cannot depart from prior findings or

23   positions without "supply[ing] a reasoned analysis for that change." *Lynch v. Dawson*, 820 F.2d

24

25   PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
26   (No. 2:15-cv-01342-JCC)    4

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1    1014, 1021 (9th Cir. 1987). In applying these standards, the Court must perform a "thorough,

2    probing, in-depth review." *Northern Spotted Owl v. Hodel*, 716 F. Supp. 479, 481-82 (W.D.

3    Wash. 1988).

4                                              ARGUMENT

5    **I.      THE WASTE TREATMENT SYSTEM EXCLUSION IS UNLAWFUL.**

6            Although an exclusion for waste treatment systems was originally promulgated in 1980,

7    the 2015 Final Rule expands it in a manner far more sweeping than the original, rendering

8    permanent an interpretation of the exclusion that was originally intended to be temporary. In

9    1980, EPA limited the exclusion applicable to "manmade bodies of water" that "neither were

10   originally created in waters of the United States (such as a disposal area in wetlands) nor resulted

11   from the impoundment of waters of the United States." 45 Fed. Reg. 33,290, 33,424 (May 19,

12   1980). When industry objected, EPA suspended the language limiting the exclusion to manmade

13   systems, without opportunity for public comment, but explained that the suspension was

14   temporary and that EPA would "promptly" amend the rule or "terminate the suspension." 45

15   Fed. Reg. 48,620, 48,620 (July 21, 1980). It never did.

16          Then, in the 2015 Final Rule, the Agencies treated the suspension of the limiting

17   language as a settled matter, refusing even to take comment on their action. *See* Final Rule, 80

18   Fed. Reg. at 37,114 (simultaneously lifting suspension and suspending the same language). The

19   Agencies have also affirmed an interpretation of the exclusion that authorizes new

20   impoundments of natural waters, such as streams and wetlands, so that they can be pressed into

21   service as industrial waste dumps. Final Rule, 80 Fed. Reg. at 37,097 (discussing waste treatment

22   systems "built in a 'water of the United States'"). It is now fully apparent that the act of

23   "suspending" the original limiting language in the Waste Treatment System Exclusion is nothing

24

25   PLAINTIFFS' MOTION FOR
     SUMMARY JUDGMENT
26   (No. 2:15-cv-01342-JCC)                           5

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

more than a subterfuge; the Agencies have abandoned all pretense that suspension is temporary, or that they intend to correct the problem through rulemaking.

The Waste Treatment System Exclusion violates the plain language of the Clean Water Act, lacks a reasoned basis in the record, and perpetuates a longstanding dereliction of the Agencies' duty to protect all waters of the United States under the Act, without proper public process.

A.      **The Agencies Lack Statutory Authority To Convert Waters Of The United States Into Waste Treatment Systems.**

The fundamental purpose of the Clean Water Act is to protect the "chemical, physical, and biological integrity" of all waters of the United States. 33 U.S.C. § 1251; *see also NRDC v. Callaway*, 392 F. Supp. 685, 686 (D.D.C. 1975). Congress spoke clearly: the Clean Water Act would apply to "the waters of the United States," 33 U.S.C. § 1362(7), regardless of how those waters were used. *See supra* pp. 6-7. The law contains no exceptions to that rule, much less for natural water bodies artificially converted into repositories for industrial waste. Indeed, that is the very practice Congress meant for the Act to end. *See* S. Rep. No. 92-414, at 7 (1972), as reprinted in 1972 U.S.C.C.A.N. 3668, 3674 ("The use of any river, lake, stream or ocean as a waste treatment system is unacceptable.").

