THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE *et al.*, | CASE NO. C15-1342-JCC |
| Plaintiffs, | ORDER |
| v. | |
| ANDREW WHEELER *et al.*, | |
| Defendants. | |
| and | |
| AMERICAN FARM BUREAU FEDERATION *et al.*, | |
| Intervenor-Defendants. | |

This matter comes before the Court on Plaintiffs' motion for summary judgment (Dkt. No. 67), Defendants' cross-motion for summary judgment (Dkt. No. 79), and Intervenors' cross-motion for summary judgment (Dkt. No. 72). Having thoroughly considered the parties' briefing and the relevant record, and for the reasons explained herein, the Court finds oral argument unnecessary and hereby DENIES Plaintiffs' motion for summary judgment (Dkt. No. 67) and GRANTS Defendants and Intervenors' cross-motions for summary judgment (Dkt. Nos. 67, 72) on the issue of Plaintiffs' standing to bring their instant motion.

## I. BACKGROUND

The Court has set forth the underlying facts of this case in a prior order and will not repeat them here. (*See* Dkt. No. 61.) The objective of the Clean Water Act ("CWA") is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA provides that "it is the national goal that the discharge of pollutants into the navigable waters be eliminated by 1985." 33 U.S.C. § 1251(a)(1). The CWA renders "the discharge of any pollutant by any person . . . unlawful" unless the discharge complies with certain requirements. 33 U.S.C. § 1311(a); *see* 33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344.

The CWA applies to "navigable waters," which are defined as "waters of the United States, including the territorial seas." 33 U.S.C. §§ 1251(a)(1), 1362(7). The instant motions revolve around the history of the CWA's exclusion of certain waste treatment systems ("Waste Treatment System Exclusion") from its definition of "waters of the United States." In 1979, the Environmental Protection Agency ("EPA") promulgated a revised definition of "waters of the United States" which provided, "waste treatment systems (other than cooling ponds meeting the criteria of this paragraph) are not wasters of the United States." National Pollutant Discharge Elimination System; Revision of Regulations, 44 Fed. Reg. 32,854, 32,901 (June 7, 1979) (to be codified at 40 C.F.R. pt. 122.3(t)(6)). In 1980, the EPA revised the Waste Treatment System Exclusion to read as follows:

> Waste treatment systems, including treatment ponds or lagoons designed to meet the requirements of CWA (other than cooling ponds as defined in 40 C.F.R. § 423.11(m) which also meet the criteria of this definition) are not waters of the United States. This exclusion applies only to manmade bodies of water which neither were originally created in waters of the United States (such as a disposal area in wetlands) nor resulted from the impoundment of wasters of the United States.

Consolidated Permit Regulations: RCRA Hazardous Waste; SDWA Underground Injection Control; CWA National Pollutant Discharge Elimination System; CWA Section 404 Dredge or Fill Programs; and CAA Prevention of Significant Deterioration, 45 Fed. Reg. 33,290, 33,424 (May 19, 1980) (to be codified at 40 C.F.R. pt. 122.3). The EPA also clarified the Waste

ORDER
C15-1342-JCC
PAGE - 2

Treatment System Exclusion's application to treatment ponds, lagoons, and cooling ponds. *See id*. at 33,290, 33,298.

Two months later, in response to petitions for review by industries and an environmental group, the EPA acknowledged that the Waste Treatment System Exclusion's definition "may be overly broad" and suspended the last sentence of the Waste Treatment System Exclusion's definition. Consolidated Permit Regulations, 45 Fed. Reg. 48,620 (July 21, 1980) (to be codified at 40 C.F.R. pt. 122.3).[1] The EPA stated that it "intend[ed] promptly to develop a revised definition and to publish it as a proposed rule for public comment." *Id*.