The Waste Treatment System Exclusion violates the plain language of the Act. Nowhere does the Act empower the Agencies simply to remove waters of the United States from the Act's protections. *Cf. Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 600 (D.C. Cir. 1998) ("There is, of course, no such 'except' clause in the statute [at issue in that case], and we are without authority to insert one."); *NRDC v. Costle*, 568 F.2d 1369, 1377 (D.C. Cir. 1977) (invalidating a rule on the basis that, under the Clean Water Act, EPA lacked discretion to exempt entire categories of point sources from certain permitting requirements). Yet that is

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)                6

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

precisely what the Waste Treatment System Exclusion does, contravening the clear intent of Congress. The exclusion cannot be reconciled with the Act's purpose of controlling and eventually eliminating pollution discharges into our Nation's waters. See 33 U.S.C. § 1251(a)(1). The exclusion thus fails Step One of *Chevron*. 467 U.S. at 842-43.[3]

**B.    The Agencies' action also fails *Chevron* Step Two, as it is arbitrary and capricious.**

The Waste Treatment System Exclusion must also fail under a *Chevron* Step Two analysis. Even if the Court finds that Congress actually intended to delegate to the Agencies the discretion to allow the Nation's waters to be used as waste dumps, the Agencies have failed to exercise that discretion in a reasoned and consistent manner, have failed to explain their interpretation of the Waste Treatment System Exclusion, and have changed what was originally adopted as a temporary measure into a permanent exclusion without explanation. Their latest action on the exclusion is thus arbitrary and capricious. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).

Permanently adopting the Waste Treatment System Exclusion, without the language limiting it to manmade systems, is arbitrary and capricious in two ways. First, the exclusion flies in the face of the Agencies' own statements in the Rule that impoundments of waters of the

---

[3] Although one case upheld the application of the exclusion to natural waters in the narrow context of a permit challenge, the court in that case did not engage in a proper analysis under *Chevron* Step One and thus did not examine whether the Act authorized the Agencies to promulgate the Waste Treatment System Exclusion. *See Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 212-16 (4th Cir. 2009) (stating that "the Corps has the authority to determine which waters are covered by the [Clean Water Act]," before proceeding to analyze whether the Corps' interpretation of the statute was reasonable). But *Chevron* Step One is not satisfied in this context simply because the term "waters of the United States," is susceptible to further Agency interpretation. Whatever latitude the Agencies have to determine what types of features qualify as "waters of the United States," Congress did not authorize the Agencies to use its general rulemaking authority to remove otherwise-covered "waters of the United States" from the protective scope of the Clean Water Act.

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

7

1   United States emphatically remain waters of the United States, based on their significant nexus

2   to foundational waters. *See* Final Rule, 80 Fed. Reg. at 37,075 (discussing *S.D. Warren Co. v.*

3   *Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 379 n.5 (2006), and *United States v. Moses*, 496 F.3d 984,

4   988 (9th Cir. 2007)); Technical Support Document 224-29, JA[20869]; Response to Comments,

5   Topic 2 at 77, AR Dkt. No. EPA-HQ-OW-2011-0880-20872. The Agencies provide no

6   explanation—scientific, technical, or otherwise—for their decision to treat so-called "waste

7   treatment systems" differently from other impoundments of waters of the United States. *See*

8   *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[T]he

9   agency must examine the relevant data and articulate a satisfactory explanation for its action

10  including a rational connection between the facts found and the choice made." (internal quotation

11  marks omitted)).

12       Second, EPA has never explained the shift from its 1980 position that only manmade

13  waste treatment systems should be excluded from the definition of "waters of the United States,"

14  to its present position permanently extending the exclusion to systems created in natural waters.

15  When EPA promulgated the exclusion in 1980, it explained that the Act "was not intended to

16  license dischargers to freely use waters of the United States as waste treatment systems," 45 Fed.

17  Reg. 33,290, 33,298 (May 19, 1980), and that the exclusion was limited to manmade waters "to

18  ensure that dischargers did not escape treatment requirements by impounding waters of the

19  United States and claiming the impoundment was a waste treatment system, or by discharging

20  wastes into wetlands." 45 Fed. Reg. 48,620, 48,620 (July 21, 1980). Then, when EPA suspended

21  the language limiting the exclusion to manmade systems, the agency said it was responding to

22  complaints that the limitation would otherwise cover "existing waste treatment systems . . .