In 1983, the EPA republished the Waste Treatment System Exclusion and stated that "[t]his revision continues [the July 1980] exclusion." *See* Environmental Permit Regulations: RCRA Hazardous Waste; SDWA Underground Injection Control; CWA National Pollutant Discharge Elimination System; CWA Section 404 Dredge or Fill Programs; and CAA Prevention of Significant Deterioration, 48 Fed. Reg. 14,146, 14,157 n.1 (Apr. 1, 1983) (to be codified at 40 C.F.R. pt. 122.2). In 1986, the U.S. Army Corps of Engineers (the "Corps"; with the EPA, the "Agencies") separately promulgated a rule stating that, "Waste treatment systems, including treatment ponds or lagoons designed to meet the requirements of CWA (other than cooling ponds as defined in 40 CFR 123.11(m) which also meet the criteria of this definition) are not waters of the United States." Final Rule for Regulatory Programs of the Corps of Engineers, 51 Fed. Reg. 41,206, 41,250 (Nov. 13, 1986) (to be codified at 33 C.F.R. pt. 328.3).[2]

---

[1] Following the suspension, the Waste Treatment System Exclusion read, "Waste treatment systems, including treatment ponds or lagoons designed to meet the requirements of CWA (other than cooling ponds as defined in 40 C.F.R. § 423.11(m) which also meet the criteria of this definition) are not waters of the United States." *See* 45 Fed. Reg. 33,424; 45 Fed. Reg. 48, 620.

[2] In 1984, the EPA proposed a rule to revise its regulations governing state Section 404 programs that mirrored the Waste Treatment System Exclusion without the suspended language, which was promulgated as a final rule in 1988. *See* 404 Program Definitions and Permit Exemptions; 404 State Program Regulations, 49 Fed. Reg. 39,012, 39,018 (Oct. 2, 1984) (to be codified at 40 C.F.R. pt. 232.2); Clean Water Act Section 404 Program Definitions and Permit

In 2014, the Agencies issued a proposed rule defining the scope of waters protected under the CWA. *See* Definition of "Waters of the United States" Under the Clean Water Act, 79 Fed. Reg. 22,188 (Apr. 21, 2014). The Agencies stated that they were "propos[ing] no [substantive] change to the exclusion for waste treatment systems designed consistent with the requirements of the CWA" and therefore were not seeking public comment on the Waste Treatment System Exclusion. *Id.* at 22,189; *see also id.* at 22,190, 22,193, 22,195, 22,217. The Agencies proposed two changes, which they termed "ministerial," to the Waste Treatment System Exclusion: "delet[ing] a cross-reference in the current language to an EPA regulation that is no longer in the Code of Federal Regulations"[3] and renumbering the Waste Treatment System Exclusion. *Id.* at 22,217; (*see* Dkt. No. 79 at 11).[4] The Agencies stated that the proposed rule "continue[d] [the July 1980] suspension." 79 Fed. Reg. at 22, 268.

Plaintiffs Sierra Club and Idaho Conservation League submitted comments asserting that the proposed rule did not substantively change the Waste Treatment System Exclusion's existing language. (*See* Dkt. Nos. 67-1 at 59–60, 67-2 at 15–17.) In response to other comments, the Agencies removed the comma after "lagoons" that had appeared for the first time in the 2014 proposed rule. *See* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054, 37,097 (June 29, 2015). The Agencies also noted that "[m]any commentators also suggested making substantive changes to the existing exclusion for waste treatment systems" but stated that such comments were "outside the scope of the proposed rule" because the Agencies

---

Exemptions; Section 404 State Program Regulations, 53 Fed. Reg. 20,764, 20,774 (June 6, 1988) (to be codified at 40 C.F.R. pt. 232.2); 40 C.F.R. § 232.2

[3] Separate revisions 40 C.F.R. § 432.11(m) deleted the regulation's reference to cooling ponds and thus rendered the Waste Treatment System Exclusion's reference to that regulation obsolete. *See* 47 Fed. Reg. 52,290, 52,305 (Nov. 19, 1982) (to be codified at 40 C.F.R. pt. 423.11(m)).

[4] Following the deletion of the cross-reference, the proposed Waste Treatment System Exclusion read, "Waste treatment systems, including treatment ponds or lagoons, designed to meet the requirements of the Clean Water Act." 79 Fed. Reg. 22,188, 22,263.

ORDER
C15-1342-JCC
PAGE - 4

were not proposing substantive changes to the Waste Treatment System Exclusion. *Id*.