23

24

25  PLAINTIFFS' MOTION FOR
    SUMMARY JUDGMENT

26  (No. 2:15-cv-01342-JCC)                          8

*which had been in existence for many years*."[4] 45 Fed. Reg. at 48,620 (emphasis added). The Agencies' failure to explain their decision to convert a temporary, narrow suspension to a permanent, wholesale exclusion makes their action arbitrary. *See, e.g., Encino Motorcars*, 136 S. Ct. at 2125 ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change.").

The Agencies have failed to provide any explanation regarding how or why the Waste Treatment System Exclusion is warranted by scientific or technical information in the record. The Agencies' action on the exclusion is arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

### C. The Agencies acted on the Waste Treatment System Exclusion without mandatory notice-and-comment procedures.

The Agencies' action is also procedurally defective, insofar as it makes the exclusion permanent, for the first time, without adhering to legally required procedures. As described above, the language limiting the exclusion to manmade systems was temporarily suspended, without opportunity for comment, so as not to undermine the status of waste treatment systems that "had been in existence for many years." 45 Fed. Reg. at 48,620. By codifying the suspension and affirming an interpretation of the exclusion that covers newly created waste impoundments in natural waters, the Agencies made the suspension a permanent part of the regulations. They state that the exclusion "reflect[s] the agencies' long-standing practice," Final Rule, 80 Fed. Reg.

---

[4] For some time following the temporary suspension, the exclusion was not interpreted to authorize newly created waste impoundments in natural waters. *See W. Va. Coal Ass'n v. Reilly*, 728 F. Supp. 1276, 1289-90 (S.D. W. Va. 1989) (deferring to EPA's interpretation that treatment ponds were regulated "impoundments," not excluded "waste treatment systems"). Over time, however, the Agencies adopted a new interpretation that allowed newly created waste impoundments in natural waters. *See Ohio Valley Envtl. Coal.*, 556 F.3d at 211-16 (upholding the Agencies' interpretation in the context of a permit challenge).

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)                          9

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

at 37,096, and that "[t]he agencies do not intend to change how the waste treatment exclusion is implemented . . . ." *Id*. at 37,097.

Converting the temporary suspension to a permanent one is an important substantive change that requires the agencies to provide the public with an opportunity to comment. The Administrative Procedure Act's notice-and-comment requirements apply to amendments and repeals of rules. 5 U.S.C. § 553 (setting forth notice-and-comment requirements for rulemaking); id. § 551(5) (defining rulemaking to include amendment or repeal of a rule). Courts have, in other contexts, found that even temporary suspensions or delays in implementation of duly promulgated rules are substantive changes, subject to notice-and-comment requirements. *See*, *e.g.*, *NRDC v. Abraham*, 355 F.3d 179, 204-06 (2d Cir. 2004); *Envtl. Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 816-17 (D.C. Cir. 1983) (holding that agency action that effectively suspended implementation of duly promulgated standards for waste management facilities was subject to notice-and-comment requirements, where the "substance of the decision was exemption of a whole class from prescribed obligations required by law for the protection of the public"). Even where courts have allowed agencies to promulgate temporary or interim measures without notice and comment, that permission has rested on the understanding that the agency will promptly issue permanent rules, informed by notice and comment. *See*, *e.g.*, *Mid-Tex Elec. Co-op., Inc. v. FERC*, 822 F.2d 1123, 1132 (D.C. Cir. 1987); *Nat'l Fed'n of Fed. Emps. v. Devine*, 671 F.2d 607, 613 (D.C. Cir. 1982) ("The validity of the interim regulation . . . is conditioned on expeditious conduct of notice and comment procedures in good faith.").

Here, however, the Agencies deprived the public of the opportunity to comment on their decision to permanently codify a large exclusion in the 2015 Rule that lets waters be used as waste dumps, including the impoundment of waters of the United States to create new "waste

*Earthjustice*
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340

treatment systems," in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(D) (giving reviewing courts authority to hold unlawful and set aside agency action "without observance of procedure required by law"). 79 Fed. Reg. at 22,190 (stating: "[b]ecause the agencies do not address the exclusions from the definition of 'waters of the United States' for waste treatment systems and prior converted cropland or the existing definition of 'wetlands' in this proposed rule the agencies do not seek comment on these existing regulatory provisions.").