In 2015, the Agencies issued a final rule defining the jurisdictional scope of the CWA (the "WOTUS Rule"). Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (Jun. 29, 2015) (to be codified at 33 C.F.R. pt. 328). The WOTUS Rule became effective on August 28, 2015. *Id*. at 37,054. Under the WOTUS Rule, the Waste Treatment System Exclusion reads, "Waste treatment systems, including treatment ponds or lagoons designed to meet the requirements of the Clean Water Act." *Id*. at 37,105 (to be codified at 33 C.F.R. pt. 328.3(b)(1)). The WOTUS Rule simultaneously lifted and reimposed the July 1980 suspension. *See id*. at 37,114 (citing 45 Fed. Reg. at 48,620). The WOTUS Rule provided that "[c]ontinuing current practice, any waste treatment system built in a 'water of the United States' would need a section 404 permit to be constructed and a section 402 permit for discharges from the waste treatment system into 'waters of the United States.'" *Id*. at 37,054; *see* 33 U.S.C. § 1342 (governing Section 402 National Pollutant Discharge Elimination System permit program); 33 U.S.C. § 1344 (governing Section 404 permits for discharge of dredged or fill materials).

Plaintiffs move for summary judgment, asserting that the Agencies exceeded their authority, acted arbitrarily and capriciously, and violated their notice-and-comment obligations in promulgating the Waste Treatment System Exclusion. (*See* Dkt. No. 67 at 1.) Plaintiffs seek a declaratory judgment stating the same, as well as injunctive relief. (*See id*. at 21–22.) Defendants and Intervenors have filed separate cross-motions for summary judgment. (*See* Dkt. Nos. 72, 79.)

## II.   DISCUSSION

### A.   Summary Judgment Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v.*

*Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

### B.     Standing

Plaintiffs assert that they have representational standing to challenge the Waste Treatment System Exclusion on behalf of their members, relying on two member declarations regarding "pending proposals or recently issued permits." (Dkt. No. 67 at 17–18; *see* Dkt. Nos. 67-3, 67-7.) Plaintiffs have also filed several declarations concerning "future applications of the Exclusion," which they characterize as "organizational declarations describing how both the substantive and procedural failures in the WOTUS Rule harm the Plaintiff groups' ability to achieve their organizational missions." (Dkt. Nos. 67 at 17, 83 at 13; *see* Dkt. Nos. 67-4, 67-5, 67-7.) The Court examines each claimed basis of standing in turn.

####        1.     Representational Standing

Standing, which is an "essential and unchanging" requirement of federal jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), requires that parties have "a personal stake in the outcome of the controversy [so] as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Allen v. Wright*, 468 U.S. 737, 770 (1984). When an organization seeks to invoke federal jurisdiction, it must prove "(a) its members would have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Thus, to maintain an action in federal court based on representational standing, one of Plaintiffs' members must show: (a) the member has suffered or will suffer a concrete and particularized "injury in fact," (b) the injury is fairly traceable to the conduct complained of; and (c) the injury is likely redressable by a favorable

decision. *Lujan*, 504 U.S. at 560–61; *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

To constitute a concrete injury sufficient to support standing, the injury "must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citing Black's Law Dictionary 479 (9th ed. 2009)). And for an injury to be imminent, it must *certainly impending*;" thus, "'[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

The Supreme Court has clarified the types of injuries that must be shown by environmental plaintiffs, specifying that "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Thus, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Id*. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). And absent an injury in fact, an environmental plaintiff cannot premise his or her standing on alleged deprivation of a procedural right. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").

When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else," the plaintiff must make a strong showing on the elements of standing. *Lujan*, 504 U.S. at 562. "Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Id*. (quoting *Allen*, 468 U.S. at 758).