Additionally, the Agencies deprived the Conservation Groups of the ability to comment on the Waste Treatment System Exclusion as it appeared in the Final Rule by considering and addressing only certain comments on the exclusion. The proposed rule's version of the exclusion contained a comma preceding the word "designed," such that it would apply to "[w]aste treatment systems, including treatment ponds or lagoons, designed to meet the requirements of the Clean Water Act." Proposed Rule, 79 Fed. Reg. at 22,263. But when regulated industrial entities objected to the proposed language, concerned that the comma indicated that the exclusion would not exempt features they considered "waste treatment systems" but that were not designed to meet Clean Water Act requirements, the Agencies were quick to assuage industry concerns by deleting the proposed comma and potentially changing the substantive meaning of the exclusion in the Rule. See 80 Fed. Reg. at 37,097; Response to Comments, Topic 7 at 51, AR Dkt. No. EPA-HQ-OW-2011-0880-20872.

The Agencies cannot insulate the exclusion from the Administrative Procedure Act's requirements by asserting that they are making "no substantive changes" to the exclusion and refusing to accept comments on it. *See* Final Rule, 80 Fed. Reg. at 37,097 (noting that, on this topic, "the final rule does not reflect changes suggested in public comments"). Otherwise, any agency could avoid mandatory notice-and-comment procedures in any rulemaking through the

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

11

artifice of a "temporary" rule change that is later made permanent while the agency argues that it

had taken no substantive action. If the Agencies wish to codify this gaping loophole in their

definition of "the waters of the United States," they must follow lawful rulemaking procedures.

The Agencies' failure to do so violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(D).

## II.   PLAINTIFFS HAVE STANDING TO CHALLENGE THE WASTE TREATMENT SYSTEM EXCLUSION.

Plaintiffs have standing to challenge the Waste Treatment System Exclusion on behalf of

their members, as demonstrated in the declarations submitted with this motion. "An association has

standing to bring suit on behalf of its members when its members would otherwise have standing to

sue in their own right, the interests at stake are germane to the organization's purpose, and neither the

claim asserted nor the relief requested requires the participation of individual members in the

lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000) (internal

citation omitted). Plaintiffs meet this standard because their members will suffer injuries-in-fact that

are redressable by a favorable decision from this Court, their interest in preventing harm to water

quality by halting application of the Waste Treatment System Exclusion is germane to the Plaintiffs'

organizational purposes, and this lawsuit does not require the participation of individual members.

The attached declarations demonstrate that Plaintiffs' members have recreational and

aesthetic interests in specific water bodies that are at risk of pollution or destruction that has been

or may be allowed under the Waste Treatment System Exclusion, either under pending proposals

or recently-issued permits (*see, e.g.*, Decl. of Myron Angstman, ¶¶6-19; Decl. of James DeWitt,

¶¶13-17), or under future applications of the Exclusion (*see, e.g.*, Decl. of Dalal Aboulhosn, ¶¶9-

13; Decl. of Chris Wilke, ¶¶7, 11, 14-16; Decl. of Austin Walkins, ¶¶12-14). Their harm is

therefore concrete and particularized as well as actual or imminent, not conjectural or

hypothetical. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1  (2000). The Exclusion is used to enable federal and state permitting authorities to remove Clean

2  Water Act protections from a water body by designating it as a "waste treatment system,"

3  exempting the waters thus pressed into service from the state or federal water quality standards

4  that would otherwise applicable to protect them. *See Ohio Valley Envtl. Coal. v. Aracoma Coal*

5  *Co.*, 556 F.3d 177, 212 (4th Cir. 2009).

6       The waterway used in this manner is typically impounded to turn it into a waste pond or

7  lagoon. *See* Earthjustice Comments at 15. The so-called "treatment" employed commonly

8  amounts to nothing more than allowing solid pollutants to settle to the bottom of the waste

9  impoundment, so the remaining effluent that is discharged into downstream waters of the United

10  States will comply with applicable water quality standards. *Id*. But the waterbodies appropriated

11  for this purpose are stripped of Clean Water Act protection. *Id*. Thus, the Waste Treatment

12  System Exclusion harms Plaintiffs' members' interests in protecting or restoring water bodies

13  they use and cherish.