The CWA's citizen suit provision "extends standing to the outer boundaries" set by Article III of the Constitution. *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (citing *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453

U.S. 1, 16 (1981)). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561.

            i.        *Myron Angstman*

Myron Angstman is a member of Plaintiff Sierra Club and resides in Bethel, Alaska near the Kuskokwim River. (*See* Dkt No. 67-3 at 1–2.) Angstman has expressed aesthetic and recreational interests in the Kuskokwim River and the salmon it provides. (*Id*. at 2–3.) The proposed Donlin Gold Mine project is located approximately 250 miles upstream from Bethel and has been issued a Section 404 permit by the Corps. (*Id*. at 3–4.) Angstman first visited the Donlin project site in 1982 and has since returned several times. (*Id*. at 3.) The Donlin project encompasses Crooked Creek, a tributary of the Kuskokwim River, and two of Crooked Creek's tributaries, American Creek and Lewis Gulch. (*Id*.) Angstman believes the Corps is relying on the Waste Treatment System Exclusion to exclude natural surface waters within the project site, including American Creek and Lewis Gulch, so the mine's operator can avoid violating water quality standards beyond the project site. (*Id*. at 5.)

Angstman raises several concerns about the Donlin project, but none are sufficient to support his standing to challenge the Waste Treatment System Exclusion. First, he voices general concerns about negative effects of the Donlin project's development pursuant to Section 404, such as a general decline in the Kuskokwim River watershed's water quality, contamination of surface waters, and "secondary effects" such as habitat destruction and increased barge traffic. (*See id*. at 4, 6, 8.) But these alleged injuries are attributable to the Donlin project's Section 404 permit, not the Waste Treatment System Exclusion, and thus are not fairly traceable to the provision of the CWA Plaintiffs seek to challenge through this motion. *See Lujan*, 504 U.S. at 560–61; *Clapper*, 568 U.S. at 409. Angstman next states that he is concerned that the Donlin project's waste treatment systems "will not perform as intended" and thus will allow pollutants

to harm the Kuskokwim River's salmon populations or water quality. (Dkt. No. 67-3 at 4, 6.) But these concerns are purely speculative: Angstman's concerns of future harms necessarily rely on the theoretical malfunction of the Donlin project's waste treatment systems, and thus his claimed injuries are neither concrete nor imminent. *See Lujan*, 504 U.S. at 560–61; *Spokeo*, 136 S. Ct. at 1548; *Clapper*, 568 U.S. at 409.[5]

Plaintiffs assert that Angstman's "primary harm" arises from his concern that the Donlin project will reduce the "ecological services" that American Creek and Lewis Gulch perform for the Kuskokwim River watershed, which may in turn harm his interests in maintaining Crooked Creek and the Kuskokwim River as clean sources of drinking water and salmon habitats. (*See* Dkt. Nos. 67-3 at 6, 83 at 10.) But while Angstman asserts aesthetic interests in Crooked Creek arising from his infrequent visits beginning in 1982, (*see* Dkt. No. 67-3 at 3), he does not express recreational or aesthetic interests in American Creek or Lewis Gulch, (*see generally id.*). Absent such interests, Angstman's concerns cannot support an actionable injury in fact arising from those bodies of water. *See Friends of the Earth*, 528 U.S. at 183; *Lujan*, 504 U.S. at 562–63; *Sierra Club*, 405 U.S. at 735. Further, Angstman's assertion that the impoundment of American Creek and Lewis Gulch may lead to contamination of Crooked Creek, which may in turn negatively impact his aesthetic and recreational interests in the Kuskokwim River, is too speculative to establish a concrete and imminent injury in fact. *See Spokeo*, 136 S. Ct. at 1548; *Clapper*, 568 U.S. at 409. And finally, Angstman's subjective belief that the Agencies are relying on the Waste Treatment System Exclusion to impound American Creek and Lewis Gulch is insufficient to carry Plaintiffs' burden of establishing that Angstman's injuries flow from the Waste Treatment System Exclusion. *See Lujan*, 504 U.S. at 561.

In sum, Angstman has not identified an injury in fact that is fairly traceable to the Waste

---

[5] Angstman acknowledges that the CWA imposes several requirements on new gold mines to limit discharges and otherwise protect waters of the United States within and outside of the mine site. (Dkt. No. 67-3 at 4–5.)