14  **III.    THE COURT SHOULD ENTER A DECLARATORY RULING AND**
   **PERMANENT INJUNCTION HALTING THE EXCLUSION UNTIL THE**
15  **AGENCIES COMPLETE A LEGALLY COMPLIANT RULEMAKING.**

16       Plaintiffs request that the Court enter a declaratory ruling stating that the Waste

17  Treatment System Exclusion exceeds the Agencies' authority, is arbitrary and capricious, and

18  violates mandatory notice-and-comment requirements. Plaintiffs further request that the Court

19  grant an Order enjoining the Agencies from using the Waste Treatment System Exclusion to

20  permit any new or expanded waste treatment systems that fit the description in the suspended

21  sentence (*i.e.* manmade bodies of water that neither were originally created in waters of the

22  United States nor resulted from the impoundment of waters of the United States), pending the

23  Agencies' completion of notice and comment rulemaking to address the suspended sentence.

24

25  PLAINTIFFS' MOTION FOR
   SUMMARY JUDGMENT
26  (No. 2:15-cv-01342-JCC)                                13

Plaintiffs are entitled to declaratory relief under the Administrative Procedure Act because as demonstrated above the Agencies' 2015 action on the Waste Treatment System Exclusion was arbitrary and capricious, contrary to law, and undertaken without adherence to mandatory notice and comment procedures. 5 U.S.C. § 706 (authorizing Court to "hold unlawful and set aside agency action... found to be... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,] in excess of statutory jurisdiction, authority, or limitations [or] without observance of procedure required by law").

In addition, the Court should grant a permanent injunction prohibiting the agencies from applying the Waste Treatment System Exclusion until they take corrective action. Injunction is warranted because Plaintiffs demonstrate herein that (1) they will suffer irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships between the Plaintiffs and Defendant warrants the grant of a remedy in equity; and (4) the public interest would not be disserved by a permanent injunction. *Arizona Dream Act Coal. v. Brewer*, 818 F.3d 901, 919 (9th Cir. 2016) (opinion amended and superseded on denial of rehearing en banc by *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. 2017), cert. denied, 138 S. Ct. 1279 (2018)), *citing Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 141, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010).

Here, there can be no serious question that the harms stemming from the Agencies' application of the Waste Treatment System Exclusion are irreparable. "[T]he Supreme Court has instructed us that [e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014), quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545, 107 S.Ct. 1396, 94

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)                          14

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

L.Ed.2d 542 (1987) (internal quotation marks omitted), abrogated in part on other grounds by

*Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).

Injunction is also warranted here because the remedy at law – although necessary and appropriate – on its own is inadequate. That is because the harm to Plaintiffs in this case stems from the Agencies' refusal to take public comment on their 2015 action: specifically, their decision to abandon their prior stated intention to "promptly" amend the Exclusion or "terminate the suspension" of the language that had originally limited the Exclusion to waste treatment systems constructed outside of waters of the United States—and the resulting effect of rendering permanent their extraordinarily-broad interpretation of the Waste Treatment System Exclusion. If this Court only sets that action aside, the Agencies' recent proposed rulemaking indicates that they will still continue to flout the Clean Water Act and the Administrative Procedure Act, simply by continuing to apply the Exclusion while refusing to allow members of the public to comment on their decision to make the Exclusion permanent. In particular, the Agencies have recently published a proposed rulemaking that would "continu[e] such exclusion" but add a definition of "waste treatment system exclusion" under which polluters are allowed to obtain a Clean Water Act section 404 permit to "construc[t] [a waste treatment system] in waters of the United States," thereby removing existing natural waters of the United States from the very definition of "waters of the United States." 84 Fed. Reg. 4193 (February 14, 2019). Accordingly, to redress the harm imposed by the Agencies' legally-defective 2015 action, it is necessary for the Court to enjoin any further application of the Waste Treatment System Exclusion for the purpose of permitting any new or expanded "waste treatment systems" that fit the description in the suspended sentence, pending the Agencies' completion of notice and comment rulemaking to address the suspended sentence. *See Koniag, Inc. v. Koncor Forest Res.*, 39 F.3d 991, 1000 (9th

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)                                                15

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

1    Cir. 1994) (finding in a dispute over subsurface mining rights that a "multiplicity of damage

2    suits" provides "no adequate remedy at law.")