Treatment System Exclusion. *See Lujan*, 504 U.S. at 560–61; *Clapper*, 568 U.S. at 409. Absent an injury in fact, Angstman cannot premise his standing on the alleged procedural defects in the Agencies' promulgation of the Waste Treatment System Exclusion within the WOTUS Rule. *See Summers*, 555 U.S. at 496; (Dkt. No. 67-3 at 7–8). Therefore, Plaintiff Sierra Club lacks representational standing to challenge the Waste Treatment System Exclusion on Angstman's behalf. *See Hunt*, 432 U.S. at 343. Plaintiffs' motion for summary judgment (Dkt. No. 67) is DENIED and Defendants and Intervenors' cross-motions for summary judgment (Dkt. Nos. 72, 79) are GRANTED on this ground.

          ii.        *James DeWitt*

James DeWitt is a member of Plaintiff Idaho Conservation League and lives in Boise, Idaho. (Dkt. No. 67-6 at 2.) DeWitt engages in outdoor recreation centered around clean water, including birding and catch-and-release flyfishing. (*Id*.) DeWitt expresses personal recreational and aesthetic interests in the Boise River, the Salmon River, and the Salmon River's watershed and tributaries. (*See id*. at 3–5.) DeWitt also expresses more general interests in various Pacific Northwest wetland and marshes, Idaho's salmon populations, and waters throughout the Western Hemisphere used by migratory birds. (*Id*.) DeWitt is concerned about the Agencies' potential use of the Waste Treatment System Exclusion to exclude waters of the United States from protection. (*See id*. at 8.)

DeWitt first expresses concerns about the Midas Gold Corporation's proposed stibnite and gold mine at the headwaters of the East Fork South Fork Salmon River. (*Id*. at 6.) DeWitt believes that the Agencies "may rely on the Waste Treatment System Exclusion" to use several surface streams that "appear to meet the definition of 'waters of the United States' under the 2015 Final Rule" to treat waste without a plan to ensure the streams meet applicable water quality standards. (*Id*. at 6–7.) But general counsel for the Midas Gold Corporation's has declared that the Midas mine's proposed waste treatment program does not rely on the Waste Treatment System Exclusion at all, (*see* Dkt. No. 74 at 4), and DeWitt has not offered

contravening evidence in support of his speculative belief regarding the Agencies' possible use of the provision, (*see generally* Dkt. No. 67-6).[6] Therefore, DeWitt's declaration does not satisfy Plaintiffs' burden on summary judgment that his purported harms flow from the Midas mine's use of the Waste Treatment System Exclusion. *See* Fed. R. Civ. P. 56(a); *Lujan*, 504 U.S. at 561.

In addition, even assuming the Midas mine implicated the Waste Treatment System Exclusion, DeWitt has not asserted that his own aesthetic and recreational interests in the relevant area will be lessened. *See Friends of the Earth*, 528 U.S. at 183; (Dkt. No. 67-6 at 6) ("I care about preserving Chinook salmon as well as water clean enough to support human contact recreation so I am concerned that [the proposed Midas mine will] harm water quality."). Moreover, DeWitt's concerns regarding harmful discharges from the Midas mine necessarily assume that the proposed Midas mine's waste treatment systems will fail; such speculation does not establish a concrete and imminent injury in fact. *See Spokeo*, 136 S. Ct. at 1548; *Clapper*, 568 U.S. at 40; (Dkt. No. 67-6 at 7); (*see also* Dkt. No. 74 at 4) (discussing proposed Midas mine's obligations to comply with discharge limits pursuant to permits and Section 402 of the CWA). Thus, DeWitt has not established that he has standing to challenge the Waste Treatment System Exclusion based on his alleged harms flowing from the Midas mine. *See Lujan*, 504 U.S. at 561.