3           The balance of hardships between the Plaintiffs and Defendant warrants the grant of a

4    remedy in equity – namely, a permanent injunction pending Defendant Agencies' compliance

5    with legally-required notice and comment procedures – because, in contrast to the permanent

6    irreparable harm to the environment caused by the Agencies ongoing application of the illegal

7    Waste Treatment System Exclusion, the Agencies suffer no serious or legally cognizable harm

8    from the injunction Plaintiffs hereby request. As demonstrated in Section I, above, the Agencies

9    lack statutory authority to apply their current interpretation of the Waste Treatment System

10   Exclusion, and they violated the law in taking action to make the Exclusion permanent in their

11   2015 Final Rule. The Agencies cannot seriously claim a legitimate interest in allowing polluting

12   industrial operations to impress waters of the United States into private use as supposed "waste

13   treatment systems." Further, not only do the Agencies owe the public an opportunity to comment

14   on their action, they also have no legitimate interest in denying Plaintiffs or other members of the

15   public that opportunity. In short, the balance of the equities rests firmly in Plaintiffs' favor.

16          Finally, the public interest weighs heavily in favor of the injunction requested by

17   Plaintiffs, because it will prevent irreparable harm to federally protected natural resources,

18   ensure against violations of the Clean Water Act, and advance the public interest in compelling

19   Agencies to provide notice to the public and an opportunity for the public to comment on major

20   federal decisions that threaten permanent irreparable harm to the environment.

21                                            CONCLUSION

22          Plaintiffs respectfully request that this Court grant their motion for summary judgment,

23   declare that the Waste Treatment System Exclusion exceeds the Agencies' authority, is arbitrary

24   and capricious, and violates mandatory notice-and-comment requirements. Plaintiffs further

25   PLAINTIFFS' MOTION FOR
     SUMMARY JUDGMENT
26   (No. 2:15-cv-01342-JCC)                         16

request that the Court grant an Order enjoining the Agencies from using the Waste Treatment

System Exclusion to permit any new or expanded waste treatment systems that fit the description

in the suspended sentence (*i.e.* manmade bodies of water that neither were originally created in

waters of the United States nor resulted from the impoundment of waters of the United States),

pending the Agencies' completion of notice and comment rulemaking to address the suspended

sentence.


      Respectfully submitted this 4th day of April, 2019.


                   *s/ Jennifer Chavez*
                   Jennifer Chavez
                   (*Admitted Pro Hac Vice*)
                   Anna Sewell, WSB # 48736
                   EARTHJUSTICE
                   1625 Massachusetts Avenue, NW, Suite 702
                   Washington, D.C. 20036
                   (202)667-5233
                   asewell@earthjustice.org

                   Janette K. Brimmer, WSBA # 41271
                   EARTHJUSTICE
                   705 Second Avenue, Suite 203
                   Seattle, WA 98104
                   (206) 343-7340
                   jbrimmer@earthjustice.org

                   *Counsel for Puget Soundkeeper Alliance,*
                   *Sierra Club, and Idaho Conservation*
                   *League*

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

17

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2019, I electronically filed the following documents with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants:

1. Motion for Summary Judgment
2. Declaration of Myron Angstman
3. Declaration of Dalal Aboulhosn
4. Declaration of Chris Wilke
5. Declaration of James DeWitt
6. Declaration of Austin Walkins


*/s/ Jennifer Chavez*
*Jennifer Chavez*

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
(No. 2:15-cv-01342-JCC)

18

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*