Next, DeWitt states that he is concerned about the Hecla Grouse Creek Mine, a

---

[6] In a footnote, Plaintiffs acknowledge the general counsel's statement that the Midas mine will not rely on the Waste Treatment System Exclusion and state that the proposed development plan "shows that portions of Fiddle Creek and Meadow Creek would be used as settling ponds or channels for conveyed polluted runoff away from mining operations." (Dkt. No. 83 at 11–12 n.2.) The Court assumes that Plaintiffs mean to imply that the use of these bodies of water demonstrate that the Agencies will in fact rely on the Waste Treatment System Exclusion for the Midas mine. But DeWitt's declaration does not mention Fiddle Creek or Meadow Creek, (*see generally* Dkt. No. 67-6), and Plaintiffs have not offered evidence establishing that either body of water qualifies as a "water of the United States" that may be subject to the Waste Treatment System Exclusion, (*see* Dkt. No. 83 at 11–12 n.2). Thus, Plaintiffs' statement is insufficient to demonstrate a genuine dispute of material fact as to the Midas mine's reliance on the Waste Treatment System Exclusion. *See* Fed. R. Civ. P. 56(a).

Superfund site located in the Salmon River watershed that was recently given a renewed CWA permit. (Dkt. No. 67-6 at 7.) The Hecla mine contains a large pile of mine tailings and overburden whose effluent is collected in a settling pond, discharged into Pinyon Creek, and then discharged into Jordan Creek. (*Id.*) The Hecla mine's permit requires it to comply with effluent discharge limitations from Pinyon Creek to Jordan Creek; DeWitt takes issue with the lack of protections accorded to the confluence point between the settling pond and Pinyon Creek. (*Id.*)

DeWitt has not expressed aesthetic or recreational interests in Pinyon Creek that have been lessened by its alleged use as part of a waste treatment system, and thus he has not adequately alleged an injury in fact arising from Pinyon Creek. *See Friends of the Earth*, 528 U.S. at 183; (*see generally* Dkt. No. 67-6.)[7] In addition, Dewitt has acknowledged that any discharge from Pinyon Creek to Jordan Creek must comply with the Hecla mine's CWA permit, and he has not pointed to any instance when the Hecla mine violated its permit and thereby harmed waters in which he maintains aesthetic or recreational interests. (*See generally* Dkt. No. 67-6; *see also* Dkt. No. 83 at 11) (discussing the Hecla mine's location upstream of waters in which DeWitt maintains recreational interests but failing to identify instances of harm to those waters). Therefore, DeWitt has failed to identify a concrete and imminent injury to his interests sufficient to support his standing to challenge the Waste Treatment System Exclusion. *See Spokeo*, 136 S. Ct. at 1548; *Friends of the Earth*, 528 U.S. at 183.

In sum, DeWitt has not identified an injury in fact that is fairly traceable to the Waste Treatment System Exclusion. *See Lujan*, 504 U.S. at 560–61; *Clapper*, 568 U.S. at 409. Absent an injury in fact, DeWitt cannot premise his standing on the alleged procedural defects in the Agencies' promulgation of the Waste Treatment System Exclusion within the WOTUS Rule. *See Summers*, 555 U.S. at 496. Therefore, Plaintiff Idaho Conservation League lacks representational standing to challenge the Waste Treatment System Exclusion on DeWitt's behalf. *See Hunt*, 432

---

[7] In response to comments on draft NDPES permits for the Hecla site, the EPA noted that Pinyon Creek has been "permanently dewatered." (Dkt. No. 73-13 at 33.)

U.S. at 343. Plaintiffs' motion for summary judgment (Dkt. No. 67) is DENIED and Defendants and Intervenors' cross-motions for summary judgment (Dkt. Nos. 72, 79) are GRANTED on this ground.

2.  Organizational Standing

Plaintiffs briefly assert that their organizational declarations establish their standing to sue, as each describes "how both the substantive and procedural failures in the 2015 Rule harm the Plaintiff groups' ability to achieve their organizational missions." (Dkt. No. 83 at 13.)

To establish organizational standing separate from that of its members, an organization must "allege[] such a 'personal stake' in the outcome of the controversy as to warrant the invocation of federal-court jurisdiction." *Nat'l Ass'n of Home Builders v. E.P.A.*, 667 F.3d 6, 11 (D.C. Cir. 2011) (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). Therefore, the organization "must demonstrate that it has 'suffered injury in fact,' including '[s]uch concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests.'" *Id.* (alterations in original) (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1433). An organization's advocacy efforts during the administrative process or litigation expenses incurred in challenging a given regulation are insufficient to establish a concrete and demonstrable injury. *See id.* at 12 (citing *Ctr. for Law & Educ. V. Dep't of Educ.*, 396 F.3d 1152. 1162 (D.C. Cir. 2005); *Nat'l Taxpayers Union*, 68 F.3d at 1434; *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).

Dalal Aboulhosn is Plaintiff Sierra Club's Deputy Legislative Director and discusses Plaintiff Sierra Club's interests in ensuring that the CWA is fully enforced and consistent with the Agencies' regulations. (*See* Dkt. No. 67-4 at 1–3.) Aboulhosn describes Plaintiff Sierra Club's expenditure of resources in advocating against the Waste Treatment System Exclusion during the administrative process and subsequent litigation challenging the provision, (*see id.* at 3–4), but these expenditures do not constitute an injury in fact sufficient to establish

organizational standing. *See Nat'l Ass'n of Home Builders*, 667 F.3d at 12.

Similarly, Chris Wilke, the Executive Director of Plaintiff Puget Soundkeeper, discusses Plaintiff Puget Soundkeeper's mission to protect the waters of Puget Sound. (*See* Dkt. No. 67-5 at 1–2.) Wilke does not identify any particular expenditure of Plaintiff Puget Soundkeeper constituting a drain of resources sufficient to demonstrate injury in fact, and thus his declaration does not establish Plaintiff Puget Soundkeeper's organizational standing to challenge the Waste Treatment System Exclusion. (*See generally id.*); *Nat'l Ass'n of Home Builders*, 667 F.3d at 12.[8]

Finally, Austin Walkins is a senior conservation associate with Plaintiff Idaho Conservation League, who discusses Plaintiff Idaho Conservation League's mission to protect Idaho's environment. (*See* Dkt. No. 67-7 at 1–2.) Walkins discusses Plaintiff Idaho Conservation League's practice of objecting to the use of the Waste Treatment System Exclusion in specific proposals for new or expanded projects in Idaho but does not identify a drain on Plaintiff Idaho Conservation League's resources beyond its normal advocacy efforts and operational costs. (*See generally id.*) Therefore, Walkins has not identified an injury in fact sufficient to establish Plaintiff Idaho Conservation League's organizational standing. *See Nat'l Ass'n of Home Builders*, 667 F.3d at 12; *Nat'l Taxpayers Union*, 68 F.3d at 1434.

Therefore, Plaintiffs have failed to show that they have suffered an injury in fact sufficient to support their organizational standing to challenge the Waste Treatment System Exclusion. *See Nat'l Ass'n of Home Builders*, 667 F.3d at 11. And because Plaintiffs have failed to identify an injury in fact attributable to the Waste Treatment System Exclusion, Plaintiffs may

---

[8] Wilke also discusses his personal interests in Puget Sound and its surrounding water features and states that he is concerned that the Waste Treatment System Exclusion will be used to strip various water features of protection, thereby causing a general decline in Puget Sound's water quality. (*See* Dkt. No. 67-5 at 4–7.) But Wilke does not identify any project, proposed or existing, that is causing or will soon cause the harms he is concerned about. (*See generally id.*) Therefore, Wilke's declaration does not demonstrate that he has suffered a concrete and imminent injury in fact capable of supporting Plaintiff Puget Soundkeeper's representational standing to challenge the Waste Treatment System Exclusion. *See Lujan*, 504 U.S. at 560–61; *Friends of the Earth*, 528 U.S. at 181, 183.

not premise their organizational standing on the alleged procedural defects in the Agencies' promulgation of the Waste Treatment System Exclusion within the WOTUS Rule. *See Summers*, 555 U.S. at 496. Therefore, Plaintiffs' motion for summary judgment (Dkt. No. 67) is DENIED and Defendants and Intervenors' cross-motions for summary judgment (Dkt. Nos. 72, 79) are GRANTED on this ground.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 67) is DENIED and Defendants and Intervenors' cross-motions for summary judgment (Dkt. Nos. 72, 79) are GRANTED on the issue of Plaintiffs' standing to challenge the Waste Treatment System Exclusion via the instant motion.

DATED this 25th day of November 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE